# No. 25-1645

# United States Court of Appeals
### *for the*
# Fourth Circuit

———— • ————

GENERAL CIGAR COMPANY, INC.,

*Plaintiff-Appellant,*

— v. —

EMPRESA CUBANA DEL TABACO, d/b/a Cubatabaco,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# OPENING BRIEF OF APPELLANT
# GENERAL CIGAR COMPANY, INC.

J. Kevin Fee
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4441

Andrew L. Deutsch
LAW OFFICES OF ANDREW L. DEUTSCH
6540 Olympic Place
Los Angeles, CA 90035
(917) 861-3315

Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
(858) 677-1400

*Counsel for Appellant*
*General Cigar Company, Inc.*

CP COUNSEL PRESS    (800) 4-APPEAL • [715149]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1645__       Caption: __General Cigar Company, Inc. v. Empresa Cubana Del Tabaco__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__General Cigar Company, Inc.__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      General Cigar Company Inc., is 100% owned by Sandinavian Tobacco Group US Holding, Inc., which, in turn, is 100% owned by Scandinavian Tobacco Group A/S.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☑YES ☐NO
      If yes, identify all such owners:
      Scandinavian Tobacco Group A/S, which is publicly traded on the NASDAQ Copenhagen Exchange.

12/01/2019 SCC                              - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ J. Kevin Fee                    Date:      June 23, 2025

Counsel for: General Cigar Company, Inc.

- 2 -

**Print to PDF for Filing**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF JURISDICTION ............................................................3

III.  STATEMENT OF THE ISSUES ................................................................4

IV.   STATEMENT OF THE CASE ...................................................................5

    A.    The Cuban Assets Control Regulations ...................................5

    B.    Article 8 of the Inter-American Convention ...........................7

    C.    General Cigar's 1981 and 1995 U.S. Trademark Registrations...........8

    D.    Cubatabaco's 1997 U.S. Trademark Application and Petition for Cancellation ..................................................................8

    E.    The SDNY Litigation and 2005 Second Circuit Decision...................9

    F.    Subsequent Proceedings and the 2014 Federal Circuit Decision.......13

    G.    The 2022 TTAB Cancellation Decision...............................16

    H.    The § 1071(b)(1) District Court Case and Rulings ...........................17

V.    SUMMARY OF ARGUMENT...................................................................19

VI.   ARGUMENT...........................................................................................21

    A.    Standard of Review .................................................................21

    B.    The CACR Prohibit Cancellation of General Cigar's Trademark Registrations..................................................................21

        1.    A Civil Action Under § 1071(b)(1) Is an Independent Case and Not a Form of Appellate Review of the TTAB's Decision ..................................................................22

- i -

2.  The District Court's Judgment Is a Judicial Cancellation Order Because It Authorizes the USPTO to Cancel General Cigar's Trademark Registrations ...............................25

3.  The CACR Prohibit Cubatabaco from Obtaining Judicial Cancellation of General Cigar's Trademark Registrations......30

C.  Issue Preclusion Bars Cubatabaco's Article 8 Claim.........................36

1.  The Federal Circuit's Decision on Issue Preclusion Is Not Law of the Case....................................................................37

2.  Even If a Federal Circuit Decision Could Be Law of the Case in a § 1071(b) Civil Action, an Exception Applies Here ...............................................................................43

3.  The Elements of Issue Preclusion Are Met Here.....................49

D.  Claim Preclusion Bars Cubatabaco's Article 8 Claim.......................50

1.  The Federal Circuit's Decision on Claim Preclusion Is Not Law of the Case ...............................................................50

2.  The Elements of Claim Preclusion Are Met Here ...................50

VII.  CONCLUSION...............................................................................................53

VIII.  STATEMENT REGARDING ORAL ARGUMENT ..................................54

- ii -

1623511099

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ..................................................................37

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015).................................................................*passim*

*Bacardi Corp. of Am. v. Domenech*,
311 U.S. 150 (1940).................................................................45

*Breard v. Greene*,
523 U.S. 371 (1998).................................................................33

*British-Am. Tobacco, Co., Ltd. v. Philip Morris, Inc.*,
2001 WL 256142 (T.T.A.B. Feb. 27, 2001) ......................................48

*British-Am. Tobacco, Co., Ltd. v. Philip Morris, Inc.*,
55 U.S.P.Q.2d 1585, 2000 WL 1005433 (T.T.A.B. 2000)................................48

*Empresa Cubana del Tabaco v. Culbro Corp.*,
213 F. Supp. 2d 247 (S.D.N.Y. 2002) (*Empresa I*) ................................10, 11, 51

*Empresa Cubana del Tabaco v. Culbro Corp.*,
70 U.S.P.Q.2d 1650, 2004 WL 602295 (S.D.N.Y. Mar. 26, 2004)
(*Empresa III*)................................................................11

*Empresa Cubana del Tabaco v. Culbro Corp.*,
2004 WL 925647 (S.D.N.Y. Apr. 30, 2004) (*Empresa IV*) ........................11, 52

*Empresa Cubana del Tabaco v. Culbro Corp.*,
399 F.3d 462 (2d Cir. 2005) (*Empresa V*).................................................*passim*

*Empresa Cubana del Tabaco v. Culbro Corp.*,
478 F. Supp. 2d 513 (S.D.N.Y. 2007) (*Empresa VI*) ................................13, 14

*Empresa Cubana del Tabaco v. Culbro Corp.*,
541 F.3d 476 (2d Cir. 2008) (*Empresa VII*) ........................................14

1623511099

*Empresa Cubana del Tabaco v. General Cigar Co., Inc.*,
   Cancellation No. 92025859, 2013 WL 3168090
   (T.T.A.B. Mar. 14. 2013) (*Empresa VIII*) ........................................................14

*Empresa Cubana del Tabaco v. General Cigar Co.*,
   753 F.3d 1270 (Fed. Cir. 2014) (*Empresa IX*)..............................................*passim*

*Farina v. Nokia, Inc.*,
   625 F.3d 97 (3d Cir. 2010) ...............................................................................37

*Hately v. Watts*,
   917 F.3d 770 (4th Cir. 2019) ......................................................................21, 38

*Havana Club Holding, S.A. v. Galleon, S.A.*,
   203 F.3d 116 (2d Cir. 2000) ......................................................................*passim*

*Hoover Co. v. Coe*,
   325 U.S. 79 (1945)......................................................................................42, 43

*Kappos v. Hyatt*,
   566 U.S. 431 (2012).....................................................................................*passim*

*Los Angeles County v. Humphries*,
   562 U.S. 29 (2010)...............................................................................................44

*Matal v. Tam*,
   582 U.S. 218 (2017).............................................................................................34

*Moke Am. LLC v. Moke Int'l Ltd.*,
   126 F.4th 263 (4th Cir. 2025) ...........................................................................24

*Orca Yachts, L.L.C. v. Mollicam, Inc.*,
   287 F.3d 316 (4th Cir. 2002) ............................................................................52

*Payne v. Taslimi*,
   998 F.3d 648 (4th Cir. 2021) ............................................................................41

*Pittston Co. v. United States*,
   199 F.3d 694 (4th Cir. 1999) ............................................................................40

*Pueschel v. United States*,
   369 F.3d 345 (4th Cir. 2004) ..................................................................21, 50, 52

*Russello v. United States*,
   464 U.S. 16 (1983)..............................................................................................38

1623511099

*Sejman v. Warner-Lambert Co., Inc.*,
  845 F.2d 66 (4th Cir. 1988) ...................................................................37

*Shammas v. Focarino*,
  784 F.3d 219 (4th Cir. 2015) ..........................................................22, 23

*Shoup v. Bell & Howell Co.*,
  872 F.2d 1178 (4th Cir. 1989) ..............................................................50

*Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*,
  991 F.3d 512 (4th Cir. 2021) ....................................................39, 40, 43

*Swatch AG v. Beehive Wholesale, LLC*,
  739 F.3d 150 (4th Cir. 2014) ........................................................*passim*

*Taylor v. Sturgell*,
  553 U.S. 880 (2008).................................................................................49

*United States v. Cannady*,
  63 F.4th 259 (4th Cir. 2023) ..................................................................43

*United States v. Holloway*,
  630 F.3d 252 (1st Cir. 2010)...................................................................43

*United States v. Roof*,
  10 F.4th 314 (4th Cir. 2021) ..................................................................41

*United States v. Turner*,
  389 F.3d 111 (4th Cir. 2004) ..................................................................21

*In re Varat Enters., Inc.*,
  81 F.3d 1310 (4th Cir. 1996) ..................................................................51

*Xactware Sols., Inc. v. Buildxact Software Ltd.*,
  95 F.4th 810 (4th Cir. 2024) ..................................................................24

**Statutes**

12 U.S.C. § 95a ..............................................................................................5

15 U.S.C.
  § 1064.......................................................................................................16
  § 1067(a) ......................................................................................16, 46, 47
  § 1071.......................................................................................23, 36, 41
  § 1071(a) ......................................................................................17, 23, 43

1623511099

§ 1071(a)(1) ...................................................................................23
§ 1071(a)(3) ...................................................................................24
§ 1071(a)(4) ............................................................................*passim*
§ 1071(b) ................................................................................*passim*
§ 1071(b)(1) ...........................................................................*passim*
§ 1071(b)(3) ...................................................................................24
§ 1119 ...............................................................................4, 28, 29
§ 1121 .............................................................................................4
§ 1126(b) ..........................................................................11, 45, 48
§ 1126(h) .....................................................................................11

22 U.S.C. § 6032(h) .........................................................................5, 31

28 U.S.C.
§ 1291 ...........................................................................................4
§ 1331 ...........................................................................................4
§ 1338(a) .......................................................................................4
§ 2201 ...........................................................................................4
§ 2202 ...........................................................................................4

35 U.S.C. § 145 ...............................................................................23, 24

Cuban Liberty and Democratic Solidarity Act of 1996,
   Pub. L. No. 104–114, 110 Stat. 785 (1996) ......................................................5

Lanham Act
§ 17(a) .........................................................................................51
§ 43(a) ...................................................................................11, 32
§ 44 .......................................................................................45, 47
§ 44(b) ................................................................................*passim*
§ 44(d) ...................................................................................13, 45
§ 44(h) ................................................................................*passim*

Trading with the Enemy Act of 1917 § 5(b) ...............................................................5

**Other Authorities**

31 C.F.R.
§ 501.801(b) ...................................................................................7
§ 515 ............................................................................................5
§ 515.201(b) .............................................................................6, 34
§ 515.201(b)(1) .....................................................................6, 31, 32

§ 515.201(c) ...................................................................................6
§ 515.201(d) ...................................................................................6
§ 515.201 et seq. ............................................................................5
§ 515.309(a) ...................................................................................6
§ 515.310 ..................................................................................6, 32
§ 515.311(a) ...................................................................................6
§ 515.318 ........................................................................................7
§ 515.527(a)(1) ...........................................................7, 15, 27, 35
§ 515.802 ........................................................................................5

Fed. R. App. P. 4(a)(1)(A) ...............................................................4

Fed. R. Civ. P. 41(b) .....................................................................52

Inter-American Convention for Trade Mark and Commercial
    Protection (1929), 46 Stat. 2907, Article 8 ................................*passim*

Paris Convention for the Protection of Industrial Property, Mar. 20,
    1883, as revised at Stockholm, July 14, 1967, 21 U.S.T. 1583, 828
    U.N.T.S. 305, Article 6*bis* ...................................................33

18B Charles Alan Wright & Arthur D. Miller, Federal Practice and
    Procedure § 4478 (3d ed.)......................................................37

1623511099

## I.    INTRODUCTION

This case is about a Cuban state-owned entity's improper attempt to obtain trademark rights owned by a United States company. The laws governing the United States' embargo against Cuba prohibit such a transfer of rights. The district court's decision authorizing the cancellation of General Cigar's COHIBA trademark registrations to Cubatabaco's benefit conflicts directly with the regulations governing the embargo. The Cuban embargo has been the official foreign policy of the United States for more than six decades, through numerous presidential administrations. Congress has also codified the regulations governing the embargo. The district court's decision is thus incorrect as a matter of law and clashes with U.S. foreign policy directives established by both the executive and legislative branches.

Enforcement of the codified regulations governing the Cuban embargo will dispose of this appeal without needing to reach any other issue. But to the extent the Court goes further, the district court also erred as a matter of law by rejecting General Cigar's issue preclusion and claim preclusion defenses to Cubatabaco's treaty-based cancellation claim. This decades-long dispute is defined by a forum-shopping gamble that Cubatabaco made early on. In 1997, Cubatabaco simultaneously petitioned to cancel General Cigar's two COHIBA trademark registrations for cigars and applied to register the COHIBA trademark in its own name in the United States Patent and Trademark Office (USPTO). Confronted with immediate obstacles,

Cubatabaco jumped tracks by filing a lawsuit seeking the same cancellation and an injunction in New York federal district court. Cubatabaco asked the USPTO's Trademark Trial and Appeal Board (TTAB) to suspend the cancellation proceedings pending the outcome of the district court case. In doing so, Cubatabaco represented that the district court litigation would resolve all issues raised in its cancellation petition. The TTAB suspended the cancellation proceedings. After a Second Circuit decision in General Cigar's favor, the judgment in the New York litigation dismissed all of Cubatabaco's cancellation and injunction claims with prejudice.

Instead of keeping its word, Cubatabaco switched tracks again by resuming the cancellation proceedings in the TTAB. On appeal from the TTAB's dismissal of Cubatabaco's claims, the Federal Circuit ruled that the Second Circuit's decision did not preclude Cubatabaco from pursuing its cancellation claims in the TTAB. On remand, the TTAB ordered cancellation. When General Cigar sought redress in a new civil action in the Eastern District of Virginia, the district court ruled that the Federal Circuit's preclusion rulings were law of the case.

But the district court's ruling was a legal error. The statute that allows a party dissatisfied with a TTAB decision to bring a civil action in district court instead of appealing to the Federal Circuit makes clear that the civil action is a different case from the TTAB proceeding. The law of the case doctrine therefore does not apply here, and this Court may decide the legal questions of issue and claim preclusion *de*

- 2 -

*novo*. Those issues should be resolved in General Cigar's favor because all elements of issue preclusion and claim preclusion are met here based on the final judgment in the New York district court litigation.

Further, even if the Federal Circuit's decision could be law of the case in the subsequent district court action, an exception to that doctrine applies to the Federal Circuit's issue preclusion ruling because a later Supreme Court trademark decision undermined the ruling's reasoning. Either way, Cubatabaco should not be allowed to prevail today on an issue and claim it lost two decades ago—all in an effort to appropriate to itself General Cigar's registered trademark rights and the valuable goodwill that General Cigar has developed over several decades of marketing and selling COHIBA cigars in the United States.

The district court's judgment therefore should be reversed. A reversal based on the Cuban embargo would end the case in General Cigar's favor. A reversal based only on preclusion would require a remand to allow the district court to address the remaining counts of General Cigar's complaint.

## II.    STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case under the following statutes:

- 15 U.S.C. § 1071(b)(1) because this statute gives Plaintiff-Appellant General Cigar Company, Inc. (General Cigar), which lost at the TTAB,

- 3 -

the right to file a civil action seeking an adjudication that its trademark registrations may not be cancelled;

- 15 U.S.C. §§ 1119 & 1121 because this case involves a trademark registered under the Lanham Act;

- 28 U.S.C. §§ 1331 & 1338(a) because this case arises under federal law, and specifically the Lanham Act;

- 28 U.S.C. §§ 2201 & 2202 because General Cigar sought a declaration of rights regarding an actual controversy between the parties.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The district court entered final judgment on May 7, 2025. JA381. General Cigar filed its notice of appeal on June 4, 2025. JA414-416. This appeal is therefore timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## III. STATEMENT OF THE ISSUES

1. Whether the Cuban Assets Control Regulations (CACR) bar Defendant-Appellant Empresa Cubana del Tabaco (Cubatabaco) from obtaining a court judgment authorizing cancellation of General Cigar's trademark registrations.

2. Whether issue preclusion bars Cubatabaco from relitigating its claim under Article 8 of the Inter-American Convention.

3. Whether claim preclusion bars Cubatabaco from relitigating its claim under Article 8 of the Inter-American Convention.

- 4 -

1623511099

## IV.    STATEMENT OF THE CASE

General Cigar's appeal raises only legal issues. General Cigar does not challenge the district court's factual findings relating to the underlying substance of Cubatabaco's claim under Article 8 of the IAC. Accordingly, for purposes of this appeal, General Cigar relies to a substantial extent on the district court's opinion and prior judicial opinions relating to this dispute for the background facts.

### A.    The Cuban Assets Control Regulations

The United States imposed an economic embargo on Cuba in 1963. JA390. The CACR set forth the terms of that embargo. 31 C.F.R. § 515.201 et seq. The Executive Branch promulgated the CACR pursuant to section 5(b) of the Trading with the Enemy Act of 1917, codified as amended at 12 U.S.C. § 95a. In 1996, Congress codified the CACR in the Cuban Liberty and Democratic Solidarity Act of 1996 ("LIBERTAD Act"), Pub. L. No. 104–114, 110 Stat. 785 (1996), codified at 22 U.S.C. § 6032(h) ("The economic embargo of Cuba, as in effect on March 1, 1996, including all restrictions under part 515 of title 31, Code of Federal Regulations, shall be in effect on March 12, 1996, and shall remain in effect, subject to section 6064 of this title."). The Secretary of the Treasury has the authority to administer the CACR and has delegated this authority to the Director of the Treasury Department's Office of Foreign Assets Control (OFAC). 31 C.F.R. § 515.802.

1623511099

"[E]xcept as specifically authorized by the Secretary of the Treasury" or the Secretary's designee, the CACR prohibit transactions that involve "property in which [Cuba], or any national thereof, has at any time . . . had any interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 515.201(b). Prohibited transactions include "all dealings in . . . transfers, withdrawals, or exportations of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States." 31 C.F.R. § 515.201(b)(1). Section 515.201(c) further prohibits "[a]ny transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions set forth in paragraphs (a) or (b) of this section." 31 C.F.R. § 515.201(c).

A transfer of property to a Cuban entity or national is a prohibited transaction. 31 C.F.R. §§ 515.201(b), 515.201(d), 515.309(a). "Property" and "property interest" include trademarks. 31 C.F.R. § 515.311(a). "Transfer" of property is broadly defined as "[a]ny actual or purported act or transaction . . . the purpose, intent, or effect of which is to create, surrender, release, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property." 31 C.F.R. § 515.310.

The Secretary of the Treasury (or the OFAC Director as the Secretary's designee) can authorize exceptions to the CACR's prohibitions through licenses. 31 C.F.R. § 515.201(b). A general license is any license or authorization whose terms

- 6 -

1623511099

are set forth in the CACR. 31 C.F.R. §§ 501.801(a), 515.317. Section 515.527(a)(1) of the CACR is a general license that authorizes "[t]ransactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest." 31 C.F.R. § 515.527(a)(1). A Cuban entity may also request a specific license from OFAC. 31 C.F.R. §§ 501.801(b), 515.318.

## B.    Article 8 of the Inter-American Convention

The Inter-American Convention (IAC) is a 1929 treaty among certain countries in the Western Hemisphere. JA396-397; 46 Stat. 2907. Both the United States and Cuba are signatories. JA397. Article 8 of the IAC states that an owner of a mark in one treaty country may apply to cancel a registration of an "interfering mark" in another treaty country if the owner meets two conditions. JA219. First, the owner must prove he "enjoyed legal protection for his mark" in his country "prior to the date of the application for the registration or deposit which he seeks to cancel." JA219. Second, the owner must prove the "claimant of the interfering mark, the cancellation of which is sought, had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods to which said interfering mark is applied, prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be cancelled." JA219.

- 7 -

1623511099

### C. General Cigar's 1981 and 1995 U.S. Trademark Registrations

General Cigar is a United States company. JA383. Founded in 1906, it is a leading maker and seller of premium, hand-made cigars in the United States and elsewhere. JA39. General Cigar owns two United States trademark registrations that are the subject of this dispute. JA39; JA323; JA325. The first is an incontestable registration for the standard word mark COHIBA for cigars. JA39; JA323. General Cigar applied for this registration in 1978. JA39; JA323. The USPTO issued it in 1981 as U.S. Reg. No. 1,147,309. JA39; JA323. The second is a registration for a stylized COHIBA mark for cigars. JA39; JA325. The USPTO issued it in 1995 as U.S. Reg. No. 1,898,273. JA39; JA325. General Cigar sold Cohiba-branded cigars in the United States from 1978 to 1987, resumed selling them in the U.S. in 1992, and has sold them continuously in the U.S. since that time. JA39-40.

### D. Cubatabaco's 1997 U.S. Trademark Application and Petition for Cancellation

Cubatabaco is a Cuban state-owned enterprise that sells tobacco products. JA390-391. Cubatabaco was established in the 1960s, shortly after Fidel Castro had expropriated the Cuban cigar industry. JA390-392. Cubatabaco began selling "Cohiba"-branded cigars in Cuba in 1970. JA391. In 1972, the Cuban government granted Cubatabaco a registration for a mixed trademark on a graphic design with the word "COHIBA" beneath it. JA302-303; JA390-391. In 1980, the Cuban

- 8 -

government granted Cubatabaco a registration for the word mark "COHIBA." JA305-306; JA391.

Due to the Cuban embargo, Cubatabaco has never sold Cohiba-branded cigars in the United States. JA37; JA109. Cubatabaco will remain unable to sell cigars in the United States unless the Cuban embargo is modified or lifted. JA37.

On January 15, 1997, Cubatabaco began trying to force the transfer of General Cigar's U.S. trademark registrations to itself. JA241-259. That day, Cubatabaco filed in the USPTO both a trademark application and a petition for cancellation. JA241-259. Cubatabaco applied to register a COHIBA mark in connection with tobacco, cigars, and other cigar-related goods. JA242; JA52. Cubatabaco simultaneously filed a petition to cancel General Cigar's COHIBA registrations. JA241-259. Article 8 of the IAC was one of Cubatabaco's asserted grounds for cancellation. JA250-251.

Later that year, the USPTO issued a non-final office action refusing Cubatabaco's trademark application. JA477. The USPTO cited a likelihood of confusion with General Cigar's registered trademarks as a basis for the refusal. JA477. Meanwhile, General Cigar moved to dismiss Cubatabaco's petition for cancellation in the TTAB. JA184; JA417.

### E.    The SDNY Litigation and 2005 Second Circuit Decision

Faced with these obstacles at the USPTO, Cubatabaco quickly fled to a new forum. Cubatabaco sought and obtained from OFAC a special license to "initiate

- 9 -

legal proceedings in the U.S. courts and to otherwise pursue their judicial remedies with respect to claims to the COHIBA trademark." JA383. Cubatabaco then filed a lawsuit against General Cigar in the U.S. District Court for the Southern District of New York (SDNY) in November 1997. JA383. Cubatabaco's claims included all of the cancellation claims it had asserted in the TTAB, one of which asserted a right to cancel General Cigar's registrations under Article 8 of the IAC. JA447-463. Cubatabaco also sought to enjoin General Cigar's use of the COHIBA mark in the United States. JA461-462.

Cubatabaco then filed a motion to suspend the TTAB cancellation proceeding that Cubatabaco itself had brought. JA443-446. In its motion, Cubatabaco told the TTAB that the resolution of the SDNY litigation "will be dispositive of all of the issues raised in the instant Cancellation Proceeding, including the issue of entitlement to registration." JA443. The TTAB granted Cubatabaco's motion to suspend the cancellation proceeding. JA469.

In a 2002 interlocutory ruling, the New York district court dismissed Cubatabaco's Article 8 claim with prejudice. *Empresa Cubana del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 280-82 (S.D.N.Y. 2002) (*Empresa I*). The court explained that Article 8 of the IAC could not be asserted under sections 44(b) and 44(h) of the Lanham Act because it did not protect rights "related to the repression

- 10 -

1623511099

of unfair competition." *Empresa I*, 213 F. Supp. 2d at 280-82 (applying 15 U.S.C. §§ 1126(b) & (h)).

In 2004, the New York district court ruled in Cubatabaco's favor on its claim for trademark infringement under section 43(a) of the Lanham Act. *Empresa Cubana del Tabaco v. Culbro Corp.*, 70 U.S.P.Q.2d 1650, 2004 WL 602295, at \*29-52 (S.D.N.Y. Mar. 26, 2004) (*Empresa III*). The court based its ruling on the "famous marks" doctrine. *Id.* at \*29-39, 52. The New York district court ordered cancellation of General Cigar's registrations and permanently enjoined General Cigar's use of the COHIBA mark. *Id.* at \*52; *Empresa Cubana del Tabaco v. Culbro Corp.*, 2004 WL 925647, at \*1-3 (S.D.N.Y. Apr. 30, 2004) (*Empresa IV*). The court also dismissed Cubatabaco's remaining claims with prejudice. *Empresa IV*, 2004 WL 925647, at \*1-3. Both parties appealed the judgment to the U.S. Court of Appeals for the Second Circuit.

The Second Circuit issued its decision in 2005. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462 (2d Cir. 2005) (*Empresa V*). The result was a complete win for General Cigar. *Id.* The Second Circuit reversed the infringement ruling on the Lanham Act claim, vacated the district court's cancellation orders and injunction, and affirmed the dismissal of Cubatabaco's other claims, including the Article 8 claim. *Id.* at 465, 483. Two portions of the Second Circuit's decision are especially relevant to the current appeal.

- 11 -

First, the Second Circuit held that the CACR bar Cubatabaco's acquisition of property rights in the COHIBA trademark through the "famous marks" doctrine. *Id.* at 472-76. The Second Circuit explained that "even if a foreign entity can, as a general matter, acquire trademark rights in the United States through the famous marks doctrine, Cubatabaco's acquisition [of] rights in the COHIBA mark in this manner is barred by the embargo." *Id.* at 471. The court also rejected Cubatabaco's argument that, even if the CACR prevented Cubatabaco from acquiring the mark, Cubatabaco could still obtain cancellation of General Cigar's registrations and an injunction barring General Cigar from using the COHIBA mark in the United States. *Id.* at 476-81. The court explained that "to grant this relief would entail a transfer of property rights in the COHIBA mark to Cubatabaco in violation of the embargo." *Id.* at 471.

The Second Circuit also emphasized that "[t]here is no contest that, as matters stand, General Cigar has the full panel of property rights in the COHIBA mark, including the right to exclude or limit others seeking to use the mark in the United States." *Id.* at 476. The court further explained that "Cubatabaco cannot obtain relief on a theory that General Cigar's use of the mark causes confusion, because, pursuant to our holding today, General Cigar's legal right to the COHIBA mark has been established as against Cubatabaco. General Cigar has a right to use the mark in the United States because it owns the mark in the United States." *Id.* at 479. The Second

- 12 -

Circuit emphasized that "principally because we hold that the [CACR] prohibit transfer of any property right in the COHIBA mark to Cubatabaco[,] we hold today that General Cigar, not Cubatabaco, owns the COHIBA trademark in the United States." *Id.* at 478 n.9.

Second, the Second Circuit held that Cubatabaco could not assert its IAC Article 8 claim under sections 44(b) and 44(h) of the Lanham Act because Article 8 does not "relate to the repression of unfair competition" within the meaning of section 44(h). *Empresa V*, 399 F.3d at 481-83. The court explained that Article 8 instead relates to priority of registration and "Congress enacted Section 44(d) of the Lanham Act to implement treaty rights regarding priority of foreign registrants." *Id.* at 483. The Second Circuit therefore concluded that the district court had properly dismissed Cubatabaco's Article 8 claim with prejudice. *Id.*

### F.    Subsequent Proceedings and the 2014 Federal Circuit Decision

Following the Second Circuit's decision and dismissal of Cubatabaco's remaining claims with prejudice, General Cigar asked the district court to additionally order the dismissal of Cubatabaco's cancellation petition and trademark application in the USPTO. *Empresa Cubana del Tabaco v. Culbro Corp.*, 478 F. Supp. 2d 513, 515 (S.D.N.Y. 2007) (*Empresa VI*). The district court denied the motion as untimely. *Id.* at 517-18. The district court also ruled that, even if the motion were timely, the Second Circuit's mandate prevented the district court from

- 13 -

granting the additional relief requested by General Cigar. *Id.* at 519-20. The district court also stated that the USPTO/TTAB should decide the effect of the Second Circuit's decision on Cubatabaco's cancellation petition and trademark application. *Id.* at 520-23. The Second Circuit affirmed after concluding the district court did not abuse its discretion in denying General Cigar's requested relief. *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 477-79 (2d Cir. 2008) (*Empresa VII*).

Despite its prior representation that the SDNY litigation would dispose of all issues raised in the TTAB cancellation proceeding, Cubatabaco revived its efforts to cancel General Cigar's registrations and filed an amended cancellation petition in the TTAB in 2011. JA470-502. The TTAB dismissed this petition on the ground that, as a result of the Second Circuit's decision, Cubatabaco lacked standing. *Empresa Cubana del Tabaco v. General Cigar Co., Inc.*, Cancellation No. 92025859, 2013 WL 3168090 (T.T.A.B. Mar. 14. 2013) (*Empresa VIII*). Cubatabaco appealed the TTAB's decision to the U.S. Court of Appeals for the Federal Circuit.

The Federal Circuit reversed the TTAB's standing ruling and remanded the cancellation proceeding to the TTAB. *Empresa Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270 (Fed. Cir. 2014) (*Empresa IX*). In finding that Cubatabaco had standing, the Federal Circuit stated: "Because the USPTO refused Cubatabaco registration based on a likelihood of confusion with General Cigar's Registrations, Cubatabaco has a real interest in cancelling the Registrations and a reasonable belief

that the Registrations blocking its application are causing it damage." *Id.* at 1274. The court said that "if Cubatabaco proves successful in the cancellation proceedings, Cubatabaco could obtain registration of the COHIBA mark." *Id.* at 1275.

The Federal Circuit also ruled that the CACR did not bar Cubatabaco's TTAB claims. *Id.* The Federal Circuit concluded that the Second Circuit's 2005 decision "specifically does not address Cubatabaco's ability to seek cancellation of the Registrations before the Board, which the CACR authorizes by general license." *Id.* The Federal Circuit relied on a 1996 letter from OFAC to Cubatabaco's counsel in which OFAC stated that the general license found in 31 C.F.R. § 515.527(a)(1) "'may be relied on . . . to petition to cancel a prior registration of a trademark where these actions relate to the protection of a trademark in which Cuba or a Cuban national general license has an interest.'" *Empresa IX*, 753 F.3d at 1275 (alteration in original) (quoting letter found at JA286 in the current appeal).

The Federal Circuit also ruled that neither issue nor claim preclusion barred Cubatabaco's IAC Article 8 claim before the TTAB. *Id.* at 1277-78.

Addressing issue preclusion, the Federal Circuit described the Second Circuit's decision as "holding that Cubatabaco's IAC claims were not 'related to the repression of unfair competition' and therefore did not fall 'within the ambit of Section 44(h).'" *Id.* at 1278. The Federal Circuit then stated: "Here, however, Cubatabaco asserts that, unlike the federal courts, the Board can cancel registrations

- 15 -

directly under Article 8 of the IAC, pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a)." *Id.* The Federal Circuit concluded that "[u]nlike in the district court, the Board need not consider the interplay with Section 44(h)" and "in any event, the Second Circuit certainly did not address whether Cubatabaco could request that the Board cancel the registrations directly under [IAC Article 8]." *Id.*

Regarding claim preclusion, the Federal Circuit stated that "[t]he Second Circuit never issued a final judgment on the merits of Cubatabaco's cancellation claims." *Id.* The Federal Circuit also stated that "the transactional facts involved in the Second Circuit decision differ from those in the cancellation proceedings before the [TTAB]." *Id.* As its sole example, the Federal Circuit stated that "the Second Circuit decided that under the CACR that Cubatabaco could not enjoin General Cigar from using the COHIBA mark because it would entail a prohibited transfer of property to a Cuban entity," whereas in the TTAB proceedings, "Cubatabaco need not own the mark to cancel the Registrations under 15 U.S.C. § 1064." *Id.*

### G.     The 2022 TTAB Cancellation Decision

The TTAB cancellation proceeding resumed upon remand from the Federal Circuit. JA194. On December 20, 2022, the TTAB issued a decision granting Cubatabaco's petition to cancel both of General Cigar's registrations under Article 8 of the IAC. JA176-217. The TTAB concluded that Cubatabaco had met its burden to prove its Article 8 claim and that General Cigar had failed to prove its affirmative

- 16 -

defense of issue preclusion. JA198-217. The TTAB did not reach the merits of Cubatabaco's other asserted grounds for cancellation. JA217. The TTAB stated that "[t]he registrations will be canceled in due course." JA217.

### H.    The § 1071(b)(1) District Court Case and Rulings

General Cigar had two distinct statutory avenues it could pursue in response to the TTAB's cancellation decision. General Cigar could appeal the TTAB's decision to the Federal Circuit under 15 U.S.C. § 1071(a). Or General Cigar could file a civil action in district court under 15 U.S.C. § 1071(b). General Cigar chose the latter. On February 20, 2023, General Cigar filed suit in the U.S. District Court for the Eastern District of Virginia. JA4.

General Cigar amended its complaint and asserted 10 counts in that complaint. JA32-83. Count I of the amended complaint sought to prevent the TTAB from cancelling General Cigar's registrations under Article 8 of the IAC. JA53-56. Count X sought a declaratory judgment that the CACR bar all grounds for cancellation of General Cigar's registrations. JA78-80. The district court ultimately decided only these two counts, and they are the only counts relevant to this appeal.

The district court granted in part and denied in part Cubatabaco's motion for judgment on the pleadings in July 2023. JA158; JA166. The district court ruled that it would treat the Federal Circuit's 2014 decision as law of the case and thus declined to independently address General Cigar's affirmative defenses of issue and claim

- 17 -

1623511099

preclusion. JA158. The district court also ruled that it would permit General Cigar to present evidence and arguments that were not before the TTAB. JA158.

The district court then granted the parties' joint motion for disposition of the action on a written record. JA8-9. The court subsequently clarified that the trial briefs and evidence must be limited to Count I (Article 8) and Count X (CACR) because those issues were potentially dispositive. JA14. With their trial briefing on the Article 8 claim, the parties submitted additional evidence that was not before the TTAB. JA389.

The district court issued its decision and entered final judgment in the § 1071(b) case on May 7, 2023. JA380-413. The court ruled in Cubatabaco's favor on both counts. JA380-413.

On Count I, the district court found that Cubatabaco had proven the elements of its Article 8 claim. JA390-411. The court thus concluded that "the TTAB validly cancelled General Cigar's registrations under Article 8 of the IAC." JA411.

On Count X, the district court ruled that, based on the Federal Circuit's decision, "the CACR do not prohibit the TTAB from cancelling General Cigar's registrations because the TTAB's cancellation of General Cigar's registrations does not constitute a prohibited transfer of property under the CACR; rather, it constitutes a lawful decision under the CACR's general license provision." JA411-413. The district court reasoned that "[c]ontrary to General Cigar's assertion, this Court is not

- 18 -

deciding whether it can cancel the registrations; rather, the issue is whether the TTAB properly cancelled General Cigar's registrations." JA412.

The district court therefore concluded: "Because the Court finds that Cubatabaco has established that the TTAB's cancellation of General Cigar's registrations was proper under Article 8 of the Inter-American Convention ('IAC') and that the Cuban Assets Control Regulations do not prohibit such cancellation, General Cigar's requested relief will be denied and its Amended Complaint will be dismissed with prejudice." JA382. This appeal followed.

## V.    SUMMARY OF ARGUMENT

The district court's judgment should be reversed for one or more of three independent reasons.

First, the CACR prohibit the cancellation of General Cigar's trademark registrations in this case. Applying Supreme Court precedent, this Court has held that a civil action under 15 U.S.C. § 1071(b)(1) is a typical district court case and not a form of appellate review of the TTAB's decision. Under § 1071(b)(1), the district court's decision constituted its own adjudication that General Cigar's trademark registrations should be cancelled. The district court's adjudication, in turn, authorized the TTAB to cancel the registrations. But as the Second Circuit held in *Empresa V*, a judicial cancellation order to the benefit of a Cuban national is a prohibited transfer of property to that entity under the CACR. As a result, the CACR

- 19 -

1623511099

bar cancellation of General Cigar's trademark registrations here. This case can and should be resolved on this basis alone.

Second, issue preclusion bars Cubatabaco's Article 8 claim. As a threshold matter, the Federal Circuit's 2014 decision on issue preclusion is not law of the case because this § 1071(b) civil action is a new case and not part of the same case as the prior TTAB proceedings and Federal Circuit appeal. Further, even if all those proceedings were deemed part of the same case, the Federal Circuit's decision on issue preclusion still should not control because an exception to the law of the case doctrine applies. Specifically, a subsequent Supreme Court trademark decision undermined the principal legal reasoning behind the Federal Circuit's issue preclusion ruling.

On the merits, General Cigar established issue preclusion as a matter of law. The Second Circuit already has concluded that Cubatabaco could not prevail on its Article 8 claim in the SDNY litigation because the Lanham Act did not authorize it. The purely legal issue of whether the Lanham Act authorizes Cubatabaco to bring an Article 8 claim in the TTAB proceedings is substantively the same. The mere fact that Cubatabaco attempted to assert that claim in two different fora, one judicial and one administrative, does not change the identity of the issues. Because the other elements of issue preclusion are met here too, this defense bars Cubatabaco's Article 8 claim.

- 20 -

1623511099

Third, claim preclusion bars Cubatabaco's Article 8 claim. As with issue preclusion, the Federal Circuit's decision on claim preclusion is not law of the case because it was not issued in the same case as this § 1071(b) civil action. On the merits of the claim preclusion defense, Cubatabaco's Article 8 claim in the SDNY litigation and its Article 8 claim in the TTAB proceedings are based on the same transactional nucleus of facts. Further, the dismissal with prejudice of Cubatabaco's Article 8 claim in the SDNY litigation was a final judgment on the merits. Claim preclusion therefore bars Cubatabaco's Article 8 claim as a matter of law.

## VI.   ARGUMENT

### A.   Standard of Review

Every issue in this appeal is a legal issue reviewed *de novo*.

First, this Court reviews the interpretation of statutes *de novo*. *United States v. Turner*, 389 F.3d 111, 119 (4th Cir. 2004).

Second, this Court reviews the application of issue preclusion *de novo*. *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019).

Third, this Court reviews the application of claim preclusion *de novo*. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004).

### B.   The CACR Prohibit Cancellation of General Cigar's Trademark Registrations

The district court erred as a matter of law in ruling that the CACR do not prohibit cancellation of General Cigar's trademark registrations here. The district

1623511099

court rejected General Cigar's framing of the issue as whether the CACR allow the district court to order cancellation. Rather, the district court ruled that its own authority to order cancellation was not at issue, and that the only question was whether the CACR allow the TTAB to cancel the registrations.

The district court's framing of the issue, however, contradicts 15 U.S.C. § 1071(b)(1) and this Court's precedent interpreting that statute. The current case is "a de novo action." *Shammas v. Focarino*, 784 F.3d 219, 221 (4th Cir. 2015). The district court does not sit as an appellate tribunal but instead must render its own independent judgment on cancellation. *See* 15 U.S.C. § 1071(b)(1); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155-56 (4th Cir. 2014). Moreover, the district court's "adjudication shall authorize the [USPTO] Director to take any necessary action, upon compliance with the requirements of law," including cancellation of the registrations. 15 U.S.C. § 1071(b)(1). As a result, the CACR's effect on the availability of a judicial cancellation order is squarely at issue. And because the CACR prohibit Cubatabaco from obtaining court-ordered cancellation of General Cigar's registrations, the district court's judgment should be reversed.

1.    **A Civil Action Under § 1071(b)(1) Is an Independent Case and Not a Form of Appellate Review of the TTAB's Decision**

Section 1071(b)(1) authorizes a party who is dissatisfied with a TTAB cancellation decision to seek a "remedy by a civil action" in district court. 15 U.S.C.

- 22 -

1623511099

§ 1071(b)(1). By the statute's plain terms, this civil action is not a form of appellate review. *Id.* Rather, it is an alternative to appellate review of the TTAB's decision. *Id.* A different subsection of the statute authorizes an appeal to the Federal Circuit. 15 U.S.C. § 1071(a). A dissatisfied party is authorized to file a civil action only if it forgoes an appeal to the Federal Circuit. 15 U.S.C. § 1071(b)(1) (". . . said person may, unless appeal has been taken to said United States Court of Appeals for the Federal Circuit, have remedy by a civil action . . ."); *Shammas*, 784 F.3d at 221 (15 U.S.C. § 1071 allows a dissatisfied party to proceed "either by appealing the ruling to the Court of Appeals for the Federal Circuit, *id.* § 1071(a)(1), or by commencing a de novo action in a federal district court, *id.* § 1071(b)(1)").

This Court's precedent confirms the *de novo*, non-appellate nature of a § 1071(b) civil action. *See Swatch*, 739 F.3d at 155-56. In *Swatch*, the district court had ruled that § 1071(b) meant that it "sits in a 'dual capacity,'" "acting in part as an appellate body." 739 F.3d at 156. This Court rejected the district court's view because it "is in tension with the statute and directly conflicts with the requirements of [the Supreme Court's decision in] *Kappos*." *Swatch*, 739 F.3d at 156 (referring to *Kappos v. Hyatt*, 566 U.S. 431 (2012)).

As this Court explained, *Kappos* is "the primary case interpreting the patent and trademark civil action statutes." *Swatch*, 739 F.3d at 155. In *Kappos*, "[t]he Supreme Court rejected the PTO's premise that a [35 U.S.C.] § 145 suit 'creates a

- 23 -

special proceeding that is distinct from a typical civil suit filed in federal district court[.]'" *Swatch*, 739 F.3d at 155-56 (quoting *Kappos*, 566 U.S. at 437). The Supreme Court instead "held that the district court 'does not act as the "reviewing court" envisioned by the APA[.]'" *Swatch*, 739 F.3d at 156 (quoting *Kappos*, 566 U.S. at 438). The Supreme Court's holding applies equally to a 15 U.S.C. § 1071(b) trademark civil action, which is the Lanham Act's counterpart to a Patent Act civil action under 35 U.S.C. § 145. *Swatch*, 739 F.3d at 156; *see also Moke Am. LLC v. Moke Int'l Ltd.*, 126 F.4th 263, 272 (4th Cir. 2025) ("Rather than being an appeal, a § 1071(b) action 'is a wholly separate suit, where new evidence is allowed and (in cases where new evidence is introduced) a de novo standard governs.'") (quoting *Xactware Sols., Inc. v. Buildxact Software Ltd.*, 95 F.4th 810, 818-19 (4th Cir. 2024)).

This Court further observed that "*Kappos* also explicitly defines the only situation where consideration of the TTAB decision is permitted." *Swatch*, 739 F.3d at 156. Specifically, "the district court may, in its discretion, consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence." *Id.* (citations and quotations omitted). Unlike an appeal to the Federal Circuit, *see* 15 U.S.C. § 1071(a)(3), the TTAB record is not even admitted into the district court record in a § 1071(b) case unless a party moves to admit it. 15 U.S.C. § 1071(b)(3); *Swatch*, 739 F.3d at 155.

- 24 -

Moreover, in a § 1071(b) case, "[t]he district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims." *Swatch*, 739 F.3d at 155 (citing 15 U.S.C. § 1071(b)(1)). The statute expressly provides that the district court "may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." 15 U.S.C. § 1071(b)(1). The statute does not say that the district court may affirm the TTAB's decision. *See id.* Rather, the district court must independently adjudicate the matters presented to it, and "[s]uch adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law." *Id.*

### 2. The District Court's Judgment Is a Judicial Cancellation Order Because It Authorizes the USPTO to Cancel General Cigar's Trademark Registrations

Based on § 1071(b)(1) and this Court's *Swatch* decision, the district court's decision in this case constitutes an adjudication that General Cigar's registrations should be cancelled. Because General Cigar filed a *de novo* action in district court instead of appealing the TTAB's decision to the Federal Circuit, the district court necessarily exercised its "authority independent of the PTO to grant or cancel registrations." *Swatch*, 739 F.3d at 155 (citing 15 U.S.C. § 1071(b)(1)). The district

- 25 -

1623511099

court's adjudication, in turn, authorizes the USPTO Director to cancel General Cigar's registrations. 15 U.S.C. § 1071(b)(1).

For this reason, the district court erred by characterizing its role as merely determining "whether the TTAB properly cancelled General Cigar's registrations" and not "deciding whether [the district court] can cancel the registrations." JA412. As a result, the district court answered the wrong question on the CACR issue. The proper question in this independent civil action is not whether the CACR prohibited the TTAB from cancelling the registrations in the TTAB proceedings. The proper question instead is whether the CACR prohibit the district court from ordering cancellation of the registrations in the new civil action.

In its 2014 decision, the Federal Circuit ruled that the CACR authorized Cubatabaco to seek cancellation of General Cigar's trademark registrations before the TTAB. *Empresa IX*, 753 F.3d at 1274-75. Here, as the district court noted, "General Cigar argues that the Federal Circuit's decision is irrelevant because it was limited to proceedings before the TTAB." JA412. The district court rejected this argument on the theory that "those proceedings [*i.e.*, the TTAB proceedings] are what is at issue in this civil action." JA412. The district court stated that it "is not deciding whether it can cancel the registrations; rather, the issue is whether the TTAB properly cancelled General Cigar's registrations." JA412. The district court's framing of the issue drove its rejection of General Cigar's CACR argument. *See*

- 26 -

JA412-413 (relying on the Federal Circuit's decision to find that "the CACR do not prohibit the TTAB from cancelling General Cigar's registrations because the TTAB's cancellation of General Cigar's registrations does not constitute a prohibited transfer of property under the CACR; rather, it constitutes a lawful decision under the CACR's general license provision, § 515.527(a)(1)").

The district court's framing of the issue, however, contradicts § 1071(b)(1) and *Swatch*. As explained in Section VI.B.1 above, § 1071(b)(1) authorizes a typical civil action and not a form of appellate review. *See* 15 U.S.C. § 1071(b)(1); *Swatch*, 739 F.3d at 155-56 (applying *Kappos*, 566 U.S. at 437, to trademark civil actions under § 1071(b)(1)). As a result, the district court's decision cannot simply affirm the TTAB's decision or merely allow that decision to stand by dismissing a complaint. The district court instead exercises its "authority independent of the PTO to grant or cancel registrations," *Swatch*, 739 F.3d at 155, in "adjudg[ing] . . . that a registration involved should be canceled," 15 U.S.C. § 1071(b)(1).

In turn, the district court's adjudication that a registration should be cancelled authorizes the USPTO Director to cancel the registration. 15 U.S.C. § 1071(b)(1) ("Such adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law."). The USPTO Director's authority to cancel a registration involved in a § 1071(b) civil action therefore depends upon the district court's independent adjudication. *See id.* The Director's authority does not

- 27 -

flow from the TTAB's preceding determination that the registration should be cancelled. *See id.*

The statute that more generally governs federal district courts' power over trademark registration also supports the conclusion that the district court erred in characterizing its role vis-à-vis cancellation here. *See* 15 U.S.C. § 1119. Section 1119 states: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." The statute further provides: "Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby." 15 U.S.C. § 1119.

A civil action under § 1071(b) filed by a party dissatisfied with a TTAB decision to cancel a registered mark is by definition an "action involving a registered mark," 15 U.S.C. § 1119. Section 1119 thus applies to § 1071(b) cases. And § 1119 likewise makes no reference to affirming or letting stand a TTAB cancellation decision. Rather, as relevant here, § 1119 empowers federal district courts to "determine the right to registration" and "order the cancelation of registrations" in actions involving a registered mark. In such cases, the USPTO derives its authority to cancel a registration from the certified decree or order of the district court by

1623511099

which the USPTO Director's actions are controlled. *See* 15 U.S.C. § 1119. The USPTO's ability to cancel a registration in such cases depends on what the district court orders and not on any independent authority of the TTAB to cancel a registration.

The district court's citation to a portion of the relief requested in General Cigar's amended complaint cannot alter this legal framework. The district court noted that "General Cigar is asking the Court to reverse the TTAB's decision and vacate its order cancelling General Cigar's Cohiba registrations." JA412 (citing JA81). But General Cigar's phrasing of this portion of its requested relief did not convert the civil action into an appellate proceeding. Section 1071(b), *Kappos*, and *Swatch* already had settled that question.

Further, General Cigar also asked the district court to determine that its registrations remain valid, determine and declare that Cubatabaco cannot prevail on any claim for cancellation of the registrations, and order the USPTO Director to take actions consistent with the Court's decision. JA81-82. These forms of requested relief were sufficient to provide the appropriate statutory remedy if the district court ruled in General Cigar's favor. In no event did General Cigar indicate it would be appropriate for the district court to simply affirm the TTAB's decision or otherwise decline to disturb it without an independent adjudication that would have the legal effect of ordering cancellation if the court ruled in Cubatabaco's favor. JA53-82.

- 29 -

The district court therefore erred in concluding that it need not decide whether the CACR allow it to cancel General Cigar's registrations. Once the district court decided that Cubatabaco had established a right to cancellation under Article 8 of the IAC, the nature of a § 1071(b)(1) civil action required the district court to then determine whether the CACR allowed the district court to order such cancellation. And, as shown in the next section, the CACR prohibit judicial cancellation orders to the benefit of a Cuban national as a matter of law.

### 3.      The CACR Prohibit Cubatabaco from Obtaining Judicial Cancellation of General Cigar's Trademark Registrations

Once the issue is framed properly under the statute and precedent, the conclusion that the CACR prohibit cancellation of General Cigar's trademark registrations in this case flows readily. The CACR prevent the district court from ordering cancellation of General Cigar's registrations, and the USPTO thus may not cancel them.

The Second Circuit held that a district court order that enjoined General Cigar from using its registered COHIBA mark in the U.S. and cancelled General Cigar's registrations was a prohibited transfer of property under the CACR. *Empresa V*, 399 F.3d at 476-77. The Second Circuit also held that no general or specific license exempted the injunction and cancellation order from the CACR's prohibition. *Id.* at 472-76. Since the Second Circuit's decision in *Empresa V*, there has been no relevant change to the CACR and no license that would authorize judicial cancellation of

- 30 -

General Cigar's registrations has been issued. The district court in this § 1071(b)(1) action is therefore subject to the same "limitation on judicial authority" that precluded judicial cancellation in *Empresa V*, 399 F.3d at 477. Accordingly, the CACR bar the district court from ordering cancellation of General Cigar's registrations under Article 8 of the IAC or any other theory.

The LIBERTAD Act "codified the regulations implementing the Cuban embargo," *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 120 (2d Cir. 2000). *See* 22 U.S.C. § 6032(h). As the Second Circuit explained, "absent a general or specific license, § 515.201(b)(1) of the [CACR] prohibit[s] a transfer of property rights, including trademark rights, to a Cuban entity by a person subject to the jurisdiction of the United States." *Empresa V*, 399 F.3d at 473. The Second Circuit further explained that "Section 515.201(b)(2) prohibits a transfer outside of the United States of property subject to the jurisdiction of the United States – if the transfer is to a Cuban entity." *Id.*

In ruling that the CACR prohibited Cubatabaco from obtaining the COHIBA mark under the "famous marks" doctrine, the Second Circuit held that "General Cigar has the full panel of property rights in the COHIBA mark, including the right to exclude or limit others seeking to use the mark in the United States." *Empresa V*, 399 F.3d at 476. An order excluding "General Cigar from commercial use of the COHIBA mark in the United States . . . would entail a transfer from General Cigar

- 31 -

to Cubatabaco of a 'right, remedy, power, privilege, or interest with respect to [the COHIBA mark],'" and "it is exactly this brand of property right transfer that the embargo prohibits." *Id.* at 476 (quoting 31 C.F.R. § 515.310). The CACR are a "limitation on judicial authority" to issue such orders. *Id.* at 477. And Cubatabaco has conceded that "this 'limitation on judicial authority' necessarily applied to both [the SDNY's] injunction and cancellation orders." JA348 (Cubatabaco's reply brief in the *Empresa IX* Federal Circuit appeal).

The Second Circuit based this holding on § 515.201(b)(2) "because Cubatabaco's acquisition of the mark is a transfer of U.S. property rights from inside the United States to Cuba – a location 'outside of the United States.'" *Empresa V*, 399 F.3d at 474. The Second Circuit also noted, without resolving the issue, that the prohibited transaction also "could be viewed as a transfer of property rights to Cubatabaco by a 'person subject to the jurisdiction of the United States'" (*i.e.*, the district court itself). *Id.* at 475 n.5 (quoting 31 C.F.R. § 515.201(b)(1)).

The Second Circuit also rejected Cubatabaco's argument that, even if it could not acquire the COHIBA trademark in the U.S., General Cigar's use of that mark for cigars was likely to confuse consumers and Cubatabaco was therefore entitled to cancellation of the registrations and an injunction under § 43(a) of the Lanham Act. *Empresa V*, 399 F.3d at 479. The Second Circuit held that "General Cigar's legal right to the COHIBA mark has been established as against Cubatabaco" and

- 32 -

"General Cigar has a right to use the mark in the United States because it owns the mark in the United States." *Id.*

The Second Circuit also rejected Cubatabaco's argument for relief under an international treaty, Article 6*bis* of the Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, as revised at Stockholm, July 14, 1967, 21 U.S.T. 1583, 828 U.N.T.S. 305 ("Paris Convention"). *Empresa V*, 399 F.3d at 481. The Second Circuit held that "[w]e do not read Article 6*bis* and Section 44(b) and (h) of the Lanham Act to require cancellation of General Cigar's properly registered trademark or an injunction against its use of the mark in the United States under these circumstances." *Id.* The court further held that, even if the Paris Convention, last ratified in 1970, did require that relief, it would have been rendered null by the LIBERTAD Act, enacted by Congress in 1996. That is because "legislative acts trump treaty-made international law when those acts are passed subsequent to ratification of the treaty and clearly contradict treaty obligations." *Id.* (quotations and citations omitted). Thus, "any claim grounded in the Paris Convention that presented an irreconcilable conflict with the [CACR] would be rendered 'null' by the [CACR]." *Id.* (citing *Breard v. Greene*, 523 U.S. 371, 376 (1998)); *see also Havana Club*, 203 F.3d at 124-126 (holding that plaintiff has no rights to "Havana Club" trademark because the CACR and LIBERTAD Act overrode Article 11 of the IAC).

- 33 -

The same reasoning applies with full force here. General Cigar's U.S. COHIBA trademark registrations "confer[] important legal rights and benefits" on General Cigar. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015); *see also Matal v. Tam*, 582 U.S. 218, 226 (2017). These rights and benefits include constructive notice to third parties, *prima facie* evidence of the validity and registration of the mark, and incontestability after five years of use after registration. *B&B Hardware*, 575 U.S. at 142. These rights flowing from trademark registration are all "property" under the CACR. *See Empresa V*, 399 F.3d at 473. A district court order to cancel General Cigar's registrations is therefore a forbidden transfer of property under the CACR. *See id.* at 477; 31 C.F.R. § 515.201(b). The CACR deny federal courts the "judicial authority" to enter a cancellation order to Cubatabaco's benefit. *Id.* at 476-77.

Moreover, judicial cancellation orders are prohibited regardless of whether Cubatabaco proves the elements of an Article 8 claim. Because the LIBERTAD Act (enacted in 1996) post-dates the IAC (entered into force in 1931), the CACR override the IAC as to Cuban entities, just as they override the Paris Convention, *see Empresa V*, 399 F.3d at 481. Any claim by a Cuban national under Article 8 would be in "irreconcilable conflict with the [CACR]" and "would be rendered null by the [CACR]." *Id.* (quotations and citation omitted).

Cubatabaco itself has conceded that the limitation on judicial authority that the Second Circuit identified in *Empresa V* includes judicial cancellation orders. JA348; JA353. Cubatabaco told the Federal Circuit that, under 31 C.F.R. § 515.527(a)(1), "a *Board* cancellation order is licensed, but a *judicial* cancellation order is not." JA353 (emphasis in original). Consistent with Cubatabaco's representation, the Federal Circuit held only that the general license in § 515.527(a)(1) authorizes cancellation orders by the TTAB as "'related to the registration and renewal' of trademarks in the USPTO," thus distinguishing the Second Circuit's holding regarding the CACR's limitation on judicial authority. *Empresa IX*, 753 F.3d at 1275. And the "related to" language in the general license "should be interpreted narrowly as it creates an exception to the broad prohibitions of the embargo." *Empresa V*, 399 F.3d at 476 (citing *Havana Club*, 203 F.3d at 123-24).

The Federal Circuit's CACR ruling, limited to proceedings before the TTAB, thus has no application to judicial cancellation orders. Having conceded as much before, Cubatabaco cannot contend otherwise now. And any such contention would be wrong anyway for the above reasons. The CACR thus bar the district court from ordering cancellation of General Cigar's registrations under Article 8 of the IAC or any other theory Cubatabaco has raised, which General Cigar addressed in Counts II-IX of its amended complaint.

- 35 -

In sum, under § 1071(b)(1), the district court was required to independently determine whether General Cigar's registrations should be cancelled rather than deciding whether the TTAB's decision was proper. The CACR, the Second Circuit's *Empresa V* decision interpreting the CACR, and Cubatabaco's concession that judicial cancellation orders are not licensed then required the district court to conclude that it is legally prohibited from ordering cancellation and to enter judgment in General Cigar's favor. The district court's contrary conclusion was erroneous, and its judgment should be reversed. Because the application of the CACR is a purely legal question, there is no need for remand. The district court instead should be instructed to (1) enter a judgment that declares that the CACR bar Cubatabaco from obtaining cancellation of General Cigar's registrations under any theory and (2) certify that judgment to the USPTO Director for appropriate entry on the USPTO's records to prevent the cancellation of General Cigar's registrations.

## C.    Issue Preclusion Bars Cubatabaco's Article 8 Claim

The CACR issue is case-dispositive, but if the Court proceeds further, then issue preclusion bars Cubatabaco's Article 8 claim as a matter of law. Although the Federal Circuit ruled against General Cigar on issue and claim preclusion, that decision is not law of the case here because, under 15 U.S.C. § 1071, it was not rendered in the same case that is before this Court. Even if it were, an exception to the law of the case doctrine warrants a different outcome on issue preclusion.

- 36 -

### 1. The Federal Circuit's Decision on Issue Preclusion Is Not Law of the Case

Under the law of the case doctrine, "earlier decisions of a court become law of the case and must be followed unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). But his "doctrine only applies within the same case -- an identical issue decided in a separate action does not qualify as law of the case." *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010); *accord* 18B Charles Alan Wright & Arthur D. Miller, FEDERAL PRACTICE AND PROCEDURE § 4478 (3d ed.).

As explained in Section VI.B.1 above, the TTAB cancellation proceeding and the Federal Circuit appeal that occurred within that proceeding are not part of the same case as the current civil action under 15 U.S.C. § 1071(b). The plain statutory language and this Court's precedential decision in *Swatch* compel that conclusion. "In a § 1071(b) action, the district court reviews the record *de novo* and acts as the finder of fact." *Swatch*, 739 F.3d at 155. "The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims." *Id.* The district court does not act—not even "in part"—"as an appellate body." *Id.* at 156. Accordingly, the Federal Circuit's

1623511099

decision is not the law of the case in the *de novo* § 1071(b) action that is on appeal to this Court. The district court instead needed to consider General Cigar's issue preclusion defense anew. Its failure to do so was a legal error, and this Court may decide the purely legal defense of issue preclusion *de novo* on appeal, *see Hately*, 917 F.3d at 777.

Section 1071(a)(4) provides that, after the Federal Circuit decides an appeal from a TTAB decision, "the court shall issue its mandate and opinion to the Director, which shall be entered of record in the United States Patent and Trademark Office and shall govern the further proceedings in the case." 15 U.S.C. § 1071(a)(4). But "the case" refers only to the TTAB proceedings. It does not refer to a separate civil action under § 1071(b), even if that civil action follows a TTAB decision made on remand from a prior Federal Circuit appeal. A § 1071(b) case is simply a "'typical civil suit filed in federal district court.'" *Swatch*, 739 F.3d at 155-56 (quoting *Kappos*, 566 U.S. at 437). And nothing in § 1071(b) states or suggests that a prior Federal Circuit decision in an appeal from a TTAB proceeding governs an independent § 1071(b) civil action that follows a TTAB decision that was rendered after remand from the Federal Circuit. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress also acts intentionally and purposely in the disparate inclusion or

- 38 -

exclusion." (quotations and citation omitted)). Rather, the only sentence of § 1071(b) that mentions the Federal Circuit simply makes clear that a civil action in district court filed by a party dissatisfied with a TTAB decision is a mutually exclusive alternative to a Federal Circuit appeal. 15 U.S.C. § 1071(b)(1).

In *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 522 & n.8 (4th Cir. 2021), this Court stated that a prior Federal Circuit decision would be law of the case in a § 1071(b) action that follows a TTAB decision that was issued after a remand from a Federal Circuit appeal. That statement in *Snyder's-Lance*, however, was a mere dictum and should not be adopted here because it is inconsistent with § 1071(b), the Supreme Court's prior decision in *Kappos*, and this Court's prior decision in *Swatch*.

The issue in *Snyder's-Lance* was "a narrow question of statutory interpretation: whether a party to a trademark dispute who appeals a decision of the [TTAB] to the Federal Circuit may, after vacatur and remand by the Federal Circuit and the issuance of a new decision by the [TTAB], seek review of that second decision in federal district court." 991 F.3d at 513-14. This Court "h[e]ld that a district court may review a subsequent decision of the [TTAB] in such circumstances," *id.* at 514, and thus "h[e]ld that the district court erred in dismissing the case for lack of jurisdiction," *id.* at 516. The question at issue in the current appeal—whether § 1071(a)(4) means that a prior Federal Circuit decision is law of

the case in a subsequent § 1071(b) action—was not presented in *Snyder's-Lance*. This Court recognized as much in *Snyder's-Lance* when it said "Plaintiffs suggest that this provision [§ 1071(a)(4)] may apply solely to bind the Trademark Board, not other federal courts" but "[w]e need not decide this question for purposes of this appeal." *Id.* at 517 n.2.

The Court in *Snyder's-Lance* nonetheless addressed that question later in its opinion. But even then, it qualified that discussion as unnecessary to its holding. This Court stated: "We think the better interpretation of § 1071(a)(4), *to the extent it is relevant at all,* is that it incorporates a strict version of the 'law of the case' rule in the event that the Federal Circuit renders a decision and, later, the case comes before a different circuit court." *Id.* at 522 (emphasis added). The Court also reiterated that "the parties do not dispute that the Federal Circuit's earlier decision in this case is binding as to the issues it decided." *Id.* The issue was therefore neither essential to the Court's holding nor the subject of adversarial briefing and argument by the parties.

The Court's statement on this issue in *Snyder's-Lance* is therefore a classic example of dictum. *See Pittston Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999) ("Dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding  -- that, being peripheral, may not have received the full and careful consideration of the court that

- 40 -

uttered it." (quotations and citation omitted)). And, of course, "dictum is not binding." *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021).

Nor should this Court adopt *Snyder-Lance*'s dictum as its holding here. As explained above, the prior Federal Circuit decision resulted from Cubatabaco's appeal of the TTAB's decision on standing. Section 1071(a)(4) made the Federal Circuit's opinion and mandate binding in the subsequent TTAB proceedings on remand. But nothing in § 1071 renders the Federal Circuit's opinion and mandate binding in an independent civil action under § 1071(b). If Congress had intended such a result, it could have expressly said so in the statute. It did not, and such a requirement should not be read into the statute here. *See United States v. Roof*, 10 F.4th 314, 390 (4th Cir. 2021) ("[W]e take it as a given that Congress knows how to say something when it wants to, its silence controls when it chooses to stay silent." (quotations and citation omitted)).

A comparison of the respective structures of § 1071(a)(4) and 1071(b)(1) further confirms this plain-language reading of the statute. The penultimate sentence of § 1071(a)(4) states: "Upon its determination the [Federal Circuit] shall issue its mandate and opinion to the Director, which shall be entered of record in the United States Patent and Trademark Office and shall govern the further proceedings in the case." In § 1071(b)(1), by contrast, the penultimate sentence states: "[The district

- 41 -

court's] adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law."

Accordingly, the penultimate sentence of each subsection establishes what happens upon issuance of a controlling decision in each alternative scenario (Federal Circuit appeal or district court civil action). Because § 1071(a)(4) prescribes traditional appellate review of agency action, the Federal Circuit's opinion and mandate are transmitted to the USPTO Director and govern further proceedings in the USPTO. Because § 1071(b)(1) provides for a separate district court lawsuit, the district court's adjudication determines what happens next in the USPTO. There is no basis to infer from these separate, parallel provisions that Congress silently intended the penultimate sentence of § 1071(a)(4) to apply to a § 1071(b) action filed after a TTAB decision issued after a remand from a Federal Circuit decision.

The Supreme Court's decision in *Hoover Co. v. Coe*, 325 U.S. 79 (1945), confirms this understanding of the penultimate sentence of § 1071(a)(4). *Hoover* contrasted the parallel provisions of the Patent Act as follows: "In the one case the adjudication in equity authorizes issue of a patent on the applicant's 'otherwise complying with the requirements of law.' In the other the decision 'shall govern the further proceedings in the case' in the Patent Office." 325 U.S. at 83 (citations omitted). Likewise, in a § 1071(b) civil action, the district court's adjudication authorizes the USPTO to act in accordance with the district court's judgment. 15

- 42 -

U.S.C. § 1071(b)(1). And in a § 1071(a) appeal, the Federal Circuit's decision governs the further proceedings in the case in the USPTO. 15 U.S.C. § 1071(a)(4).

This Court in *Snyder's-Lance* acknowledged that *Hoover* "appears to endorse th[e] interpretation in the patent context" that the Federal Circuit's decision "may apply solely to bind the [TTAB], not other federal courts." *Snyder's-Lance*, 991 F.3d at 517 n.2. But the Court said it "need not decide this question for purposes of this appeal." *Id.* Here, by contrast, the question is squarely presented. And *Hoover* confirms that the correct interpretation of § 1071(a)(4) is that the Federal Circuit's decision binds only the TTAB, and not other federal courts in a civil action under § 1071(b).

### 2. Even If a Federal Circuit Decision Could Be Law of the Case in a § 1071(b) Civil Action, an Exception Applies Here

Even if a Federal Circuit decision could be law of the case in a § 1071(b) action, the doctrine has exceptions, and one of those exceptions applies here. A prior appellate decision is not law of the case where intervening legal authority from a higher court casts serious doubt on the correctness of the prior decision. *See United States v. Cannady*, 63 F.4th 259, 267 (4th Cir. 2023). This exception does not require that the higher court overrule precedent relied on by the prior decision. *Id.* It requires only that the "intervening legal authority 'undermines' . . . or rejects 'the principal legal reasoning behind the' . . . prior decision." *Id.*; *see also United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2010) ("A Supreme Court opinion need not

- 43 -

be directly on point to undermine one of our opinions. 'A [Supreme Court] holding . . . can extend through its logic beyond the specific facts of its case.'" (quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 38 (2010)).

Here, the Supreme Court's 2015 decision in *B&B Hardware* undermines the principal legal reasoning behind the Federal Circuit's 2014 decision on issue preclusion. The Federal Circuit ruled it was not bound to follow the Second Circuit's decision on whether the Lanham Act authorized Cubatabaco to pursue its Article 8 claim. *Empresa IX*, 753 F.3d at 1277-78. The Federal Circuit reasoned that the issue before the Second Circuit was different because it arose from a district court case instead of a TTAB cancellation proceeding. *Id.* However, under the Supreme Court's subsequent decision in *B&B Hardware*, the issue was the same in both proceedings because it involved application of the same substantive legal standard, even though different tribunals were involved. Accordingly, even if there were only one "case" here, the Federal Circuit's decision is not entitled to law of the case treatment because *B&B Hardware* undermines that decision.

In *Empresa V*, the Second Circuit affirmed the dismissal of Cubatabaco's claim under Article 8 of the IAC. 399 F.3d at 481-83. The Second Circuit "h[e]ld that Cubatabaco cannot assert Article 7 or Article 8 rights under Sections 44(b) and (h) of the Lanham Act." *Id.* at 483. The Second Circuit so held because "Congress implemented Articles 7 and 8 through Section 44(d) of the Lanham Act and those

- 44 -

provisions do not relate to the 'repression of unfair competition' within the meaning of Section 44(h)." *Id.* The Second Circuit further explained that "Congress enacted Section 44(d) of the Lanham Act to implement treaty rights regarding priority of foreign registrants." *Id.*

The Second Circuit's *Empresa V* decision focused on section 44 of the Lanham Act because, in *Havana Club*, the Second Circuit had held that a party seeking to assert rights under the IAC must do so pursuant to section 44(b) of the Lanham Act. *Havana Club*, 203 F.3d at 128. Section 44(b) provides: "Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter." 15 U.S.C. § 1126(b). In *Havana Club*, the Second Circuit explained that Congress's 1946 enactment of section 44(b) superseded the Supreme Court's 1940 holding that the IAC became law in the United States upon ratification without the aid of additional legislation. 203 F.3d at 128 (discussing *Bacardi Corp. of Am. v. Domenech*, 311 U.S. 150, 161 (1940)).

- 45 -

Notwithstanding, the Federal Circuit ruled in *Empresa IX* that the Second Circuit's decision did not bar Cubatabaco's Article 8 claim under the doctrine of issue preclusion. 753 F.3d at 1277-78. The Federal Circuit did so on the theory that Cubatabaco was invoking the TTAB's authority to cancel registrations directly under 15 U.S.C. § 1067(a) and, therefore, "[u]nlike in the district court, the Board need not consider the interplay with Section 44(h)." 753 F.3d at 1278. The Federal Circuit added that "in any event, the Second Circuit certainly did not address whether Cubatabaco could request that the Board cancel the registrations directly under those same IAC provisions." *Id.* The Federal Circuit thus ruled there was no issue preclusion because there was no identity of issues between the SDNY litigation and TTAB proceedings on the Article 8 claim. *Id.*

One year later, however, the Supreme Court in *B&B Hardware* interpreted the same element of issue preclusion on which the Federal Circuit had relied: whether the same issue of fact of law is presented in both the prior and current actions. 575 U.S. at 148. The Supreme Court concluded that if a federal court and the TTAB both use the same substantive legal standards to determine a question of trademark law, then the legal issue is the same. *Id.* As a result, a final judgment in one forum deciding the issue under that legal standard is preclusive when that issue is later raised between the same parties in the other forum. *See id.* at 152-53. This rule applies even if the second forum applies that legal standard differently and would

- 46 -

have reached a different result had the claim first been asserted in that forum: "[I]f federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently. A contrary rule would encourage the very evils that issue preclusion helps to prevent." *Id.* at 154.

The Supreme Court applied this rule in *B&B Hardware* to "hold that a court should give preclusive effect to TTAB decisions if the ordinary elements of issue preclusion are met." *Id.* at 141-42. The same rule—framed broadly in terms of different "tribunals," *id.* at 154—applies equally when the first forum is the district court and the second forum is the TTAB.

The Federal Circuit's preclusion analysis cannot be squared with *B&B Hardware*. Here, the TTAB was required to apply the same substantive law (Article 8 of the IAC and section 44 of the Lanham Act) that the Second Circuit applied. The Federal Circuit ruled that the Second Circuit's decision was not issue-preclusive because "unlike the federal courts, the Board can cancel registrations directly under Article 8 of the IAC, pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a)." *Empresa IX*, 753 F.3d at 1278. But § 1067(a) is not a substantive legal standard. Rather, it is merely the statutory provision that authorizes the TTAB to decide registration disputes. *See* 15 U.S.C. § 1067(a). Section 44 of the Lanham Act and precedent interpreting and applying that statute contain the substantive legal standard for determining whether an Article 8 claim can be asserted in the United

- 47 -

1623511099

States. The substantive legal standard is the same whether considered by a federal court or the TTAB.

Specifically, the TTAB's view is that the IAC "is self-executing," "requir[es] no special implementing legislation," and "provides remedies independent of the Lanham Act." JA199-200; *British-Am. Tobacco, Co., Ltd. v. Philip Morris, Inc.*, 55 U.S.P.Q.2d 1585, 2000 WL 1005433, at *4-6 (T.T.A.B. 2000); *see also British-Am. Tobacco, Co., Ltd. v. Philip Morris, Inc.*, 2001 WL 256142, at *2 & n.3 (T.T.A.B. Feb. 27, 2001) (cited by Federal Circuit in *Empresa IX*, 753 F.3d at 1278). But as explained above, the Second Circuit interprets the same law differently. *See Havana Club*, 203 F.3d at 128 (holding that section 44(b) as originally enacted "specifically incorporated the treaty rights of persons who are nationals of . . . any foreign country, which is a party to [the IAC or] . . . any other convention or treaty relating to trade-marks, trade or commercial names, or the repression of unfair competition"). Under the law that the Second Circuit applied in *Empresa V*, therefore, a party that invokes Article 8 "must assert its rights under the IAC pursuant to section 44(b) of the Lanham Act." *Havana Club*, 203 F.3d at 128. The Second Circuit's *Empresa V* decision thus precludes Cubatabaco from reasserting its failed Article 8 claim in another forum.

Having lost this issue at the Second Circuit, Cubatabaco was not free to relitigate it in the TTAB or any other forum. As the Supreme Court held, "if federal

- 48 -

1623511099

law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently." *B&B Hardware*, 575 U.S. at 154. Because *B&B Hardware* undermined and rejected the reasoning on which the Federal Circuit's issue preclusion ruling was based, the Federal Circuit's decision cannot be law of the case here.

### 3.    The Elements of Issue Preclusion Are Met Here

If this Court agrees that the Federal Circuit's decision is not law of the case for either of the above reasons, the legal conclusion that General Cigar has established its issue preclusion defense on the Article 8 claim follows easily. Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotations and citations omitted).

The only element of issue preclusion that the parties have meaningfully disputed is whether the Article 8 issue that was actually litigated and decided in the SDNY litigation is the same issue that was presented in the TTAB proceedings. As shown in Section VI.C.2 above, the issue was the same. The different outcomes in the two tribunals turned not on different substantive legal standards, but the tribunals' different applications of the same substantive standard. *B&B Hardware* forbids Cubatabaco from obtaining a different outcome on this issue from the TTAB

- 49 -

1623511099

after having lost it in the Second Circuit. Accordingly, the district court erred in not entering judgment against Cubatabaco on its Article 8 claim based on issue preclusion.

### D.    Claim Preclusion Bars Cubatabaco's Article 8 Claim

#### 1.    The Federal Circuit's Decision on Claim Preclusion Is Not Law of the Case

For the same reasons given in Section VI.C.1 above for issue preclusion, the Federal Circuit's decision on claim preclusion is not law of the case. The district court therefore erred as a matter of law by not independently deciding General Cigar's claim preclusion defense.

#### 2.    The Elements of Claim Preclusion Are Met Here

If this Court agrees that the Federal Circuit's decision on claim preclusion is not law of the case, then this Court may decide that purely legal defense *de novo* on appeal. *See Pueschel*, 369 F.3d at 354. "Three requirements exist for the invocation of claim preclusion: 1) the parties must be the same or in privity with the original parties; 2) the claims in the subsequent litigation must be substantially the same as those in the prior litigation; and 3) the earlier litigation must have resulted in a final judgment on the merits." *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989). The parties have disputed only the second and third requirements.

On the second requirement, "[r]ules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment

- 50 -

1623511099

bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). This determination turns on whether the claims asserted in the second case "arise out of the same transaction or series of transactions" or "the same core of operative facts." *Id.* at 1316.

Cubatabaco's Article 8 claim in the TTAB arose from the same transactions and core of operative facts as the Article 8 claim it lost in the SDNY and Second Circuit. In the SDNY litigation, Cubatabaco's Article 8 claim was based on the ground that (1) Cubatabaco enjoyed legal protection for the COHIBA mark in Cuba before General Cigar filed to register the mark in the U.S.; (2) Cubatabaco used or employed the mark in Cuba in connection with "Cohiba"-branded cigars; and (3) General Cigar knew about Cubatabaco's use or employment before applying to register and before using the COHIBA mark in the U.S. *See Empresa I*, 213 F. Supp. 2d at 280 & n.51; *Empresa V*, 399 F.3d at 466. Cubatabaco asserted the same transactions and core of operative facts in support of its Article 8 claim in the TTAB. JA478-500. The TTAB in the cancellation proceeding and the district court in this case based their rulings for Cubatabaco on the Article 8 claim on this same core of operative facts. JA198-206; JA390-411.

It makes no difference that Cubatabaco invoked section 44(b) and 44(h) of the Lanham Act in its Article 8 claim in the SDNY litigation but relied on section 17(a)

1623511099

of the Lanham Act for its Article 8 claim in the TTAB. Both versions of the claim arose from the same transactions and core of operative facts and are therefore the "same claim" for purposes of claim preclusion. *See Pueschel*, 369 F.3d at 355 ("Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'") (alteration in original) (citation omitted).

On the third requirement of claim preclusion, the SDNY litigation resulted in a final judgment on the merits of Cubatabaco's Article 8 claim. Under Federal Rule of Civil Procedure 41(b), an involuntary dismissal of a claim, except on grounds of lack of jurisdiction, improper venue, or failure to join a party, operates as a decision on the merits "unless otherwise specified by the court." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319 (4th Cir. 2002). The New York district court's judgment expressly dismissed Cubatabaco's Article 8 claim with prejudice. *Empresa IV*, 2004 WL 925647, at *3. The Second Circuit affirmed the dismissal of the Article 8 claim (among others) and directed the New York district court to dismiss all of Cubatabaco's remaining claims. *Empresa V*, 399 F.3d at 486. The dismissal of the Article 8 claim was therefore a dismissal on the merits.

- 52 -

All three requirements for claim preclusion are thus met here. This is another independent reason why, as a matter of law, Cubatabaco cannot maintain a claim for cancellation of General Cigar's registrations under Article 8 of the IAC.

## VII. CONCLUSION

The laws governing the Cuban embargo prohibit Cubatabaco from obtaining the cancellation of General Cigar's U.S. trademark registrations in this case. Even if that were not so, Cubatabaco still could not obtain cancellation under Article 8 of the IAC. Cubatabaco litigated and lost the same issue and same claim in the SDNY litigation. It cannot revive this claim in the TTAB or any other forum.

The district court's judgment therefore should be reversed. If this Court's decision is based on the CACR, the reversal should be outright and the district court should be instructed to enter a judgment that General Cigar's registrations may not be cancelled under any theory. If the reversal is based on issue or claim preclusion of Cubatabaco's Article 8 claim, then the case should be remanded to allow the district court to address the remaining counts of General Cigar's amended complaint.

- 53 -

1623511099

## VIII.  STATEMENT REGARDING ORAL ARGUMENT

General Cigar respectfully requests oral argument in this appeal because it involves important legal questions relating to the enforcement of the laws governing the Cuban embargo, a federal statute governing trademark civil actions, and the preclusive effect of prior federal court judgments.

Dated:  October 2, 2025

Respectfully submitted,

*/s/ Stanley J. Panikowski*
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400
stanley.panikowski@us.dlapiper.com

J. Kevin Fee
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4441
kevin.fee@us.dlapiper.com

Andrew L. Deutsch
LAW OFFICES OF ANDREW L. DEUTSCH
6540 Olympic Place
Los Angeles, CA 90035
Tel: 917.861.3315
adeutsch221@gmail.com

*Attorneys for Appellant*
*General Cigar Company, Inc.*

- 54 -

1623511099

## ADDENDUM OF STATUTORY AND REGULATORY AUTHORITIES

**15 U.S.C. § 1071(a)(4)**

The United States Court of Appeals for the Federal Circuit shall review the decision from which the appeal is taken on the record before the United States Patent and Trademark Office. Upon its determination the court shall issue its mandate and opinion to the Director, which shall be entered of record in the United States Patent and Trademark Office and shall govern the further proceedings in the case. However, no final judgment shall be entered in favor of an applicant under section 1051(b) of this title before the mark is registered, if such applicant cannot prevail without establishing constructive use pursuant to section 1057(c) of this title.

**15 U.S.C. § 1071(b)(1)**

Whenever a person authorized by subsection (a) of this section to appeal to the United States Court of Appeals for the Federal Circuit, except for a registrant subject to an ex parte expungement proceeding or an ex parte reexamination proceeding, is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, said person may, unless appeal has been taken to said United States Court of Appeals for the Federal Circuit, have remedy by a civil action if commenced within such time after such decision, not less than sixty days, as the Director appoints

- A1 -

or as provided in subsection (a) of this section. The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear. Such adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law. However, no final judgment shall be entered in favor of an applicant under section 1051(b) of this title before the mark is registered, if such applicant cannot prevail without establishing constructive use pursuant to section 1057(c) of this title.

### 15 U.S.C. § 1119

In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

### 15 U.S.C. § 1126(b), (d), & (h)

(b) Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair

- A2 -

competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter.

. . .

(d) An application for registration of a mark under section 1051, 1053, 1054, or 1091 of this title or under subsection (e) of this section, filed by a person described in subsection (b) of this section who has previously duly filed an application for registration of the same mark in one of the countries described in subsection (b) shall be accorded the same force and effect as would be accorded to the same application if filed in the United States on the same date on which the application was first filed in such foreign country: *Provided*, That—

> (1) the application in the United States is filed within six months from the date on which the application was first filed in the foreign country;

> (2) the application conforms as nearly as practicable to the requirements of this chapter, including a statement that the applicant has a bona fide intention to use the mark in commerce;

- A3 -

1623511099

(3) the rights acquired by third parties before the date of the filing of the first application in the foreign country shall in no way be affected by a registration obtained on an application filed under this subsection;

(4) nothing in this subsection shall entitle the owner of a registration granted under this section to sue for acts committed prior to the date on which his mark was registered in this country unless the registration is based on use in commerce.

In like manner and subject to the same conditions and requirements, the right provided in this section may be based upon a subsequent regularly filed application in the same foreign country, instead of the first filed foreign application: *Provided*, That any foreign application filed prior to such subsequent application has been withdrawn, abandoned, or otherwise disposed of, without having been laid open to public inspection and without leaving any rights outstanding, and has not served, nor thereafter shall serve, as a basis for claiming a right of priority.

. . .

(h) Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

- A4 -

1623511099

**22 U.S.C. § 6032(h)**

The economic embargo of Cuba, as in effect on March 1, 1996, including all restrictions under part 515 of title 31, Code of Federal Regulations, shall be in effect on March 12, 1996, and shall remain in effect, subject to section 6064 of this title.

**31 C.F.R. § 515.201(b), (c), & (d)**

(b) All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury (or any person, agency, or instrumentality designated by him) by means of regulations, rulings, instructions, licenses, or otherwise, if such transactions involve property in which any foreign country designated under this part, or any national thereof, has at any time on or since the effective date of this section had any interest of any nature whatsoever, direct or indirect:

> (1) All dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property or evidences of indebtedness or evidences of ownership of property by any person subject to the jurisdiction of the United States;

> (2) All transfers outside the United States with regard to any property or property interest subject to the jurisdiction of the United States.

- A5 -

1623511099

(c) Any transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions set forth in paragraph (a) or (b) of this section is hereby prohibited.

(d) For the purposes of this part, the term foreign country designated under this part and the term designated foreign country mean Cuba and the term effective date and the term effective date of this section mean with respect to Cuba, or any national thereof, 12:01 a.m., e.s.t., July 8, 1963.

### 31 C.F.R. § 515.527(a)(1)

Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

- A6 -

1623511099

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), 32(a)(7)(B), and 32(g), I certify that this brief was prepared in Microsoft Word using Times New Roman 14-point type, contains 12,903 words excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), and complies with the applicable type-volume limitation.


Dated:  October 2, 2025                    Respectfully submitted,

/s/ *Stanley J. Panikowski*
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400
stanley.panikowski@us.dlapiper.com

*Attorneys for Appellant*
*General Cigar Company, Inc.*

1623511099