**No. 25-1645**

---

### In the

# United States Court of Appeals
# For the Fourth Circuit

---

GENERAL CIGAR COMPANY, INC.,

*Plaintiff-Appellant,*

v.

EMPRESA CUBANA DEL TABACO, D/B/A CUBATABACO,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria
Honorable Leonie M. Brinkema, District Judge
No. 1:23-cv-00227-LMB-WEF

---

**RESPONSE BRIEF OF APPELLEE
EMPRESA CUBANA DEL TABACO, D/B/A CUBATABACO**

---

Michael R. Krinsky
Lindsey Frank
RABINOWITZ, BOUDIN,
STANDARD, KRINSKY &
LIEBERMAN, PC
320 West 85th Street
New York, NY 10024
T: 212-254-1111
F: 212-674-4614
lfrank@rbskl.com
mkrinsky@rbskl.com

Benjamin L. Hatch
MCGUIREWOODS LLP
101 West Main Street
Norfolk, VA 23510
T: 757-640-3727
F: 757-640-3947
bhatch@mcguirewoods.com

*Additional counsel listed on inside cover*
December 18, 2025

Nicole Kinsley
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
T: 617-832-1185
F: 617-832-7000
nkinsley@foleyhoag.com

Natasha N. Reed
FOLEY HOAG LLP
1301 Avenue of the
Americas, 25th Floor
New York, NY 10019
T: 212-812-0331
F: 212-812-0399
nreed@foleyhoag.com

*Counsel for Defendant-Appellee*
*Empresa Cubana Del Tabaco, d/b/a Cubatabaco*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1645__    Caption: General Cigar Company, Inc. v. Empresa Cubana del Tabaco

Pursuant to FRAP 26.1 and Local Rule 26.1,

Empresa Cubana del Tabaco d.b.a. Cubatabaco
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

12/01/2019 SCC                                    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Benjamin L. Hatch                    Date:        12/18/2025

Counsel for: Empresa Cubana del Tabaco

- 2 -

Print to PDF for Filing

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION ......................................................................3

STATEMENT OF THE ISSUES ...........................................................................3

STATEMENT OF THE CASE...............................................................................4

SUMMARY OF ARGUMENT............................................................................12

    I.       The Cuban Assets Control Regulations................................................13

    II.      Preclusion .............................................................................................14

ARGUMENT .......................................................................................................15

    I.       GC Is Barred by the Invited Error Doctrine from Arguing the
           CACR Require Reversal .......................................................................15

    II.      Even If Considered, GC's CACR Argument Fails................................18

          A.     GC's Position Would Nullify the General License
                 Authorizing Cancellation by the TTAB and Ignores the
                 CACR Provision That Authorizes Transactions Incidental
                 to Licensed Transactions and Necessary to Give Them
                 Effect .........................................................................................18

          B.     GC's Position is Also Self-Defeating, as CACR Would
                 Then Bar a Decision for Either Party.......................................23

          C.     The District Court Properly Exercised its Authority
                 Under § 1701(b) to Simply Affirm the TTAB Order,
                 Without Itself Cancelling the Registrations.............................24

          D.     To the Extent GC Argues that the District Court's Article
                 8 Findings Are a "Transfer" of Property Requiring a
                 CACR License, It is Mistaken .................................................29

    III.    GC Is Judicially Estopped from Arguing that the Second Circuit
           Ruling Has Preclusive Effect ...............................................................31

IV.     Even If GC's Argument is Not Barred by Judicial Estoppel, The District Court Did Not Err In Applying the Federal Circuit's Decision ...................................................................................33

        A.      The District Court's Application of the Federal Circuit's Decision Was Not Error Because of the Statute's Command that It "Shall Govern" .................................33

        B.      Even Aside from the Statutory Mandate, the Federal Circuit Decision Governs as Standard Law of the Case ...........37

        C.      B&B Hardware Provides No Reason to Deny the Binding Effect of the Federal Circuit's Issue Preclusion Decision ........38

        D.      GC's Own Theory Independently Supports the District Court's Decision to Apply the Federal Circuit's Decision........42

V.      Even if Decided Anew, GC's Preclusion Arguments Fail .................44

        A.      There is No Issue Preclusion Because the Issue is Different. ...................................................................45

        B.      There is No Claim Preclusion Because of Limitations on the SDNY Court's Authority and Because there was No Decision on the Merits. ..........................................47

                1.      The SDNY Court Lacked the Authority to Award Relief based on Article 8. ...............................48

                2.      There Was No Final Judgment on the Merits of the Article 8 Claim in the SDNY Action. ..........................50

CONCLUSION ..............................................................................52

STATEMENT REGARDING ORAL ARGUMENT..............................................52

CERTIFICATE OF COMPLIANCE.........................................................54

ADDENDUM ................................................................................56

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n Int'l v. Texas Int'l Airlines, Inc.*,
567 F. Supp. 66 (S.D. Tex. 1983).........................................................................50

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015).................................................................................*passim*

*Banks v. United States*,
741 F.3d 1268 (Fed. Cir. 2014) ..........................................................................39

*Belmora, LLC v. Bayer Consumer Care AG*,
338 F. Supp. 3d 477 (E.D. Va. 2018), *aff'd in part*, *vacated on
other grounds*, 987 F.3d 284 (4th Cir. 2021)......................................................26

*Birmingham v. Rawlings Sporting Goods Co., Inc.*,
No. 5:11-CV-1135, 2012 WL 13024765 (N.D.N.Y. Mar. 2, 2012)...................26

*Booking.com B.V. v. Matal*,
278 F. Supp. 3d 891 (E.D. Va. 2017), *aff'd*, 915 F.3d 171 (4th Cir.
2019), *aff'd sub nom U.S. Patent and Trademark Off. v.
Booking.com B.V.*, 591 U.S. 594 (2020)..............................................................37

*British-American Tobacco Co. v. Phillip Morris, Inc.*,
55 U.S.P.Q.2d 1585 (T.T.A.B. 2000)....................................................................5

*Burgos v. Hopkins*,
14 F.3d 787 (2d Cir. 1994) ..................................................................................48

*Cardwell v. Investor's Analysis, Inc.*,
No. 85-6793, 1987 WL 11497 (E.D. Pa. May 15, 1987) ....................................37

*Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*,
No. 19-cv-11018, 2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020) ..........................30

*CoreTel Va., LLC v. Verizon Va., LLC*,
808 F.3d 978 (4th Cir. 2015) ................................................................................5

*Corp. Cimex, S.A. v. DM Enterprises & Distributors, Inc.*,
   Opp. No. 91178943, 2008 WL 5078739 (T.T.A.B. Nov. 17, 2008). ....................5

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
   No. WDQ-08-2764, 2011 WL 6202479 (D. Md. Dec. 5, 2011) ........................26

*Costello v. United States*,
   365 U.S. 265 (1961)...............................................................................50, 51, 52

*Criales v. Am. Airlines, Inc.*,
   105 F.3d 93 (2d Cir. 1997) ...................................................................................52

*CVP Sys., Inc. v. M-TEK Inc.*,
   No. 92 C 5761, 1994 WL 531556 (N.D. Ill. Sept. 29, 1994) ............................26

*Dawkins v. Arthur*,
   701 F. App'x 191 (4th Cir. 2017) ........................................................................17

*De Simone v. VSL Pharms., Inc.*,
   36 F.4th 518 (4th Cir. 2022) ................................................................................43

*DIB Funding, Inc. v. Honson Luma*,
   No. 92068284 (T.T.A.B. June 17, 2025) ..............................................................29

*Dow Chem. Co. v. Nova Chem. Corp.*,
   803 F.3d 620 (Fed. Cir. 2015) .............................................................................39

*Durox Co. v. Duron Paint Mfg. Co.*,
   320 F.2d 882 (4th Cir. 1963) ...............................................................................26

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   399 F.3d 462 (2d Cir. 2005) (*Empresa V*).................................................*passim*

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   478 F. Supp. 2d 513 (S.D.N.Y. 2007) (*Empresa VI*)........................11, 45, 46, 51

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   541 F.3d 476 (2d Cir. 2008) (*Empresa VII*) ....................................11, 25, 46, 51

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   No. 97-cv-8399 (RWS), 2004 WL925647 (S.D.N.Y. April 30,
   2004) (*Empresa IV*) ............................................................................................10

*Empresa Cubana del Tabaco v. General Cigar Co.*,
   753 F.3d 1270 (Fed. Cir. 2014) (*Empresa IX*)................................*passim*

*Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co.*,
   477 F. Supp. 2d 699 (E.D. Va. 2007) ...................................................37

*Fairfax v. CBS Broad.*,
   534 F. Supp. 3d 581 (E.D. Va. 2020) ...................................................24

*Fed. Deposit Ins. Corp. v. Jones*,
   846 F.2d 221 (4th Cir. 1988) ...............................................................32

*Ferrera v. United States*,
   424 F. Supp. 888 (S.D. Fla. 1976) .......................................................30

*Fleming v. FCC*,
   225 F.2d 523 (D.C. Cir. 1955)..............................................................37

*Ford Motor Co. v. NLRB*,
   305 U.S. 364 (1939)..............................................................................37

*In re Gardasil Prods. Liab. Litig.*,
   151 F.4th 178 (4th Cir. 2025) ..............................................................40

*Gillette Co. v. "42" Prods. Ltd., Inc.*,
   435 F.2d 1114 (9th Cir. 1970) ........................................................33, 34

*Grayson O Co. v. Agadir Int'l LLC*,
   856 F.3d 307 (4th Cir. 2017) .................................................................6

*Harriman v. Associated Indus. Ins. Co.*,
   91 F.4th 724 (4th Cir. 2024) ................................................................44

*Hoover v. Coe*,
   325 U.S. 79 (1945)......................................................................34, 35, 36

*Interprofession Du Gruyère v. United States Dairy Exp. Council*,
   575 F. Supp. 3d 627 (E.D. Va. 2021) (Ellis, J.), *aff'd*, 61 F.4th 407
   (4th Cir. 2023)......................................................................................26

*Jet, Inc. v. Sewage Aeration Sys.*,
   223 F.3d 1360 (Fed. Cir. 2000) ............................................................39

*Kappos v. Hyatt*,
566 U.S. 431 (2012)..................................................................................27

*Kingdomware Technologies, Inc. v. United States*,
579 U.S. 162 (2016)..................................................................................24

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
127 F.4th 1376 (Fed. Cir. 2025) ...............................................................40

*Lacteos De Honduras S.A. v. Industrias Sula, S. De R.L. de C.V.*,
No. 91243095, 2020 WL 973178 (T.T.A.B. Feb. 28, 2020).......................5

*Legacy Data Access, Inc. v. Cadrillion, LLC*,
889 F.3d 158 (4th Cir. 2018) ....................................................................16

*Luma v. DIB Funding Inc.*,
No. 1:24-cv-00863, 2025 WL 1074804 (E.D. Va. Jan. 17, 2025) ....................26

*Luma v. DIB Funding Inc.*,
No. 1:24-cv-00863 (PTG/WBP), 2025 WL 1073700 (E.D. Va.
Apr. 9, 2025 ............................................................................................26

*Luma v. Dib Funding, Inc.*,
No. ELH-20-2504, 2022 WL 181156 (D. Md. Jan. 19, 2022) ..........................25

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*,
424 F.3d 1229 (Fed. Cir. 2005) ................................................................45

*In re Microsoft Corp. Antitrust Litig.*,
355 F.3d 322 (4th Cir. 2004) ....................................................................45

*Ministry of Def. & Support v. Cubic Def. Sys., Inc.*,
665 F.3d 1091 (9th Cir. 2011) ..................................................................30

*N.J. Inst. of Tech. v. Medjet, Inc.*,
47 F. App'x 921 (Fed. Cir. 2002) .............................................................45

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
733 F. Supp. 800 (D. Del. 1990)...............................................................30

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..................................................................................32

*Opati v. Republic of Sudan,*
  590 U.S. 418 (2020)..................................................................................24

*Passaro v. Virginia,*
  935 F.3d 243 (4th Cir. 2019) ....................................................................48

*PDV USA, Inc. v. Interamerican Consulting Inc.,*
  No. 20-cv-3699, 2021 WL 2581569 (S.D.N.Y. June 22, 2021)...................30, 31

*Pegram v. Herdrich,*
  530 U.S. 211 (2000)..................................................................................32

*Project Control Servs. v. Westinghouse Savannah Riv. Co.,*
  35 F. App'x 359 (4th Cir. 2002) ...............................................................17

*Pueschel v. United States,*
  369 F.3d 345 (4th Cir. 2004) ....................................................................49

*Putman v. Dudas,*
  539 F. Supp. 2d 414 (D.D.C. 2008)..........................................................37

*Semtek Int'l Inc. v. Lockheed Martin Corp.,*
  531 U.S. 497 (2001)..................................................................................51

*Serine-Cannonau Vineyard, Inc. v. Viña Undurraga S.A.,*
  No. 92053854 (T.T.A.B. June 6, 2017)......................................................29

*Shields v. United States,*
  273 U.S. 583 (1927)..................................................................................16

*Simms v. Bayer Heathcare LLC,*
  752 F.3d 1065 (6th Cir. 2014) ..................................................................17

*Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.,*
  991 F.3d 512 (4th Cir. 2021) ............................................14, 33, 34, 35, 36

*Struna v. Shepherdstown Planning Comm'n,*
  No. 3:09-CV-77, 2011 WL 862167 (N.D.W. Va. Mar. 9, 2011) ................50

*Swatch AG v. Amy T. Bernard,*
  No. 91169312 (T.T.A.B. Oct. 7, 2014)......................................................29

ix

*Swatch AG v. Beehive Wholesale, LLC*,
739 F.3d 150 (4th Cir. 2014) ...............................................................27

*Swatch, S.A. v. Beehive Wholesale, L.L.C.*,
888 F. Supp. 2d 738 (E.D. Va. 2012), *aff'd*, 739 F.3d 150 (4th Cir.
2014) ...................................................................................................26

*Tagle v. Regan*,
643 F.2d 1058 (5th Cir. 1981) ..............................................................29

*TFWS, Inc. v. Franchot*,
572 F.3d 186 (4th Cir. 2009) ...............................................................38

*Thunderbird, Ltd. v. First Fed. Sav. & Loan Ass'n.*,
908 F.2d 787 (11th Cir. 1990) ..............................................................17

*Timex V.I, Inc. v. United States*,
157 F.3d 879 (Fed. Cir. 1998) ..............................................................20

*Treadwell Original Drifters, LLC v. Original Drifters, Inc.*,
No. 1:15 cv 580, 2016 WL 5899289 (E.D. Va. Jan. 28, 2016) ..........43

*U.S. v. Aramony*,
166 F.3d 655 (4th Cir. 1999) ...............................................................39

*United States v. Benkahla*,
No. 1:06cr9(JCC), 2006 WL 2871234 (E.D. Va. Oct. 2, 2006),
*aff'd*, 530 F.3d 300 (4th Cir. 2008) .......................................................44

*United States v. Boynton*,
63 F.3d 337 (4th Cir. 1995) ..................................................................19

*United States v. Cannady*,
63 F.4th 259 (4th Cir. 2023) .................................................................40

*United States v. Green*,
67 F.4th 657 (4th Cir.), *cert. denied*, 144 S. Ct. 226 (2023) ..............19

*United States v. Herrera*,
23 F.3d 74 (4th Cir. 1994) ....................................................................16

*United States v. Ruhbayan*,
325 F.3d 197 (4th Cir. 2003) ................................................................44

x

*United States v. Spivey*,
  129 F. App'x 856 (4th Cir. 2005) ............................................................17

*Viña v. Serine-Cannonau Vineyard*,
  No. CV 15-9658 PSG, 2017 WL 11636421 (C.D. Cal. May 17,
  2017) ........................................................................................................26

*Wilson v. Lindler*,
  8 F.3d 173 (4thCir. 1993) ......................................................................17

*Wye Oak Tech., Inc. v. Republic of Iraq*,
  666 F.3d 205 (4th Cir. 2011) ..................................................................38

*Yee v. City of Escondido*,
  503 U.S. 519 (1992)................................................................................43

*Zao Odessky Konjatschnyi Zawod v. SIA "Baltmark Invest"*,
  999 F. Supp. 2d 851 (E.D. Va. 2014) ....................................................25

## Statutes

15 U.S.C. § 1067(a) ..........................................................................38, 41

15 U.S.C. § 1068 ...........................................................................................28

15 U.S.C. § 1071 ....................................................................................*passim*

15 U.S.C. § 1119.....................................................................................25

15 U.S.C. § 1126(h) ...........................................................................38, 40, 46

Article 8 of the General Inter-American Convention for Trade Mark
  and Commercial Protection, 46 Stat. 2907 ("IAC"),
  https://www.wipo.int/wipolex/en/treaties/parties/353........................5

## Regulatory Authorities

31 C.F.R. § 515.201(b) ..........................................................................23

31 C.F.R. § 515.310 ...............................................................................23

31 C.F.R. § 515.527 .........................................................................18, 20

80 Fed. Reg. 56919 (Sept. 21, 2015)......................................................21

**Other Authorities**

18 Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure, Juris § 4412 (2d ed. 2013) ...................................................50

18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.
§ 4437 (3d ed. 2018) ............................................................................51

18B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.
Juris. § 4478.4 ....................................................................................38

Brief of General Cigar, *Empresa Cubana del Tabaco v. General Cigar
Co. Inc.*,
No. 2013-1465, 2013 WL 6632194 (Fed. Cir. Dec. 2, 2013) ................3, 6, 9, 31

Brief for the United States as Amicus Curiae, *Empresa Cubana del
Tabaco v. General Cigar Company, Inc.*,
(May 2006) (No. 05-417)........................................................................22

J. Thomas McCarthy, McCarthy on Trademarks and Unfair
Competition, § 31:1 (5th ed.)...................................................................9

Matthew S. Borman (Commerce Department), Examining the Status
of U.S. Trade with Cuba and Its Impact on Economic Growth,
Subcommittee on Commerce, Trade and Consumer Protection,
House of Representatives at 11-13 (April 27, 2009) .........................................22

National Security Council, Statement (Jan. 5, 1999),
https://19972001.state.gov/policy_remarks/1999/990105_dobbins_
etal_cuba.htm;....................................................................................22

Office of Foreign Assets Control, Frequently Asked Question No.
808, https://ofac.treasury.gov/faqs/808 (last visited February 13,
2024) ..............................................................................................31

Office of Foreign Assets Control, Frequently Asked Question No.
1056 (June 8, 2022), https://ofac.treasury.gov/faqs/1056 ................................22

Press Release, Dep't of Treasury, Treasury and Commerce Announce
Significant Amendments to the Cuba Sanctions Regulations ahead
of President Obama's Historic Trip to Cuba (March 15, 2016),
https://home.treasury.gov/news/press-releases/jl0379 ....................................22

Press Release, Dep't of Treasury, Treasury, Commerce, and State
     Implement Changes to the Cuba Sanctions Rules (Nov. 8, 2017),
     https://home.treasury.gov/news/press-releases/sm0209 .....................................22

Restatement (Second) of Judgments § 26, cmt. c ....................................................48

TTAB's Manual of Procedure, § 510.02, First Edition
     (September 1995) ...............................................................................................9

## INTRODUCTION

The Trademark Trial and Appeal Board ("TTAB") granted the petition of Cuban company Empresa Cubana del Tabaco, d.b.a. Cubatabaco, to cancel registrations by General Cigar Company, Inc. ("GC") of the trademark COHIBA, and provided that the registrations "would be cancelled in due course." In response, GC filed this 15 U.S.C. § 1071(b) action, and the district court rejected GC's demand that it reverse the TTAB decision and vacate its order of cancellation. Instead, upon the review of the TTAB decision for legal error that GC demanded, the district court affirmed the TTAB and allowed its order to stand. GC now appeals the district court's ruling.

GC's principal argument to this Court is that the district court's disposition violated the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. § 515, which bar transfers of property in which a Cuban national has a direct or indirect interest, but which also enumerate exceptions by licensing certain types of transfers. It is undisputed here that the CACR authorize the TTAB to cancel GC's registrations under CACR General License 31 C.F.R. § 515.527 (the "General License"). By GC's interpretation, even though the CACR permit *the TTAB* to cancel a trademark registration, its prohibitions bar *the district court's* affirmance of the TTAB's decision.

1

GC's absurd interpretation of the CACR is incorrect. If the CACR do not permit a district court to let a TTAB order stand, it would make the General License meaningless and negate the Executive Branch foreign policy implemented by it. Moreover, and itself dispositive, CACR § 515.412 provides that "any transaction ordinarily incident to a licensed transaction and necessary to give effect thereto is also authorized." The TTAB's cancellation was licensed; GC's 1071(b) action and the district court's rejection of it is "ordinarily incident to" the licensed transaction and "necessary to give effect thereto." GC's argument that the district court's actions violated the CACR is meritless.

GC's other argument for reversal is that the TTAB's cancellation of the registrations was barred due to issue and claim preclusion arising from the Second Circuit's rulings in prior litigation between the parties. However, the Federal Circuit, on an appeal from the TTAB's initial dismissal of the cancellation petition, already held that there was no preclusion in the TTAB. The district court did not err in applying the Federal Circuit's decision.

In any event, GC is estopped from even making its CACR and preclusion arguments. As to the CACR: by itself demanding that the district court review the TTAB decision and reverse for error, GC necessarily invited the district court to affirm if it found none. As to preclusion: even though the TTAB had not reached the issue, GC itself affirmatively requested that the Federal Circuit "should"

2

resolve preclusion "rather than extend this [then] 17-year old dispute several more years by a remand to the [TTAB]." Brief of General Cigar, *Empresa Cubana del Tabaco v. General Cigar Co. Inc.*, No. 2013-1465, 2013 WL 6632194, at *23, 41 (Fed. Cir. Dec. 2, 2013). Under the invited error doctrine and judicial estoppel, GC's arguments are foreclosed.

The district court's order should be affirmed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 15 U.S.C. § 1071(b)(1). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether GC's CACR argument—namely, that, under 15 U.S.C. § 1071(b), the district court could not simply affirm the TTAB's decision and leave its cancellation order undisturbed; that any district court finding in favor of Cubatabaco therefore necessarily required, and must be viewed as, an independent judicial order of cancellation; and that such an order is an unlicensed transaction under the CACR—is barred by the invited error doctrine because GC demanded that the district court review the TTAB decision and, if it found legal error, reverse the decision and vacate the order of cancellation.

2.      If not mooted by Question No. 1, whether the district court's order was permissible under the CACR.

3

3.      Whether GC is judicially estopped from challenging application of the Federal Circuit's decision on issue or claim preclusion, given that GC asked the Federal Circuit to decide that issue.

4.      If not mooted by Question 3, whether the district court erred in applying the Federal Circuit's decision on preclusion as binding under 15 U.S.C. § 1071(a)(4) and/or ordinary law of the case principles since there has been no intervening change in law, or, alternatively, whether there was no error due to collateral estoppel.

5.      If not mooted by Question 4, whether there is no reversible error because the Second Circuit's decision in fact did not preclude TTAB cancellation.

## STATEMENT OF THE CASE

At issue on this appeal is the district court's order that "the December 20, 2022 final decision of the [TTAB] be and is hereby affirmed" and GC's Amended Complaint "be and is dismissed with prejudice." JA380. The pertinent background is as follows.

In a unanimous decision, JA176-217, the TTAB granted Cubatabaco's Amended Petition to cancel GC's two registrations of COHIBA for cigars (Nos. 1147309 and 1898273) and provided "[t]he registrations will be canceled in due course." JA217.

4

The TTAB based its decision on Article 8 of the General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907 ("IAC"), in force for Cuba, the United States, and eight other countries. https://www.wipo.int/wipolex/en/treaties/parties/353. The TTAB did not reach Cubatabaco's other grounds for cancellation. JA178-179.

Article 8 of the IAC allows a petitioner who is a national of one treaty country to seek cancellation of a registration in another treaty country when the registration interferes with the petitioner's own attempt to register its trademark, upon the petitioner showing that it had legal protection for its own mark in a treaty country and that the registrant knew of that mark's use prior to the registrant's own use or application. JA218-219. In applying Article 8 pursuant to the jurisdiction granted by Section 17 of the Lanham Act, 15 U.S.C. § 1067, the TTAB followed well-established precedent. *See British-American Tobacco Co. v. Phillip Morris, Inc.*, 55 U.S.P.Q.2d 1585 (T.T.A.B. 2000); *see also, e.g.*, *Lacteos De Honduras S.A. v. Industrias Sula, S. De R.L. de C.V.*, No. 91243095, 2020 WL 973178, at *3 (T.T.A.B. Feb. 28, 2020); *Corp. Cimex, S.A. v. DM Enters & Distribs, Inc.*, Opp. No. 91178943, 2008 WL 5078739, at *2 (T.T.A.B. Nov. 17, 2008).[1] "[I]n response

---

[1] GC did not challenge the TTAB's authority to apply Article 8 before the district court or in its opening appellate brief, and so has waived any such argument. *See, e.g.*, *CoreTel Va., LLC v. Verizon Va., LLC*, 808 F.3d 978, 988 (4th Cir. 2015) (not

5

to the TTAB's cancellation decision," GC Opening Brief ("Br.") at 17, GC filed the action below, which the district court resolved on the basis of Counts I and X of GC's operative complaint.[2]

*Count I* "seeks review of the TTAB Decision . . ., reversal of that decision for legal error, and vacatur of the TTAB's order of cancellation." JA53. The asserted "legal error" is that "the TTAB erroneously failed to give the judgment [of the Second Circuit] preclusive effect." JA53. GC brought Count I pursuant to 15 U.S.C. § 1071(b)(1), JA53, which provides that a person "dissatisfied with [a TTAB] decision . . . may have remedy by a civil action," as an alternative to appealing to the Federal Circuit under § 1071(a).

Years earlier, on Cubatabaco's appeal from the TTAB's initial decision that it lacked standing, GC had affirmatively requested that the Federal Circuit decide preclusion even though the TTAB had not reached that issue. GC argued the Federal Circuit "should" address preclusion "rather than extend this [then] 17-year old dispute several more years by a remand to the [TTAB]." GC Brief, *Empresa*,

---

argued below); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (not argued in opening appeals brief).

[2] GC acknowledges that Counts II-IX, which sought declaratory relief that Cubatabaco cannot prevail on grounds for cancellation not reached by the TTAB, are not "relevant to this appeal." Br. at 17. It does not contest the TTAB and district court's findings that Article 8's requirements for cancellation were satisfied. Br. at 5.

2013 WL 6632194 at *23, 41. A unanimous Federal Circuit held Cubatabaco's

TTAB cancellation petition was *not* barred by issue or claim preclusion. *Empresa*

*Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270 (Fed. Cir. 2014)

(*Empresa IX*).

The district court held the Federal Circuit's decision on preclusion was law

of the case, JA158, JA412-413. Like the TTAB, it rejected GC's argument that,

even if the Federal Circuit was otherwise binding, *B&B Hardware*, *Inc. v. Hargis*

*Indus., Inc.*, 575 U.S. 138 (2015), changed the law of issue preclusion, JA151-158,

such that law of the case should not apply.

*Count X* sought relief on the basis of the CACR. The Federal Circuit held

that the General License authorizes the TTAB to cancel GC's registrations.

*Empresa IX*, 753 F.3d at 1275. GC does not contend otherwise, but, rather, argues

that TTAB authorization is irrelevant to its 1071(b) action. The district court

rejected GC's argument, explaining that:

> those [TTAB] proceedings are what is at issue in this civil
> action, in which [GC] is asking the Court to reverse the
> TTAB's decision and vacate its order cancelling [GC's]
> Cohiba registrations.[] Contrary to [GC's] assertion, this
> Court is not deciding whether it can cancel the
> registrations; rather, the issue is whether the TTAB
> properly cancelled [GC's] registrations.

JA412.

7

The district court concluded that "[b]ased on the Federal Circuit's decision, which this Court has already determined is law of the case [], the Court finds that the CACR do not prohibit the TTAB from cancelling [GC's] registrations because the TTAB's cancellation of [GC's] registrations does not constitute a prohibited transfer of property under the CACR; rather, it constitutes a lawful decision under the CACR's general license provision, § 515.527(a)(1)." JA412-413.

In the accompanying order, the district court provided the "final decision of the [TTAB] be and is AFFIRMED" and that GC's Amended Complaint "be and is DISMISSED WITH PREJUDICE." JA380. It did not order the TTAB to cancel the registrations or grant any other relief. This appeal follows.

The TTAB decision affirmed by the district court was the culmination of proceedings that began on January 15, 1997, when Cubatabaco applied to register COHIBA in the U.S. and petitioned the TTAB GC's registrations, which were obstacles to its own application. JA383.

Later in 1997, with great promotion, GC nationally launched a "super-premium" COHIBA cigar through multiple retailers. JA39, JA90, JA138. In response, Cubatabaco brought an action on November 12, 1997, in the District Court for the Southern District of New York, No. 97 Civ. 8399 ("SDNY action"), to enjoin GC from using COHIBA in the U.S., for an order cancelling GC's registrations, and for disgorgement of profits. JA112, JA185. Far from "forum-

8

shopping," Br. at 1, Cubatabaco was forced to bring the SDNY action or risk losing the opportunity to enforce its rights and challenge GC's use in the future. *See, e.g.*, J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31:1 (5th ed.) ("The laches clock stops when the trademark owner files a lawsuit charging infringement.").

On Cubatabaco's motion, the TTAB suspended the cancellation proceeding pending the outcome of the SDNY action. JA469. As it did in the Federal Circuit, GC makes much of Cubatabaco having predicted in its motion that the SDNY action "will be dispositive of all of the issues raised in the instant Cancellation Proceeding." JA443; Br. at 10; *see also* GC Brief, *Empresa*, 2013 WL 6632194 at *39-40. The Federal Circuit's decision establishes this was no bar to Cubatabaco contesting issue and claim preclusion. Further, the TTAB would have suspended proceedings regardless. *See* TTAB's Manual of Procedure, § 510.02, First Edition (September 1995) ("Ordinarily, the [TTAB] will suspend proceedings in the case before it if the final determination of the other proceeding will have a bearing on the issues before the [TTAB].")

The SDNY court found that GC had abandoned its first COHIBA registration and Cubatabaco had acquired trademark rights under the "famous marks doctrine" prior to GC resuming use and filing its 1992 application for a second registration. On that basis, the SDNY court granted an injunction; provided

9

that GC's registrations "are hereby cancelled in whole"; "certified the [order] to the Director of the [USPTO], who shall make appropriate entry upon the records of the [USPTO], and shall be controlled hereby"; and deferred trial on damages. *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97-cv-8399 (RWS), 2004 WL925647, at *2 (S.D.N.Y. April 30, 2004) (*Empresa IV*). The Second Circuit reversed the grant of all relief, finding it violated the CACR. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, *passim* (2d Cir. 2005) (*Empresa V*).

In addition to abandonment and the famous marks doctrine, Cubatabaco sought relief in the SDNY action under Sections 44(b) and (h) of the Lanham Act, 15 U.S.C. §§ 1126(b) and (h), which, it asserted, made Articles 7 and 8 of the IAC available in federal court. (Article 7 prohibits use of a mark on the same showing required by Article 8 for cancellation.) The SDNY court dismissed that claim and the Second Circuit affirmed, on the grounds that Sections 44(b) and (h) are, by their terms, limited to "protection against unfair competition" and Articles 7 and 8 are not related to the "repression of unfair competition." *Empresa V*, 399 F.3d at 480-83.

Following denial of Cubatabaco's *certiorari* petition, GC moved that the SDNY court order the TTAB to dismiss Cubatabaco's cancellation petition and the USPTO to deny Cubatabaco's application for registration. The district court denied the motion as untimely, and on the ground that the TTAB should decide the

10

preclusive effect, if any, of the Second Circuit's decision. *Empresa Cubana del Tabaco v. Culbro Corp.*, 478 F. Supp. 2d 513, 517-19, 522-23 (S.D.N.Y. 2007) (*Empresa VI*). The Second Circuit affirmed. *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 479 (2d Cir. 2008) (*Empresa VII*).

Upon resumption of proceedings, the TTAB dismissed Cubatabaco's petition for lack of standing. JA543-559. In a ruling not at issue here, the Federal Circuit found standing. *Empresa IX*, 753 F.3d at 1275-76.

The Federal Circuit also held that the Second Circuit's decision was not preclusive of Cubatabaco's Article 8 claim in the TTAB. *Id.* at 1277-78. As to issue preclusion, it explained that, in the SDNY action, "Cubatabaco claimed relief under Articles 7 and 8 pursuant to Sections 44(b) and 44(h) of the Lanham Act," but, in the TTAB proceedings, "Cubatabaco asserts that, unlike the federal courts, the [TTAB] can cancel registrations directly under Article 8 of the IAC, pursuant to the [TTAB]'s jurisdiction under [Section 17]." *Id.* at 1278. The Federal Circuit continued that, "[u]nlike in the district court, the [TTAB] need not consider the interplay with Section 44(h). And in any event, the Second Circuit certainly did not address whether Cubatabaco could request that the [TTAB] cancel the registrations directly under those same IAC provisions. Accordingly, issue preclusion does not bar [the IAC grounds] for cancellation of the Registrations." *Id.*

As to claim preclusion, the Federal Circuit explained that:

11

> The Second Circuit never issued a final judgment on the merits of Cubatabaco's cancellation claims. Moreover, the transactional facts involved in the Second Circuit decision differ from those in the cancellation proceedings before the [TTAB]. For instance, the Second Circuit decided that under the CACR that [sic] Cubatabaco could not enjoin General Cigar from using the COHIBA mark because it would entail a prohibited transfer of property to a Cuban entity. Empresa, 399 F.3d at 476. In the proceedings before the [TTAB], however, Cubatabaco need not own the mark to cancel the Registrations under 15 U.S.C. § 1064. The CACR's effect before the [TTAB] is necessarily different. Claim preclusion therefore does not bar the Amended Petition.

*Id.*

As to the CACR, the Federal Circuit held that the General License authorizes the TTAB to cancel GC's registrations, including on the basis of Article 8. *Id.* at 1275, 1278. It explained that the Second Circuit "specifically did *not* address whether Cubatabaco could seek cancellation of the Registrations with the [TTAB]. . . . Before the [TTAB], Cubatabaco enjoys affirmative authorization to seek cancellation emanating from the general license provided by the CACR." *Id.* at 1274-75.

Upon remand, the TTAB issued the cancellation decision that the district court affirmed in the order at issue on this appeal.

## SUMMARY OF ARGUMENT

The Court need not and should not reach the merits of either of GC's arguments. GC's arguments are barred by the doctrine of invited error and

12

principles of judicial estoppel. But even if the merits are considered, GC's arguments for reversal do not withstand scrutiny.

## I.    The Cuban Assets Control Regulations

GC asserts that, in a 1071(b) action, the district court could not dispose of the case as it expressly did: affirming the TTAB's decision and leaving its cancellation order undisturbed. Rather, GC argues, the district court's order affirming the TTAB's decision amounts to a judicial cancellation of the registrations, which GC contends was barred by the CACR's prohibition on unlicensed transfers of property in which a Cuban national has an interest.

First, GC's argument is foreclosed because *GC itself demanded* that the district court review the TTAB decision and reverse for error, necessarily inviting the district court to affirm if it found none. If there was error by the district court in so doing, GC invited it and is therefore precluded from challenging that error on appeal.

Regardless, GC's position must fail. The district court's order is not a transfer of property under the CACR, and, even if it is, it is licensed under the General License and § 515.412 (as incident and necessary to TTAB cancellation under the General License). Finding otherwise would negate the General License and the Executive Branch's foreign policy implemented by it, produce an absurd result, and, in fact, preclude a finding in favor of *either* party.

13

## II.     Preclusion

In a prior appeal from a TTAB order in the same underlying proceeding, and *at GC's own request*, the Federal Circuit resolved the question of whether the Second Circuit's ruling in earlier litigation between the parties precluded TTAB cancellation of GC's registration. The Federal Circuit held it did not. Because GC sought that determination, GC is judicially estopped from reversing course and arguing now that it should not be bound by that decision.

Even if GC's arguments are considered, the district court did not err. First, as this Court has explained, *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 522 (4th Cir. 2021), § 1071(a)(4) commands that the Federal Circuit's decision "shall govern" a subsequent 1071(b) action before the district court; in any event it is binding as law of the case since the 1071(b) action is an extension of and part of the same TTAB proceedings that were previously appealed to the Federal Circuit. Alternatively, the Federal Circuit's decision is binding on the basis of collateral estoppel. The district court therefore did not err in applying the Federal Circuit's conclusion that preclusion did not bar the TTAB proceedings. GC argues an intervening change in the law is reason to depart from law of the case, but the decision it relies on changed nothing about the law as the Federal Circuit applied it. For these reasons, the Court need not and should not allow GC to relitigate preclusion.

14

If the merits of preclusion are considered, this Court should reach the same conclusion that the Federal Circuit did. There can be no issue preclusion because the Second Circuit did not consider the same issue, and no claim preclusion because the SDNY court lacked the authority to grant the requested relief and did not issue any decision on the merits of the IAC claim.

## ARGUMENT

Cubatabaco first addresses GC's lead argument, that the CACR requires reversal, and then turns to GC's preclusion argument. GC is estopped from presenting either argument, but, if considered, both fail.

## I.    GC Is Barred by the Invited Error Doctrine from Arguing the CACR Require Reversal

GC's CACR argument is that, under § 1071(b), the district court was not permitted simply to affirm the TTAB's decision and leave its cancellation order undisturbed. Rather, GC argues, any district court finding in favor of Cubatabaco necessarily required, and so must be viewed as, an independent judicial order of cancellation, which the Director of the USPTO is required to follow. Yet, GC continues, a judicial order of cancellation is barred by the CACR as an unlicensed transaction.

The Court should not reach this issue. If there was error, it was invited by GC, which, as plaintiff, framed its 1071(b) action as asking the court to "review" and "reverse" the TTAB's decision for legal error and "vacate" its order. JA32-36,

15

JA40, JA53, JA63-64, JA66. Cubatabaco, as defendant, asserted no counterclaim and did not ask the district court to cancel the registrations or order the TTAB to do so. It simply denied that GC was entitled to the relief it requested. JA84, JA139. Cubatabaco had no need for affirmative relief: the TTAB had already provided what Cubatabaco sought—that "[t]he registrations will be canceled in due course." JA217.

GC cannot now argue that the district court committed reversible error because, upon the very review demanded by GC, it found no legal error and so, instead of reversing and vacating as requested, affirmed the TTAB and left its order undisturbed. If the former would have been proper, as GC invited the court to conclude, so would the latter.

Since GC is estopped from asserting the premise on which its CACR argument rests—that the district court had to issue its own cancellation order—it is judicially estopped from making the CACR argument itself.

"[A] court cannot be asked by [a party] . . . to take a step in a case and later be convicted of error, because it has complied with such request." *Shields v. United States*, 273 U.S. 583, 586 (1927). As this Court has held, citing *Shields*, a litigant cannot "complain of error which he himself has invited." *United States v. Herrera*, 23 F.3d 74, 75-76 (4th Cir. 1994); *see also, e.g.*, *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 171 (4th Cir. 2018).

16

The invited error doctrine is applied in a variety of scenarios where a party later regrets its choices in litigation and attempts to backtrack. *See, e.g.*, *Dawkins v. Arthur*, 701 F. App'x 191, 192 (4th Cir. 2017) (plaintiff asked district court to resolve an issue then argued on appeal it having done so was improper); *Simms v. Bayer Heathcare LLC*, 752 F.3d 1065, 1072-74 (6th Cir. 2014) (plaintiff objected to result of evidentiary framework to which it agreed; doctrine applies to a "wide range of [trial court] conduct"); *Thunderbird, Ltd. v. First Fed. Sav. & Loan Ass'n*, 908 F.2d 787, 794 (11th Cir. 1990) (plaintiff requested specific ruling then challenged that ruling on appeal; doctrine is a "cardinal rule of appellate review").

This Court has declined to recognize exceptions to the doctrine. *Wilson v. Lindler*, 8 F.3d 173, 175 (4th Cir. 1993). *See also United States v. Spivey*, 129 F. App'x 856, 859 (4th Cir. 2005) ("Invited errors are by definition waived errors, and . . . not reviewable on appeal"); *Project Control Servs. v. Westinghouse Savannah Riv. Co.*, 35 F. App'x 359, 366 (4th Cir. 2002) (plaintiff, "having made its bed, . . . must now lie in it").

GC's insistence that its prayer for review, reversal, and vacatur "cannot alter [the] legal framework" of a 1071(b) action, Br. at 29, simply ignores the invited error rule. Its further assertion that other forms of relief it requested (*e.g.*, declaratory judgment) would have been sufficient if the district court ruled in GC's favor, Br. at 29, is irrelevant. Under the invited error doctrine, what matters is that

17

the district court disposed of the action on the very review of the TTAB order GC requested and now challenges as reversable error.

## II.    Even If Considered, GC's CACR Argument Fails

### A.    GC's Position Would Nullify the General License Authorizing Cancellation by the TTAB and Ignores the CACR Provision That Authorizes Transactions Incidental to Licensed Transactions and Necessary to Give Them Effect

GC does not contest that the CACR authorize the TTAB to cancel GC's registrations, nor could it. The General License authorizes "[t]ransactions related to the registration and renewal in the [USPTO] . . . of . . . trademarks . . . in which the Government of Cuba or a Cuban national has an interest." 31 C.F.R. § 515.527. In 1996, the Director of the Office of Foreign Assets Control, which issues and administers the CACR, issued a letter stating that proceedings at the TTAB:

> concern available legal means to protect trademarks in the United States. For this reason, the authorization contained in [the General License] may be relied on to file an opposition to the registration of a new trademark or to petition to cancel a prior registration of a trademark where these actions relate to the protection of a trademark in which Cuba or a Cuban national [] has an interest.

JA286. As the Federal Circuit held, *Empresa IX*, 753 F.3d at 1275, the TTAB's cancellation falls within the General License as explicated by the Office of Foreign Assets Control ("OFAC"), the federal office that promulgates and administers the CACR, because it relates to Cubatabaco's application to register COHIBA.

18

The OFAC Director explained that the General License and its "parallel provision" that authorizes U.S. companies to obtain trademark registrations in Cuba, 31 C.F.R. § 515.528, are "intended to provide reciprocal protection for the intellectual property of Cuba and the United States." JA286. If the General License did not authorize the TTAB to cancel registrations, U.S. companies would be barred by the CACR from challenging the registration of their marks by others in Cuba, including, as they have done successfully, on the basis of the IAC. JA287-298.

GC's position—that the CACR bar a district court from deciding against a plaintiff who files a 1071(b) action after its registration had been canceled by the TTAB—would render the General License meaningless, and the U.S. foreign policy it implements would be negated. The mere filing of the action would overturn the licensed TTAB order, regardless of its merits. That absurd result, destructive of the General License, is exactly the one GC contends must follow merely because the General License does not expressly authorize action by a district court under § 1071(b).

This cannot be right, and it plainly is not. Interpretations that "would lead to nonsensical and even absurd results . . . 'are to be avoided,'" *United States v. Green*, 67 F.4th 657, 664-65 (4th Cir.), *cert. denied*, 144 S. Ct. 226 (2023). *See also, e.g.*, *United States v. Boynton*, 63 F.3d 337, 343 (4th Cir. 1995) (rejecting

19

party's interpretation of regulation because it "would lead to [an] absurd result" and "would mark a radical shift in the regulatory scheme" when the regulatory agency did not manifest such shift); *Timex V.I, Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) ("a statutory construction that causes absurd results is to be avoided if at all possible.").

Here, the Court can, and therefore must, reject GC's interpretation and its absurd results. Section 515.421, a provision in the "Interpretations" section of the CACR, provides that "[a]ny transaction ordinarily incident to a licensed transaction and necessary to give effect thereto is also authorized." The "licensed transaction" here is the TTAB's cancellation. Because § 1071(b) establishes civil action as a remedy for a party dissatisfied with a TTAB order, GC's 1071(b) action, Cubatabaco's defense, and the resulting district court order are each "ordinarily incident to" the TTAB's licensed cancellation order and "necessary to give effect thereto."[3] GC simply ignores this provision.

Even standing alone, the General License would provide the necessary authority. As the Federal Circuit held, the TTAB's cancellation in this instance is

---

[3] Section 515.421(a)(2)'s exception from its reach of "a transfer of blocked property that is not explicitly authorized within the terms of the license" is inapplicable. GC's registrations are not "blocked property"; and, even if they were, and to the extent cancellation may be considered a "transfer," the TTAB's "transfer" is explicitly authorized by CACR § 515.527.

20

authorized by the express terms of the General License, which authorizes transactions "related to" the registration of trademark. So, necessarily, is a judicial rejection of efforts to set aside that TTAB order.

It is of no moment whether it was proper under § 1071(b) for the district court to affirm the TTAB (it was, *infra*), or whether, as GC maintains, it was required on its findings to itself cancel the registrations. In either case, the General License would be negated unless the district court's order, like the TTAB's, was authorized. And the district court's order, under either understanding, is a "transaction ordinarily incident to a licensed transaction and necessary to give effect thereto," and so "authorized" under CACR § 515.412.

GC relies on the Second Circuit's 2005 decision to support its position, Br. at 30-35, but the Second Circuit did not have before it, let alone decide, the CACR issue that is before this Court. The question before the Second Circuit was whether a court had authority to order cancellation requested by a Cuban party where the TTAB had *not* entered any order of its own – not whether a court is authorized to dismiss a complaint seeking reversal of a TTAB order of cancellation. Moreover, and independently dispositive, the Second Circuit's decision was issued well before CACR § 515.421 was promulgated. 80 Fed. Reg. 56919 (Sept. 21, 2015).[4]

---

[4] GC's citation of Cubatabaco's statement to the Federal Circuit that a "*[TTAB]* cancellation order is licensed, but a *judicial* cancellation order is not" (emphasis in

21

GC's reliance on LIBERTAD's codification provision, 22 U.S.C. § 6032(h), Br. at 31-34, is misplaced. As the General License was in effect when LIBERTAD was enacted, it remains in effect under LIBERTAD's requirement that the CACR's restrictions in effect as of March 12, 1996 "shall remain in effect." Likewise, CACR § 515.421 is properly in effect as a post-LIBERTAD "interpretation" of a pre-LIBERTAD general license.[5]

---

original), Br. at 35, is inapposite. Cubatabaco was expressly addressing the Second Circuit's "holding," JA353, which dealt with judicial cancellation in a specific and fundamentally distinguishable posture.

[5] Although therefore of no moment here, it is to be noted that every Administration has taken the position that LIBERTAD codification includes the authority conferred by CACR § 201(b) to issue General and Specific licenses authorizing transactions that the CACR prohibited when LIBERTAD was enacted. *See, e.g.*, National Security Council, Statement (Jan. 5, 1999), https://19972001.state.gov/policy_remarks/1999/990105_dobbins_etal_cuba.htm; Brief for the United States as Amicus Curiae, *Empresa Cubana del Tabaco v. General Cigar Company, Inc.* (May 2006) (No. 05-417) at 16 n.4; Matthew S. Borman (Commerce Department), Examining the Status of U.S. Trade with Cuba and Its Impact on Economic Growth, Subcommittee on Commerce, Trade and Consumer Protection, House of Representatives at 11-13 (April 27, 2009); Press Release, Dep't of Treasury, Treasury and Commerce Announce Significant Amendments to the Cuba Sanctions Regulations ahead of President Obama's Historic Trip to Cuba (March 15, 2016), https://home.treasury.gov/news/press-releases/jl0379; Press Release, Dep't of Treasury, Treasury, Commerce, and State Implement Changes to the Cuba Sanctions Rules (Nov. 8, 2017), https://home.treasury.gov/news/press-releases/sm0209; Office of Foreign Assets Control, Frequently Asked Question No. 1056 (June 8, 2022), https://ofac.treasury.gov/faqs/1056.

**B.    GC's Position is Also Self-Defeating, as CACR Would Then Bar a Decision for Either Party.**

GC's position also cannot be correct because it leads to an additional absurd result. If GC is correct, there would be no authority under the CACR for the district court to affirm *or* reverse and vacate, because either would alter the TTAB order.

The CACR prohibits unlicensed "transfers" of "property" in which a Cuban national has "any interest of any nature, direct or indirect." 31 C.F.R. § 515.201(b). "Transfer" means "any actual or purported act . . . the purpose, intent or effect of which is to . . . alter, directly or indirectly, any right, remedy . . . with respect to any property." 31 C.F.R. § 515.310. "Transfer" includes the "issuance" of any "judgment" or "other judicial or administrative process or order." 31 C.F.R. § 515.310.

A decision for *either* party would "alter" Cubatabaco's "right" and "remedy" under the TTAB decision and order, which is "property" in which a Cuban national has an "interest, direct or indirect." Either would therefore require a license. If there is no CACR license authorizing the denial of relief, as GC contends, then there would be none authorizing the grant of relief.

Accordingly, if GC is correct, the district court lacks authority to issue *any* order affecting the TTAB's decision. This would mean that the CACR negate all § 1071(b) authority when the TTAB has issued a cancellation order in favor of a Cuban party, leaving appeal to the Federal Circuit under § 1071(a) as the only

23

recourse—which GC waived. Under GC's own theory, therefore, the TTAB order must stand undisturbed, and the registrations must be canceled.

### C. The District Court Properly Exercised its Authority Under § 1701(b) to Simply Affirm the TTAB Order, Without Itself Cancelling the Registrations

The premise of GC's CACR argument is that the district court lacked the authority simply to affirm the TTAB's order; rather, upon finding Article 8 satisfied, it was required to—and therefore effectively did—itself cancel the registrations or order the USPTO to do so. Those judicial acts, GC contends, violate the CACR.

Even if GC's premise were correct, there was authority under the CACR. *See* Point II A & B. But GC's premise does not withstand scrutiny. The district court has discretion under § 1071(b) to determine the appropriate relief. It "*may . . . adjudge that a registration involved should be canceled . . . or such other matter* as the issues in the proceeding require . . . ." 15 U.S.C. § 1071(b) (emphases added). The Supreme Court has "repeatedly observed when discussing remedial provisions using similar language, the word 'may' *clearly* connotes discretion." *Opati v. Republic of Sudan*, 590 U.S. 418, 428 (2020) (internal quotation marks omitted; emphasis in original); *see also Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171-72 (2016); *Fairfax v. CBS Broad.*, 534 F. Supp. 3d 581, 599-600 (E.D. Va. 2020) ("plain meaning and effect [of 'may'] is permissive, not

24

mandatory or presumptive"); *Luma v. Dib Funding, Inc.*, No. ELH-20-2504, 2022 WL 181156, at *8 (D. Md. Jan. 19, 2022) (discussing "may" appearing in § 1071(b)(4); "[i]t is well settled that 'the word 'may' . . . implies discretion . . .").[6]

Discretion under § 1071(b) is not limited to ordering cancellation: the court "may adjudge . . . *such other matter* as the issues in the proceeding require" (emphasis added). The district court has latitude to tailor relief—including to simply leave in place a TTAB outcome—rather than being compelled to select from specific enumerated options.

That flexibility is not theoretical. Courts in this Circuit have routinely exercised it, as reflected in the range of orders actually issued in 1071(b) actions. This includes orders affirming the TTAB without ordering the USPTO do

---

[6] Another section of the Lanham Act provides that a district court "*may* determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register." 15 U.S.C. § 1119 (emphasis added). Recognizing the flexibility of "may," the SDNY action, the Second Circuit held that the district court had the *discretion not* to order the TTAB to take action and, instead, to leave the TTAB to proceed on its own. *Empresa VII*, 541 F.3d at 478-79.

25

anything, at least three of which have been affirmed by this Court.[7] Such orders

likewise have been regularly issued in other Circuits.[8]

As evidenced by its affirmance of such orders, the Fourth Circuit has long

recognized that § 1071(b) authorizes district courts to exercise flexible remedial

authority. In *Durox Co. v. Duron Paint Mfg. Co*., 320 F.2d 882 (4th Cir. 1963), this

Court affirmed a district court's exercise of that discretion in reaching a

registration determination that differed from the TTAB's decision, without issuing

a directive to the USPTO. *Id*. at 883. There, the TTAB refused registration

---

[7] *See, e.g.*, *Belmora, LLC v. Bayer Consumer Care AG*, 338 F. Supp. 3d 477 (E.D. Va. 2018), *aff'd in part*, *vacated on other grounds*, 987 F.3d 284 (4th Cir. 2021) (affirming TTAB decision without USPTO directive); *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 760 (E.D. Va. 2012) (affirming TTAB dismissal without USPTO directive ordering registration), *aff'd*, 739 F.3d 150 (4th Cir. 2014); *Interprofession Du Gruyère v. United States Dairy Exp. Council*, 575 F. Supp. 3d 627, 649 (E.D. Va. 2021) (Ellis, J.) (granting summary judgment, effectively affirming TTAB's genericness decision without ordering PTO to deny registration), *aff'd*, 61 F.4th 407 (4th Cir. 2023); *Luma v. DIB Funding Inc.*, No. 1:24-cv-00863 (PTG/WBP), 2025 WL 1074804 (E.D. Va. Jan. 17, 2025) *R&R adopted*, 2025 WL 1073700 (E.D. Va. Apr. 9, 2025) (affirming TTAB decision dismissing without ordering USPTO to cancel); *Zao Odessky Konjatschnyi Zawod v. SIA "Baltmark Invest"*, 999 F. Supp. 2d 851, 862 (E.D. Va. 2014) (affirming TTAB dismissal without USPTO directive); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. WDQ-08-2764, 2011 WL 6202479, at * 12 (D. Md. Dec. 5, 2011) (affirming TTAB cancellation without USPTO directive).

[8] *See, e.g.*, *CVP Sys., Inc. v. M-TEK Inc.*, No. 92 C 5761, 1994 WL 531556, at *1, *5 (N.D. Ill. Sept. 29, 1994); *Birmingham v. Rawlings Sporting Goods Co., Inc.*, No. 5:11-CV-1135 (FJS/DEP), 2012 WL 13024765, at *7 (N.D.N.Y. Mar. 2, 2012); *Viña v. Serine-Cannonau Vineyard*, No. CV 15-9658 PSG (JPRx), 2017 WL 11636421, at *10 (C.D. Cal. May 17, 2017).

outright, but the district court concluded the plaintiff was entitled to registration for narrower goods. *Id*. at 885. Rather than reverse the TTAB and order the USPTO to register the mark for narrower goods, the court dismissed the complaint without prejudice, allowing the plaintiff to reapply for registration with the narrower scope. *Id.* at 885.

GC argues that the district court could not merely affirm because the action before it was *de novo* and therefore not an appeal. This confuses the standard of review with the remedy. *De novo* describes how the court reaches conclusions of law and evaluates the record "as factfinder," including for any new evidence. *See Kappos v. Hyatt*, 566 U.S. 431, 444 (2012); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014).

Critically, no authority holds that a district court in a 1071(b) action, conducting *de novo* review, cannot simply affirm the TTAB's decision and instead must cancel registrations or order the USPTO to act, and the permissive language of the statute itself lends no support to the proposition. Nothing in the statute compels a court to enter a fresh directive where a TTAB order has already been issued and the court, on *de novo* review, finds that it was correct. In fact, *Swatch* makes clear that a district court may reach the same conclusion as the TTAB, so long as the court, independently and *de novo*, evaluates the record. 739 F.3d at 156-58 (affirming TTAB dismissal of the opposition; no separate directive issued).

The *de novo* standard therefore allows the common practice of affirming TTAB outcomes without issuing a separate order to the USPTO. After a fresh look, the district court here, like many others, chose that remedy, authorized by the statute's broadly permissive "may" and "such other matter" language.

In a variation on the same theme, GC argues that the district court's decision, even if it did not cancel the registrations itself, "authorizes" the USPTO to cancel them and therefore is the equivalent of a judicial order of cancellation, violating the CACR. Br. at 27-29. This argument is similarly of no avail, as the CACR in any event authorize a judicial decision in a 1071(b) action following a TTAB cancellation. *See* Point II A and B, *supra*.

This argument also fails because GC misconceives how § 1071(b) works. As shown, it provides the court with flexibility in crafting its order, here, affirming. Under § 1071(b), "[s]uch adjudication shall authorize the Director [of the USPTO] to take *any necessary* action" (emphasis added). No district court authorization was necessary here, as the TTAB order withstood challenge, such that the only action necessary was for the Director to execute the TTAB's own order, precisely as would have occurred and relying on the same authority as in the absence of a 1071(b) action.

Congress granted the Director the authority to execute TTAB orders and far more. 15 U.S.C. § 1068. With the TTAB order undisturbed by the district court,

28

the Director needs no authority from the district court in order to cancel GC's

registrations. This is evident in orders issued by the TTAB following other

§ 1071(b) actions when cancellation has been affirmed. It is the TTAB's original

decision that becomes final and is implemented.[9]

> **D.** **To the Extent GC Argues that the District Court's Article 8 Findings Are a "Transfer" of Property Requiring a CACR License, It is Mistaken**

It is unclear whether GC argues that the district court's mere determination

that Article 8 is satisfied is itself a judicial act that requires a CACR license, even

if unaccompanied by an order of cancellation. Even if this were so, the district

court's determinations would be licensed. *See* Points I(A) and (B).

Moreover, any such argument would be rebutted by a long, unbroken line of

cases and OFAC's own position. A judgment determining rights, including rights

with respect to specific property, is distinct from an order implementing those

rights. Only the latter must be licensed.

In *Tagle v. Regan*, 643 F.2d 1058, 1067 (5th Cir. 1981), the court held that a

judgment that plaintiffs were entitled to CACR-blocked assets did not require

---

[9] *See, e.g.*, Addendum (TTAB orders): *DIB Funding, Inc. v. Honson Luma*, No. 92068284 (T.T.A.B. June 17, 2025) (TTAB "decision has become final"); *Swatch AG v. Amy T. Bernard*, No. 91169312 (T.T.A.B. Oct. 7, 2014) ("[TTAB]'s decision . . . stands"); *Serine-Cannonau Vineyard, Inc. v. Viña Undurraga S.A.*, No. 92053854 (T.T.A.B. June 6, 2017) (TTAB "decision has become final").

CACR authorization; only *distribution* pursuant to that decision would. In *Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*, No. 19-cv-11018, 2020 WL 5849013, at *4 (S.D.N.Y. Oct. 1, 2020), the court rejected the argument that mere entry of judgment required OFAC authorization because it would "alter Plaintiffs' rights and Defendant's obligations with respect to the bonds at issue in this case." In *Ferrera v. United States*, 424 F. Supp. 888, 890 (S.D. Fla. 1976), the court held that CACR authorization was not required for a court to "adjudicate the interest of" Cuban nationals in blocked assets. Contracts, arbitral awards, and judgments are within the CACR's definition of "property," but courts have held that judgments determining rights under contracts and recognition of foreign arbitral awards are not "transfers," as distinct from enforcement of those decisions. *See Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 809 (D. Del. 1990); *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20-cv-3699, 2021 WL 2581569, at *4-5 (S.D.N.Y. June 22, 2021); *Ministry of Def. & Support v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 (9th Cir. 2011).

OFAC views the distinction the same way. Addressing provisions in the Venezuelan Regulations identical to those in the CACR defining "property" and "transfer," OFAC has advised that no authorization is needed for a court to determine an action against Venezuela, or for it to issue writs of attachments, but authorization is required for "the *enforcement* of any lien, judgment, or other order

30

through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property" of covered Venezuelan nationals. OFAC, FAQ No. 808, *available at* https://ofac.treasury.gov/faqs/808 (last visited February 13, 2024) (emphasis added). *See also Interamerican Consulting*, 2021 WL 2581569, at *4-5, citing OFAC FAQ No. 808.

### III.  GC Is Judicially Estopped from Arguing that the Second Circuit Ruling Has Preclusive Effect

At GC's request, the Federal Circuit considered whether the Second Circuit's rulings in prior litigation between the parties precluded the TTAB proceedings below. It determined that the Second Circuit's decision is *not* preclusive, as either issue or claim preclusion, of the TTAB's determination of Cubatabaco's petition for cancellation, including specifically with respect to Article 8. *Empresa IX*, 753 F.3d at 1275, 1277-78. GC had urged that the Federal Circuit "*should*" address preclusion "rather than extend this [then] 17-year old dispute several more years by a remand to the [TTAB]." GC Brief, *Empresa*, 2013 WL 6632194 at *23, 41. In making that request for the reason stated, GC clearly and necessarily sought a *binding* decision.

GC could have preserved the option of raising preclusion later in a 1071(b) action by requesting that the Federal Circuit remand the issue to the TTAB, which had not previously addressed it. *Empresa IX*, 753 F.3d at 1276. If, after remand,

31

GC was dissatisfied with the TTAB's decision, it could have brought the issue to the district court in a 1071(b) action. But GC made a different choice.

This is judicial estoppel, plain and simple. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). GC prevailed in that, as it requested, the Federal Circuit decided the question of preclusion.

The Court should exercise its discretion to apply the flexible, equitable doctrine of judicial estoppel in this circumstance, "to protect the integrity of the judicial process" by preventing "intentional self-contradiction . . . as a means of obtaining an unfair advantage." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (applying judicial estoppel based on positions in an earlier litigation); *see also Fed. Deposit Ins. Corp. v. Jones*, 846 F.2d 221, 234 (4th Cir. 1988) (applying judicial estoppel where party reversed position on whether agreement was binding). GC cannot reasonably ask this Court to treat as non-binding the decision it requested in order to bind the parties.

32

**IV.    Even If GC's Argument is Not Barred by Judicial Estoppel, The District Court Did Not Err In Applying the Federal Circuit's Decision**

    **A.    The District Court's Application of the Federal Circuit's Decision Was Not Error Because of the Statute's Command that It "Shall Govern"**

Section 1071(a)(4) provides that the Federal Circuit's decision in an appeal from the TTAB "shall govern the further proceedings in the case." This Court has already considered and agreed that this "incorporates a strict version of the 'law of the case' rule in the event that the Federal Circuit renders a decision and, later, the case comes before a different circuit court," such that adherence to the Federal Circuit decision is "mandatory" and does not "admit[] . . . exceptions." *Snyder's-Lance, Inc.*, 991 F.3d at 522 & n.8. "[A] party may not take a second bite at the apple by seeking re-review in district court of issues already decided by the Federal Circuit." *Id.* at 517. To allow otherwise would result in redundant litigation and potential conflicts that would violate the "primacy" of the initial Federal Circuit decision. *Snyder's-Lance*, 991 F.3d at 521-22.

In *Gillette Co. v. "42" Prods. Ltd., Inc.*, 435 F.2d 1114, 1117 (9th Cir. 1970), the Ninth Circuit held that "shall govern" in § 1017(a)(4) applies to a subsequent 1071(b) action. It explained that a district court "must . . . recognize that the [Federal Circuit's predecessor]'s opinion foreclosed all points which it decided," to "fully protect[] the integrity of the earlier decision of the [Federal Circuit's predecessor]" and "satisfy[]" the "shall govern" requirement. *Id.* at 1117.

33

This Court cited and discussed *Gillette* approvingly in *Snyder's-Lance*, calling it "the better interpretation of §1071(a)(4)." 991 F.3d at 525-26.

GC attempts to avoid this result by arguing that a 1071(b) action is reviewed *de novo* and therefore constitutes a new proceeding unconstrained by the mandate of § 1017(a)(4). But in *Snyder's-Lance*, the court explicitly acknowledged "*de novo* review" for the "district court path," 991 F.3d at 515, without relating the *de novo* standard to § 1017(a)(4)'s "shall govern" mandate, let alone interpreting it as negating the applicability of that mandate in a 1071(b) action. Like *Snyder's-Lance*, *Gillette* expressly recognized that a dissatisfied party may pursue "a trial *de novo*." 435 F.2d at 1117. The Ninth Circuit held that the Federal Circuit's decision nevertheless "must" control the 1071(b) action. *Id*. These decisions confirm that *de novo* review of the TTAB's findings coexists with, rather than overrides, the binding force of the Federal Circuit's earlier determination.

GC cites no case holding to the contrary of *Snyder's* and *Gillette*, and Cubatabaco knows of none. And *Hoover v. Coe*, 325 U.S. 79 (1945), involving a parallel patent statute, does not do the work GC claims. The question there was whether a patent applicant had to exhaust all administrative steps at the USPTO before filing suit in the district court. *Hoover*, 325 U.S. at 83-84. *Hoover* simply stated that a decision by the Federal Circuit's predecessor "shall govern the further proceedings in the case in the Patent Office." *Id*. at 83. It did not say "only" in the

34

Patent Office. That statement says nothing about the effect of the mandate that may exist beyond the USPTO, which *Hoover* did not address, much less decide. In fact, GC's argument relies not on *Hoover* itself, but on a footnote in *Snyder's-Lance* that describes what the plaintiffs in that case argued—that *Hoover* appears to read "shall govern" more narrowly than this Court did. *Snyder's-Lance*, 991 F.3d at 517 n.2. *Snyder's-Lance* itself did not adopt that view of *Hoover.* Nor did *Hoover* dissuade the Fourth or Ninth Circuits from their analysis of "shall govern" and the conclusion that the statutory mandate applies in the district court.

GC insists that *Snyder's-Lance*'s discussion of "shall govern" is mere dictum. Br. at 39. Even if so, GC offers no compelling cause for this Court to reject its own well-reasoned, unanimous analysis and the Ninth Circuit's holding in *Gillette*.

GC nonsensically insists that "shall govern" does not apply in a 1071(b) proceeding because it is not mentioned in § 1071(b) specifically. Br. at 38, 41-42. But there is no reason it should be. It is a result that flows from a 1071(a) appeal to the Federal Circuit, so it is set forth there. It need not be reiterated in each discussion of circumstances where its effect may be felt, which include any proceeding under § 1071(a) or (b) that follows a further TTAB decision after remand from the Federal Circuit.

35

Allowing GC a second bite at the apple by relitigating issues the Federal Circuit decided would be fundamentally at odds with § 1071, which allows a party to seek *either* form of review, *but not both*. *See* 15 U.S.C. § 1071(a)(1) (appeal to Federal Circuit "waiv[es]" rights under § 1071(b)(1), which allows civil action "unless appeal has been taken"). This avoids a risk of inconsistent decisions, and, further, is structured to avoid delay and waste of judicial and party resources by precluding multiple appeals on the same issue. *See Snyder's-Lance*, 991 F.3d at 524 (Congress foreclosed redundant "appeals of the *same* decision in different forums") (emphasis in original) (citing *Hoover*, 325 U.S. 86-87). That waste, however, is exactly what GC demands.

Moreover, and itself dispositive, there would be no need to include § 1071(a)(4)'s "shall govern" language if decisions of the Federal Circuit were only binding on the TTAB, as there can be no doubt that an appellate court's decision is binding on the administrative body whose decision it reviews. Thus, the Federal Circuit's opinion must govern a 1071(b) action for the mandate to have any meaning. The statute does not define "case," but would be nonsensical unless "case" is broad enough to encompass a 1071(b) action. GC offers no alternate interpretation that would justify inclusion of the "shall govern" command.

Further, the term "the case" is easily broad enough for it to be read in a way that makes the statute work. The TTAB proceedings are the genesis of the 1071(b)

36

action, which is a "remedy" to a party "dissatisfied" with the TTAB decision. GC

itself underscored the link with the TTAB proceeding by requesting that the district

court review the TTAB decision for legal error, reverse the TTAB decision, and

vacate its order. In a later filing, GC termed the TTAB proceeding a "prior stage[]"

of this proceeding." JA18, JA20. Moreover, the district court could have remanded

to the TTAB.[10] Remands necessarily occur within a single case.

## B. Even Aside from the Statutory Mandate, the Federal Circuit Decision Governs as Standard Law of the Case

Even apart from the commands of § 1071(a)(4), the District Court did not err

in applying the Federal Circuit's decision. Ordinary law of the case principles

require that result since, as shown (*supra*), this is the same case that was before the

Federal Circuit. "[O]nce the decision of an appellate court establishes the law of

---

[10] *See, e.g.*, cases remanding to TTAB, PTAB, or their precursors: *Booking.com B.V. v. Matal*, 278 F. Supp. 3d 891, 924 (E.D. Va. 2017), *aff'd*, 915 F.3d 171 (4th Cir. 2019), *aff'd sub nom U.S. Patent and Trademark Off. v. Booking.com B.V.*, 591 U.S. 594 (2020); *Cardwell v. Investor's Analysis, Inc.*, No. 85-6793, 1987 WL 11497, at *3 (E.D. Pa. May 15, 1987); *Putman v. Dudas*, 539 F. Supp. 2d 414, 422 (D.D.C. 2008); *Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co.*, 477 F. Supp. 2d 699, 718 (E.D. Va. 2007). The authority to remand is one of the district court's inherent powers. *See Fleming v. FCC*, 225 F.2d 523, 526 (D.C. Cir. 1955), citing *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939). The district court here considered remand but decided against it. JA166.

the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (internal quotation marks omitted). Law of the case applies even though this case now proceeds in a different circuit. *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 210 n.5 (4th Cir. 2011) ("Although the case is no longer within our circuit, presumably our decision will become law of the case in the transferee district and circuit.") (citing 18B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4478.4).

GC does not argue that any exception to law of the case applies with respect to the Federal Circuit decision on claim preclusion.

## C.    *B&B Hardware* Provides No Reason to Deny the Binding Effect of the Federal Circuit's Issue Preclusion Decision

GC urges this Court to take the extraordinary step of disregarding law of the case because of the intervening decision in *B&B Hardware v. Hargis, Inc.*, 575 U.S. 138 (2015), and hold that Cubatabaco's Article 8 claims are barred by issue preclusion. Br. at 43-44. But *B&B* does not reject, or alter in any way, the legal reasoning the Federal Circuit employed to conclude that issue preclusion does not bar those claims. As the Federal Circuit explained, whatever limitations might have applied in district court under Section 44(h) are irrelevant at the TTAB, which has jurisdiction under Section 17, a provision that does not contain any such limitations. *See* 15 U.S.C. § 1126(h); 15 U.S.C. § 1067(a); *Empresa IX*, 753 F.3d at

1278 ("Unlike in the district court, the [TTAB] need not consider the interplay with Section 44(h)."). The TTAB, in a lengthy and well-reasoned analysis, and the district court both considered and correctly rejected GC's argument. JA210-216; JA158.

GC cannot show an exception to the law of the case doctrine, namely, that "controlling authority has since made a contrary decision of law applicable to the issue." *U.S. v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999); *see also Banks v. United States*, 741 F.3d 1268 (Fed. Cir. 2014) (describing same exception in the Federal Circuit as in the Fourth Circuit). To make such a showing, "[t]hree conditions must be satisfied." *Dow Chem. Co. v. Nova Chem. Corp.*, 803 F.3d 620, 629 (Fed. Cir. 2015): "First, the governing law must have been altered. . . . Second, the decision sought to be reopened must have applied the old law. . . . Third, the change in law must compel a different result." *Id*. GC satisfies none of these.

As to the first, *B&B* did not change the test for issue preclusion. It cites and straightforwardly applies the issue preclusion factors laid out in Restatement (Second) of Judgments, §§ 27-28, which long predate that decision. *B&B*, 575 U.S. at 148. Indeed, *B&B* referred to the "ordinary elements" of issue preclusion no fewer than nine times. *See, e.g.*, *B&B*, 575 U.S. at 160. The Federal Circuit applied the same ordinary elements in its decision, *Empresa IX*, 753 F.3d at 1276, citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000) (applying

39

same Restatement factors). If anything, *B&B* therefore reaffirmed that the Federal Circuit conducted the appropriate analysis.[11] Indeed, the Federal Circuit continues to apply pre-*B&B* precedent on issue preclusion. *See Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1380-81 (Fed. Cir. 2025) (applying *B&B* and noting consistency with its precedent); *see also In re Gardasil Prods. Liab. Litig.*, 151 F.4th 178, 196-97 (4th Cir. 2025) (same). No court in this Circuit or the Federal Circuit has found that *B&B* changed the test that the Federal Circuit indisputably applied. This Court need go no further.

Nor is the reasoning of *B&B* in finding issue preclusion on the facts of that case relevant here. *B&B* involved one Lanham Act section applicable to the TTAB and another applicable to district courts, with "operative language" that was "essentially the same," making preclusion possible. *B&B*, 575 U.S. at 154-55. Here, the Second Circuit's rejection of Cubatabaco's Article 8 claim was grounded in the fact that it had to be asserted under Lanham Act Section 44(h), 15 U.S.C. § 1126(h). Section 44(h) is limited to "protection against unfair competition." *Empresa V*, 399 F.3d at 483. That limitation is wholly absent from Section 17(a),

---

[11] GC cites *United States v. Cannady*, 63 F.4th 259, 268 (4th Cir. 2023), Br. at 43, but that decision only confirms that law of the case must be followed here. In *Cannady*, binding precedent had changed the "elements of the conspiracy offense" and the new definition "directly applied." *Id.* Here, in stark and dispositive contrast, *B&B* applied the same Restatement elements as had the Federal Circuit, demonstrating GC cannot show the requisite change in applicable law.

15 U.S.C. § 1067(a), under which Cubatabaco asserted its claims before the TTAB. Thus, the Federal Circuit held, "[u]nlike in the district court, the [TTAB] need not consider the interplay with Section 44(h)" and its unfair competition limitation. *Empresa IX*, 753 F.3d at 1278. In reasoning consistent with—indeed compelled by—*B&B*, the Federal Circuit assessed the statutory standards applicable before the district court and TTAB and found them dispositively different, foreclosing preclusion.

Given those differences in the statutory language and the fact that the Federal Circuit applied the same test as *B&B*, GC's argument fails at the threshold to show there has been *any* change in law. As the foregoing makes clear, the Federal Circuit would reach the same conclusion today that it did prior to *B&B*: that what the Second Circuit considered was not the same issue that was before the TTAB. That the supposed intervening change GC asserts is illusory is sufficient to defeat GC's attempt to meet an exception to law of the case.

GC also cannot meet the second requirement, that the Federal Circuit "must have applied the old law." As shown, the Federal Circuit applied the elements of issue preclusion from Restatement § 27, to which *B&B* also turned for the "ordinary elements" of preclusion. Thus, even if the law had somehow changed, *Empresa* applied the new law.

41

Nor can GC satisfy the third requirement, that any change in law "must compel a different result." *B&B* did not address Section 17(a) or Section 44(h) of the Lanham Act, the TTAB's authority to apply Article 8 or other treaty-based claims, or the comparative authority of the TTAB and the district courts to do so. Thus, even if, as GC suggests, *B&B* broadly changed the test for identity of issues—notwithstanding the fact that it did not say this expressly and no court has found that it did—that would still not "compel" a different result because the context here is so different. Indeed, *B&B* itself expressly acknowledged that in "some or even many cases" there will be reasons to not find preclusion between the TTAB and district court depending on the substantive issues the first tribunal decides. *B&B*, 575 U.S. at 156. As the Federal Circuit held, the restrictions of Section 44(h) barred the district court from reaching, much less deciding, whether the requirements for cancellation under Article 8 are met. The TTAB decided that issue under its Section 17(h) authority. GC thus cannot meet any of the three requirements to show an exception to law of the case.

## D. GC's Own Theory Independently Supports the District Court's Decision to Apply the Federal Circuit's Decision

GC's argument that the Federal Circuit's decision is not binding because the 1071(b) action is a different case is not only wrong (*supra*) but is for naught. If, as GC insists, the district court review is *not* part of the same case as the TTAB

42

proceeding, then the Federal Circuit's holding results in collateral estoppel,[12] and the district court's decision to apply it is not reversable error.

The elements of issue preclusion are readily satisfied. GC seeks to relitigate precisely the original issue—whether there was issue or claim preclusion in the TTAB from the Second Circuit's decision—that was resolved by the Federal Circuit. The issue was critical and necessary to the judgment, which was final and valid. Both parties had a full and fair opportunity to litigate the issue. *See Treadwell Original Drifters, LLC v. Original Drifters, Inc.*, No. 1:15–cv–580, 2016 WL 5899289, at *3-6 (E.D. Va. Jan. 28, 2016) (applying Fourth Circuit test and dismissing 1071(b) complaint on issue preclusion grounds).

---

[12] Although Cubatabaco did not make the argument that the Federal Circuit decision controlled at the district court in these terms, the support for it—if the Court finds this is a different case—is "encompassed by the submissions" below and implicates no additional factual findings. *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 528 (4th Cir. 2022); *see also Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992) ("parties are not limited to the precise arguments they made below. . . . [These] are not separate *claims*. They are, rather, separate *arguments* in support of a single claim") (emphases in original). The issue preclusion "[v]ariation[] on [Cubatabaco's] argument[] made below may be pursued" because it asks only "the same fundamental question" that was before the district court. *De Simone*, 36 F.4th at 528. That question, here, is whether the Federal Circuit decision controlled in the district court.

43

## V.    Even if Decided Anew, GC's Preclusion Arguments Fail

Given there was no error in the district court's application of the Federal Circuit's decision on preclusion, there is no warrant and no reason for this Court to consider and decide anew what the Federal Circuit rejected: GC's arguments that the Second Circuit decision precluded TTAB cancellation. Br. at 49-53. If, however, the Court does reach that issue,[13] the Federal Circuit's ruling was correct. First, the issues addressed by the Second Circuit are not the same as those addressed at the TTAB. Second, the SDNY court lacked the authority to grant the requested relief and issued no merits judgment that could have preclusive effect.

If, on an independent examination, there is *any* uncertainty as to whether the elements of issue or claim preclusion are met, the Court must err on the side of finding that preclusion does not apply. *United States v. Ruhbayan*, 325 F.3d 197, 203 (4th Cir. 2003) ("reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel"); *United States v. Benkahla*, No. 1:06cr9(JCC), 2006 WL 2871234, at *3 (E.D. Va. Oct. 2, 2006), *aff'd*, 530 F.3d 300 (4th Cir. 2008) (same). "Caution is warranted in the application of preclusion by the USPTO, for the purposes of administrative trademark procedures include

---

[13] *See, e.g.*, *Harriman v. Associated Indus. Ins. Co.*, 91 F.4th 724, 728, 730 (4th Cir. 2024) (judgment below maybe affirmed "on any grounds apparent from the record," including those the district court did not adopt).

44

protecting both the consuming public and the purveyors." *Mayer/Berkshire*, 424 F.3d 1299, 1234 (Fed. Cir. 2005). "[A] reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." *Id*.; *see also N.J. Inst. of Tech. v. Medjet, Inc*., 47 F. App'x 921, 926 (Fed. Cir. 2002) (where "claim preclusion is at all questionable," "we must resolve the ambiguity in the scope of an earlier decision in favor of the litigants opposing res judicata").

These principles apply with particular force here. GC made a deliberate choice not to assert a counterclaim in the SDNY action for dismissal of Cubatabaco's cancellation petition, as would have been common. *Empresa VI*, 478 F. Supp. 2d at 520. It cannot benefit now from any ambiguity in *Empresa V* resulting from that choice.

## A. There is No Issue Preclusion Because the Issue is Different.

Just as the Federal Circuit found, there is no issue preclusion because the issue decided by the Second Circuit is not the one that was before the TTAB or the district court. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (issue must be "identical"). Cubatabaco asserts here that the TTAB has the authority to order cancellation under Article 8 pursuant to Lanham Act Section 17(a). The Second Circuit held only that the SDNY court could not cancel under

45

Article 8 "pursuant to *Section 44(h)* . . . because [Article 8] do[es] not relate to the repression of unfair competition." *Empresa V*, 399 F.3d at 483 (emphasis added).

The unfair competition limitation that was the basis of the Second Circuit's decision comes from the text of Section 44(h)[14] and has no corollary in Section 17(a). The Second Circuit did not mention, consider, or decide the scope of TTAB authority to apply Article 8 under Section 17(a). *Empresa IX*, 753 F.3d at 1278; *see also Empresa VI*, 478 F. Supp. 2d at 520 ("there are questions pertaining to the TTAB and [US]PTO proceedings that were not decided by the Court of Appeals"), *aff'd*, *Empresa VII*, 541 F.3d 476. Further, Section 17(a) only addresses the authority of the TTAB, so it was not relevant to the courts in the SDNY Action.

That Article 8 purportedly provides "the same substantive legal standards" in either posture, Br. at 46, is irrelevant. The Second Circuit considered only the federal courts' authority to apply that standard in a circumstance other than the TTAB having ordered cancellation and the registrant bringing a § 1017(b) action to have "remedy" from the TTAB decision. GC has done nothing to refute the Federal Circuit's analysis or conclusion.

---

[14] Section 44(h) provides that a treaty national will have remedies under that section "so far as they may be appropriate in repressing acts of unfair competition." 15 U.S.C. § 1126(h).

46

Even if, as GC wrongly argues (*see* Point II(C)), the district court's order should be treated as the equivalent of a judicial order cancelling the registrations, there would be no basis for preclusion. Dispositively, in the SDNY action there was no underlying TTAB order authorized by the General License. It was the court in that action, at Cubatabaco's request as plaintiff, that issued an independent order directly cancelling the registrations and ordering the USPTO to act. The Second Circuit did not have before it, and could not and did not address, the opposite situation here: there is a TTAB order licensed by the CACR and issued pursuant to Section 17(a); GC brought the instant action under § 1071(b), a provision that had no application to the SDNY lawsuit; and Cubatabaco, as defendant, did not ask the court to order cancellation.

**B.    There is No Claim Preclusion Because of Limitations on the SDNY Court's Authority and Because there was No Decision on the Merits.**

There is no claim preclusion where, as here, the first forum lacked the authority to award the full measure of relief sought before the second forum. Moreover, as the Federal Circuit found, the Second Circuit "never issued a final judgment on the merits of Cubatabaco's cancellation claims." *Empresa IX*, 753 F.3d at 1278. Thus, claim preclusion does not bar Cubatabaco's Article 8 claim.

47

      *1.*     *The SDNY Court Lacked the Authority to Award Relief based on Article 8.*

When, as here, "the initial forum did not have the power to award the full measure of relief sought in the later litigation," adjudication by the initial forum does not give rise to claim preclusion. *Passaro v. Virginia*, 935 F.3d 243, 251-52 (4th Cir. 2019) (no claim preclusion; recognizing that each of agency and court had authority the other lacked); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (no claim preclusion where agency could not award damages court could); Restatement (Second) of Judgments § 26 (1982), cmt. c (claim preclusion "predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim"). As GC acknowledges, claim preclusion is limited to claims "*that might have been presented*" in the first action, Br. at 51 (emphasis added), and so is not applicable here, since the Second Circuit found that the SDNY court lacked the necessary authority in two ways.

First, the Second Circuit took the view that Cubatabaco "cannot assert" its Article 8 claim in district court because the strictures of Section 44(h) limited the court's authority to apply the IAC. *Empresa V*, 399 F.3d at 483. In stark contrast, as found by the Federal Circuit, the Second Circuit did not discuss, much less adjudicate, whether the TTAB had more or different authority, or whether Cubatabaco met Article 8's substantive requirements. *Empresa IX*, 753 F.3d at

48

1278. Section 17 is addressed exclusively to the TTAB and provides it with the authority it needs to apply Article 8.[15]

Second, the Second Circuit determined that the CACR placed significant limitations on or wholly barred judicial authority to cancel registrations in the posture of the SDNY action. The lack of a license under the CACR to allow the district court to act was central to the Second Circuit's decision and is an independent reason that that forum lacked the authority to decide Cubatabaco's Article 8 claims, such that claim preclusion cannot attach.

GC's focus on the underlying operative facts would elide these crucial distinctions in authority. Its reliance on *Pueschel*, Br. at 50-52, is therefore misplaced. *Pueschel v. United States* applies the Fourth Circuit's familiar "same claim" test for claim preclusion, asking whether the suits arise from the same transaction or core of operative facts, to prevent "artful pleading" when the first forum could have fully adjudicated the later-asserted claim and granted the relief later sought. 369 F.3d 345, 355-56 (4th Cir. 2004). That premise does not hold here for the reasons already discussed.

---

[15] GC has not put at issue the TTAB's authority under Section 17, nor could it, as it did not do so below, or even in its opening brief. *See* fn. 1, *supra*.

49

> 2.     *There Was No Final Judgment on the Merits of the Article 8 Claim in the SDNY Action.*

For related reasons, GC's claim preclusion argument also fails because, as the Federal Circuit found, *Empresa IX*, 753 F.3d at 1276-78, the Second Circuit issued no judgment on the merits that could give rise to issue preclusion. *See Costello v. United States*, 365 U.S. 265, 286 (1961) ("In order that a judgment may constitute a bar to another suit, it must be . . . determined on its merits."). This limitation on claim preclusion necessarily applies when only an administrative agency, not a court, has the jurisdiction to address a matter. *See, e.g.*, *Air Line Pilots Ass'n Int'l v. Texas Int'l Airlines, Inc.*, 567 F. Supp. 66, 74 n.5 (S.D. Tex. 1983); 18 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc., Juris § 4412 (2d ed. 2013). Only the TTAB, by virtue of Section 17, had the jurisdiction to apply Article 8.

Similarly, that the court in the SDNY action lacked a license to cancel the registrations under the CACR is a failure to meet a precondition that would be required for the court to proceed to a judgment on the merits. A failure based on such a precondition prevents claim preclusion. *Costello*, 365 U.S. at 285 (dismissal "in which the merits could not be reached for failure of the plaintiff to satisfy a precondition" did not bar subsequent action); *see also, e.g.*, *Struna v. Shepherdstown Planning Comm'n*, No. 3:09-CV-77, 2011 WL 862167, at *4 (N.D.W. Va. Mar. 9, 2011) (no *res judicata* where dismissal was for "failure to

50

exhaust administrative remedies"; *Costello* "giv[es] the concept of 'jurisdiction' meaning beyond its traditional personal and subject matter usages") (citing additional authority)*;* 18A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4437 (3d ed. 2018) (claim may be asserted "in a forum that does not require the same precondition"). *See also Empresa IX*, 753 F.3d at 1278.

Moreover, and also dispositive, both SDNY and the Second Circuit held, over GC's strenuous arguments, that the dismissal there was without prejudice to Cubatabaco pursuing cancellation *in the TTAB*. *Empresa VI*, 478 F. Supp. 2d 513, *aff'd*, *Empresa VII*, 541 F.3d 476 ("we see no reason why it was an abuse of discretion for the district court simply to tell General Cigar to raise its estoppel claim before the USPTO and let the agency decide, subject to review by the Federal Circuit, what preclusive effect should be given to our decision").

GC's attempt to fall back on Fed. R. Civ. P. 41(b), Br. at 52, is unavailing. That Rule lists three examples of judgments that do not give rise to claim preclusion, including dismissals for lack of jurisdiction, and the list is not exclusive. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001). Further, the Supreme Court has made clear that a judgment under Rule 41(b) does not necessarily have claim-preclusive effect and dismissals for failure to satisfy a precondition are treated as dismissals for lack of jurisdiction, or otherwise as

51

non-merits determinations. *See, e.g.*, *Costello*, 365 U.S. at 285; *Criales v. Am. Airlines, Inc.*, 105 F.3d 93, 96 (2d Cir. 1997).

## CONCLUSION

For the foregoing reasons, the order and judgment of the district court should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Cubatabaco does not request oral argument as the issues presented in this appeal can be resolved on the papers.

Dated: December 18, 2025          Respectfully submitted,

                                /s/ Benjamin L. Hatch
                                Benjamin L. Hatch
                                MCGUIREWOODS LLP
                                9000 World Trade Center
                                101 West Main Street
                                Norfolk, VA 23510
                                T: 757-640-3727
                                F: 757-640-3947
                                bhatch@mcguirewoods.com

                                Michael R. Krinsky
                                Lindsey Frank
                                RABINOWITZ, BOUDIN, STANDARD,
                                KRINSKY & LIEBERMAN, PC
                                320 West 85th Street
                                New York, NY 10024
                                T: 212-254-1111
                                F: 212-674-4614
                                mkrinsky@rbskl.com
                                lfrank@rbskl.com

Nicole Kinsley
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
T: 617-832-1185
F: 617-832-7000
nkinsley@foleyhoag.com

Natasha N. Reed
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th Floor
New York, NY 10019
T: 212-812-0331
F: 212-812-0399
nreed@foleyhoag.com

*Counsel for Defendant-Appellee Empresa
Cubana Del Tabaco, d/b/a Cubatabaco*

53

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,583 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch

## CERTIFICATE OF SERVICE

I hereby certify that on December 18th, 2025, the foregoing brief was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve all counsel of record electronically.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch

# <u>ADDENDUM</u>

June 17, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

*DIB Funding, Inc.*

*v.*

*Honson Luma*
_____

Cancellation No. 92068284
_____

James R. Hastings of Collen IP for DIB Funding, Inc.

Honson Luma, pro se.

_____

Whereas, DIB Funding petitioned to cancel Registration No. 5396033; and

Whereas, on April 9, 2025, the United States District Court for the Eastern District of Virginia affirmed the decision of the Trademark Trial and Appeal Board granting the petition for cancellation, and this decision has become final;

It is ordered that Registration No. 5396033 is hereby cancelled.

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500

lg

Mailed:  October 7, 2014

Opposition No. 91169312

Swatch AG

v.

Amy T. Bernard

**By the Trademark Trial and Appeal Board:**

Applicant's request filed August 27, 2014 for termination of this proceeding is noted.

Accordingly, the Board's decision mailed February 23, 2011, dismissing the opposition stands and the application will be forwarded to issuance.

dmd

## U. S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE

———

Serine-Cannonau Vineyard, Inc. dba Terry Hoage Vineyards

v.

Viña Undurraga S.A.

———

Cancellation No. 92053854

———

Anne Hiaring Hocking of Donahue Fitzgerald LLP for Serine-Cannonau Vineyard, Inc. dba Terry Hoage Vineyards.

George W. Lewis of Westerman Hattori Daniels & Adrian for Viña Undurraga S.A.

———

Whereas, Serine-Cannonau Vineyard, Inc. dba Terry Hoage Vineyards petitioned to cancel Registration No. 3523399, issued to Viña Undurraga S.A; and

Whereas, on June 2, 2017, the United States District Court Central District of California, Western Division dismissed the appeal with prejudice;

Whereas, the October 16, 2015 the Trademark Trial and Appeal Board rendered a decision granting the petition for cancellation, and this decision has become final;

It is ordered that Registration No. 3523399 be, and it is hereby cancelled.

Mary Boney Denison
Commissioner for Trademarks