# No. 25-1645

# United States Court of Appeals
### *for the*
# Fourth Circuit

---

GENERAL CIGAR COMPANY, INC.,

*Plaintiff-Appellant,*

– v. –

EMPRESA CUBANA DEL TABACO, d/b/a Cubatabaco,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

---

# REPLY BRIEF OF APPELLANT
# GENERAL CIGAR COMPANY, INC.

---

J. Kevin Fee
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4441

Andrew L. Deutsch
LAW OFFICES OF ANDREW L. DEUTSCH
6540 Olympic Place
Los Angeles, CA 90035
(917) 861-3315

Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
(858) 677-1400

*Counsel for Appellant*
*General Cigar Company, Inc.*

---

CP COUNSEL PRESS    (800) 4-APPEAL • [715542]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................1

II. ARGUMENT........................................................................................3

    A. The CACR Prohibit Cancellation of General Cigar's Trademark Registrations ................................................................................3

        1. General Cigar Did Not Invite the District Court's Error ...........3

        2. General Cigar's Position Is Consistent with the General License and CACR § 515.421 ......................................................6

        3. The CACR's Prohibition of Judicial Cancellation Orders Does Not Prevent a Court from Adjudging that a Registration Should Not Be Cancelled ....................................10

        4. The District Court Lacks Authority Under § 1071(b) to Simply Affirm the TTAB's Ruling...........................................11

        5. The District Court's Judgment Would Effect a Prohibited Transfer of Property Under the CACR ...................................17

    B. Issue Preclusion Bars Cubatabaco's Article 8 Claim.........................19

        1. General Cigar Is Not Estopped from Arguing Preclusion.......19

        2. The Federal Circuit Decision Is Not Law of the Case in This § 1071(b) Action............................................................21

        3. Even If the Federal Circuit Decision Otherwise Could Be Law of the Case Here, *B&B Hardware* Triggers an Exception as to the Issue Preclusion Ruling...........................23

        4. The Elements of Issue Preclusion Are Met Here.....................25

    C. Claim Preclusion Bars Cubatabaco's Article 8 Claim.......................26

III. AN AMICUS BRIEF OR STATEMENT OF INTEREST FROM THE U.S. GOVERNMENT MAY ASSIST THIS COURT IN DECIDING THE CACR ISSUE................................................................................27

IV. CONCLUSION..................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Zerodensity Yazilim Anonim Sirketi*,
No. 1:24-cv-284, 2025 WL 2198598 (E.D. Va. Aug. 1, 2025)............................4

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)..............................................................20, 23, 24, 25

*Combe Inc. v. Dr. August Wolff GmBH & Co. KG Arzneimittel*,
382 F. Supp. 3d 429 (E.D. Va. 2019), *aff'd*, 851 F. App'x 357 (4th
Cir. 2021) ...............................................................................................4

*Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*,
No. 19-cv-11018, 2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020) ........................18

*Costello v. United States*,
365 U.S. 265 (1961)................................................................................26

*Durox Co. v. Duron Paint Mfg. Co.*,
320 F.2d 882 (4th Cir. 1963) ..............................................................15, 16

*Empresa Cubana del Tabaco v. Culbro Corp.*,
399 F.3d 462 (2d Cir. 2005) (*Empresa V*)..........................................6, 8, 26, 27

*Empresa Cubana del Tabaco v. General Cigar Co.*,
753 F.3d 1270 (Fed. Cir. 2014) (*Empresa IX*)...........................................20, 21

*Ferrera v. United States*,
424 F. Supp. 888 (S.D. Fla. 1976) .............................................................18

*Gillette Co. v. "42" Prods. Ltd.*,
435 F.2d 1114 (9th Cir. 1970) ..................................................................21

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995)................................................................................14

*Havana Club Holding, S.A. v. Galleon, S.A.*,
203 F.3d 116 (2d Cir. 2000) ......................................................................8

*Hoover Co. v. Coe,*
   325 U.S. 79 (1945)................................................................................21, 22

*Kappos v. Hyatt,*
   566 U.S. 431 (2012)....................................................................*passim*

*Los Angeles County v. Humphries,*
   562 U.S. 29 (2010).............................................................................24

*Ministry of Def. & Support v. Cubic Def. Sys., Inc.,*
   665 F.3d 1091 (9th Cir. 2011) ...........................................................18

*Moke Am. LLC v. Moke Int'l Ltd.,*
   126 F.4th 263 (4th Cir. 2025) .................................................12, 22, 23

*Nat'l Oil Corp. v. Libyan Sun Oil Co.,*
   733 F. Supp. 800 (D. Del. 1990)........................................................18

*New Hampshire v. Maine,*
   532 U.S. 742 (2001)..............................................................19, 20, 21

*PDV USA, Inc. v. Interamerican Consulting Inc.,*
   No. 20-cv-3699, 2021 WL 2581569 (S.D.N.Y. June 22, 2021)........................18

*Shields v. United States,*
   273 U.S. 583 (1927)..............................................................................3

*Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.,*
   991 F.3d 512 (4th Cir. 2021) .................................................14, 21, 22

*Swatch AG v. Beehive Wholesale, LLC,*
   739 F.3d 150 (4th Cir. 2014) .......................................................*passim*

*Tagle v. Regan,*
   643 F.2d 1058 (5th Cir. 1981) ...........................................................17

*United States v. Campbell,*
   22 F.4th 438 (4th Cir. 2022) ..............................................................23

*United States v. Cotton,*
   535 U.S. 625 (2002)..............................................................................6

*United States v. Holloway*,
 630 F.3d 252 (1st Cir. 2011)..................................................................23

*In re Varat Enters., Inc.*,
 81 F.3d 1310 (4th Cir. 1996) ................................................................26

*Wright Transp., Inc. v. Pilot Corp.*,
 841 F.3d 1266 (11th Cir. 2016) ..............................................................6

*Xactware Sols., Inc. v. Buildxact Software Ltd.*,
 95 F.4th 810 (4th Cir. 2024) ................................................12, 22, 23

*Yates v. United States*,
 574 U.S. 528 (2015).............................................................................14

## Statutes

15 U.S.C.
 § 1067..................................................................................................24
 § 1071....................................................................................................8
 § 1071(a) .......................................................................................7, 9, 22
 § 1071(a)(4) .........................................................................................21
 § 1071(b)........................................................................................*passim*
 § 1071(b)(1) ...................................................................................*passim*
 § 1119..................................................................................................16

28 U.S.C. § 517........................................................................................27

35 U.S.C.
 § 145....................................................................................................16
 § 146....................................................................................................16

## Other Authorities

31 C.F.R.
 § 515.201(b).........................................................................................10
 § 515.201(b)(1) ......................................................................................6
 § 515.201(d).........................................................................................10
 § 515.201 et seq. ....................................................................................5
 § 515.309(a) .........................................................................................10
 § 515.310.........................................................................................10, 11
 § 515.311(a) .........................................................................................10

§ 515.421......................................................................................6, 8, 9
§ 515.421(b)(1) ....................................................................................9
§ 515.421(b)(2) ....................................................................................9
§ 515.527(a)(1) .................................................................................7, 9

Restatement of Judgments §§ 27-28 ..........................................................23

Trademark Trial and Appeal Board Manual of Procedure § 806 (2025) ...................8

## I.      INTRODUCTION

This Court's precedent regarding the nature of a *de novo* action under 15 U.S.C. § 1071(b) is clear. The district court does not conduct appellate review of the TTAB's ruling. Rather, the court must independently decide whether a trademark registration should be cancelled. Contrary to Cubatabaco's view, simply "affirming" the TTAB's decision is not an option that Congress has authorized. If the district court adjudges that the registration should be cancelled, then the district court's judgment compels the USPTO to strike the registration from the Principal Register.

This statutory requirement of independent adjudication is dispositive here. The Second Circuit held that the CACR bar judicial cancellation of General Cigar's registrations to Cubatabaco's benefit. Cubatabaco itself acknowledged that the CACR bar judicial cancellation orders and successfully urged the Federal Circuit to treat TTAB cancellation orders differently. In a § 1071(b) civil action, a judgment in favor of the party seeking to cancel a registration is a judicial cancellation order. And because the CACR bar judicial cancellation orders to the benefit of Cuban nationals, the district court's judgment was improper and should be reversed.

In trying to escape this conclusion, Cubatabaco flouts this Court's precedent concerning the nature of a § 1071(b) action. As shown in the opening brief, this Court has held that a district court engages in independent adjudication, not appellate review, in deciding a § 1071(b) action. Under the plain language of the statute, a

- 1 -

district court may adjudge that a "registration involved should be canceled." Such an adjudication is a judicial cancellation order. However, such an order may not be issued to the benefit of a Cuban national because the CACR prohibit it. Cubatabaco cannot overcome this logical application of controlling authority here.

Nor do Cubatabaco's other attempts to sidestep the CACR hold water. General Cigar's position is entirely consistent with the CACR and would not nullify the general license on which Cubatabaco relies. By contrast, Cubatabaco's position would radically expand the general license in violation of both the Second Circuit's *Empresa V* decision and the settled rule that any license under the CACR must be interpreted narrowly. Cubatabaco's insistence that the district court's decision merely declares rights and thus is not a prohibited transfer of property under the CACR is mistaken too. The district court's judgment thus should be reversed.

If this Court reaches General Cigar's preclusion defenses to Cubatabaco's claim under Article 8 of the IAC, Cubatabaco's arguments fare no better. Cubatabaco's judicial estoppel argument misses the mark because General Cigar never took a position contrary to what it advocates here, much less persuaded the Federal Circuit of such a position. Cubatabaco's attempts to confer "law of the case" status on the Federal Circuit's preclusion rulings also fail. Cubatabaco's insistence that the Federal Circuit rightly decided the preclusion defenses also lacks merit. The SDNY and Second Circuit resolved against Cubatabaco the same Article 8 issue and

- 2 -

claim that Cubatabaco then relitigated in the TTAB. While a reversal on the CACR issue would end the case entirely, there should be at least a reversal and remand if this Court reaches the preclusion defenses.

## II.   ARGUMENT

### A.   The CACR Prohibit Cancellation of General Cigar's Trademark Registrations

The opening brief (at 21-36) showed that the district court's decision constitutes a judicial cancellation order to the benefit of a Cuban national, which the CACR prohibit. Cubatabaco's five contrary arguments lack merit.

#### 1.   General Cigar Did Not Invite the District Court's Error

The invited error doctrine requires the district court to have "complied with [General Cigar's] request" to "take a step in [the] case." *Shields v. United States*, 273 U.S. 583, 586 (1927) (cited in Response Brief ("RB") at 16). Here, General Cigar did not tell the district court it could sit as an appellate tribunal over the TTAB. *See, e.g.*, JA36-83 (Amended Complaint). Nor did General Cigar tell the district court it would be appropriate to "affirm" the TTAB's decision or leave it undisturbed without a judicial determination of whether the registrations should be cancelled. *See, e.g.*, JA36-83. The district court's CACR ruling thus did not comply with any request by General Cigar to take a step in the case. The court instead did what Cubatabaco had asked and entered judgment in its favor. JA380-382. For this reason alone, General Cigar did not invite any error.

- 3 -

Further, General Cigar used "reverse" and "vacate" in its Amended Complaint in the colloquial sense that courts commonly use in deciding § 1071(b) actions: to refer to a desired *de novo* ruling that would be the opposite of the TTAB's decision. *See, e.g.*, *Apple Inc. v. Zerodensity Yazilim Anonim Sirketi*, No. 1:24-cv-284, 2025 WL 2198598 at *10 (E.D. Va. Aug. 1, 2025) ("Plaintiff's Motion for Summary Judgment will be granted by an Order that will reverse the TTAB decision and direct the Director of the USPTO to register" the marks in dispute); *Combe Inc. v. Dr. August Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 467 (E.D. Va. 2019) ("[T]he ruling of the TTAB dismissing plaintiff's opposition to defendant's application to register the VAGISAN mark must be reversed."), *aff'd*, 851 F. App'x 357 (4th Cir. 2021). General Cigar made clear from the very outset that it sought a *de novo* ruling that the district court could not cancel the registrations. JA33 (¶ 2). The complaint's use of "review," "reverse," and "vacate" did not imply it could be proper for the district court to leave the TTAB's decision undisturbed, much less invite such an error.

Cubatabaco also ignores the language of Count X of General Cigar's amended complaint. *See* Response Brief ("RB") at 15-18. In Count X, General Cigar stated: "For *this Court to grant cancellation relief* to Cubatabaco would likewise entail a transfer of property rights in the COHIBA mark to Cubatabaco in violation of the Embrago Regulations, and *the Court may therefore not grant such relief*." JA79

- 4 -

(¶ 163) (emphasis added). General Cigar thus made clear from the jump that a decision in Cubatabaco's favor would constitute a judicial cancellation order that the CACR forbid. The district court disagreed with General Cigar. That is the opposite of an "invited" error.

General Cigar similarly stated in its Prayer for Relief that "for the Court to grant cancellation relief to Cubatabaco would be a transfer of property rights in the COHIBA mark to Cubatabaco in violation of the Embargo Regulations." JA81 (¶ C). General Cigar thus made clear again that a decision in Cubatabaco's favor would constitute a judicial cancellation order that the CACR forbid. Cubatabaco urges this Court to disregard that statement as "irrelevant," but gives no good reason why. RB at 17-18.

Moreover, the district court itself framed the issue for trial as whether, given the CACR, it had the power to cancel the registrations. In clarifying the issues for trial, the district court stated that the issue presented by Count X was: "if Cubatabaco establishes the merits of an Article 8 claim, whether *the Court may cancel* General Cigar's United States COHIBA registrations in light of the Cuban Asset Control Regulations, 31 C.F.R. § 515.201 et seq. (the 'Embargo Regulations')." JA14 (docket entry 107, referencing "plaintiff's Amended Complaint") (emphasis added). The district court thus correctly articulated General Cigar's framing of the issue, and General Cigar did not invite the court's eventual error.

- 5 -

Finally, Cubatabaco fails to show how any alleged "invited error" could alter the jurisdictional framework that Congress prescribed for a *de novo* action under § 1071(b). The cases cited by Cubatabaco involve non-jurisdictional matters like a plaintiff's express statement that one of its claims should be dismissed, a plaintiff's express agreement to a district court's case management plan, and a plaintiff's request to enter summary judgment in the defendants' favor because the plaintiff lacked evidence to support an essential element of its case. RB at 17 (cases cited in first paragraph). But Cubatabaco cites no case suggesting that a district court can accept a litigant's purported invitation to exercise appellate jurisdiction that Congress has not conferred. If anything, case law indicates the opposite. *See Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1273 n.10 (11th Cir. 2016) ("declin[ing] to apply the doctrine of invited error because 'subject matter jurisdiction . . . can never be forfeited or waived'" (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002))).

### 2. General Cigar's Position Is Consistent with the General License and CACR § 515.421

As General Cigar explained in its opening brief (at 30-36), the CACR prohibit judicial cancellation of General Cigar's registrations, and no general or specific license gives an exemption from this prohibition. *See* 31 C.F.R. §§ 515.201(b)(1), 515.527(a)(1). The Second Circuit held as much. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 472-81 (2d Cir. 2005) (*Empresa V*). And Cubatabaco

- 6 -

told the Federal Circuit as much. *See* JA353 ("[A] *Board* cancellation order is licensed, but a *judicial* cancellation order is not[.]" (emphasis in original)).

Cubatabaco nonetheless insists that application of the Second Circuit's holding to a § 1071(b) civil action would render the general license "meaningless." RB at 19. But the logic of General Cigar's position is clear: under § 1071(b), *Swatch*, and *Kappos*, the district court's adverse judgment constitutes a judicial cancellation order, and the CACR prohibit such an order. Far from yielding "absurd results," RB at 19-20, it is exactly the result that Congress intended. Congress could have authorized only an appeal to the Federal Circuit from a TTAB cancellation decision. But Congress instead created an alternative, non-appellate option in the form of a *de novo* action in district court under § 1071(b). The interplay of § 1071(b) and the CACR means that if (1) the TTAB rules that a registration should be cancelled to the benefit of a Cuban entity and (2) the registrant files a § 1071(b) action in district court instead of appealing to the Federal Circuit under § 1071(a) or doing nothing, then (3) the district court must independently adjudicate the cancellation claim but may not enter a judgment that will result in the cancellation of the registration.

This result does not render the general license "meaningless." Rather, it ensures fidelity to the limits of the general license, which the Second Circuit has held (and Cubatabaco has acknowledged) does not authorize judicial cancellation orders. This result is also consistent with the well-settled rule that any license granted

under the CACR "should be interpreted narrowly as it creates an exception to the broad prohibitions of the embargo." *Empresa V*, 399 F.3d at 476 (citing *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 123-24 (2d Cir. 2000)). Cubatabaco's position improperly interprets the general license broadly and thus should be rejected.

Cubatabaco's attempt to stretch 31 C.F.R. § 515.421 likewise does violence to the rule of narrowly construing exceptions to the embargo. RB at 20. A judicial cancellation order in a § 1071(b) action is not "a transaction ordinarily incident to a licensed transaction" for three reasons.

First, there has not been any "licensed transaction" in this case because the TTAB has not cancelled the registrations. Rather, it has issued only a ruling granting the cancellation petition and stating that the registrations "will be cancelled in due course." JA217. Where the party who loses in the TTAB pursues relief under § 1071(b), the PTO cannot cancel the registration unless and until the district court's independent adjudication authorizes cancellation. 15 U.S.C. § 1071(b)(1); Trademark Trial and Appeal Board Manual of Procedure § 806 (2025) (after final disposition of § 1071 proceedings, "the Board takes certain further steps, based on the judgment entered, to close out the proceeding file and give effect to the judgment").

- 8 -

Second, a judicial cancellation order is not a "transaction ordinarily incident to" a licensed transaction under 31 C.F.R. § 515.421. Even under Cubatabaco's view that a TTAB cancellation ruling is a licensed transaction, a § 1071(b) civil action does not "ordinarily" accompany a TTAB ruling that a registration should be cancelled. The party who loses at the TTAB instead may choose to appeal to the Federal Circuit under § 1071(a) or choose to do nothing. Cubatabaco's position is even more far-fetched given the actual language of the general license on which Cubatabaco relies: "Transactions related to the *registration and renewal* in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized." 31 C.F.R. § 515.527(a)(1) (emphasis added).

Third, the regulation's own examples of "ordinarily incident" transactions further refute Cubatabaco's position. These examples concern ancillary financial transactions, and not optional judicial proceedings after a TTAB ruling. *See* 31 C.F.R. §§ 515.421(b)(1) (activities to complete a securities sale, "including transactions by the buyer, broker, transfer agents, and banks"), 515.421(b)(2) (certain "funds transfers or payments" for importation of certain goods).

### 3. The CACR's Prohibition of Judicial Cancellation Orders Does Not Prevent a Court from Adjudging that a Registration Should Not Be Cancelled

Cubatabaco illogically asserts that if the CACR prevent the district court from ordering cancellation, the regulations somehow also prevent the district court from ruling in General Cigar's favor. RB at 23-24. For at least two reasons, the CACR do not support Cubatabaco's argument.

First, contrary to its assertion, Cubatabaco has no "property" interest in the TTAB's decision. As noted above, the TTAB decision merely granted the cancellation petition and stated that the registrations will be cancelled "in due course"—*i.e.*, not before the conclusion of a Federal Circuit appeal, a § 1071(b) district court action, or the expiration of the deadline to pursue either course. JA217. The TTAB has not cancelled the registrations. General Cigar therefore still has a property interest in the registrations, and Cubatabaco has no property interest in the TTAB's decision.

Second, the cancellation of General Cigar's registrations would effect a prohibited transfer of property to Cubatabaco. 31 C.F.R. §§ 515.201(b), 515.201(d), 515.309(a), 515.310, 515.311(a). Contrary to Cubatabaco's assertion, an order preventing this transfer would not itself constitute a transfer that requires a license. Rather, such an order would maintain the status quo with respect to the property at

issue. This is the opposite of the "'alter[ation]'" of a "'right'" or "'remedy'" with respect to the property. RB at 23 (quoting 31 C.F.R. § 515.310).

### 4. The District Court Lacks Authority Under § 1071(b) to Simply Affirm the TTAB's Ruling

Cubatabaco contradicts precedent and misinterprets the statute in claiming that the district court has the power to affirm the TTAB decision under § 1071(b). This Court's *Swatch* decision, which applies Supreme Court precedent to § 1071(b), forecloses Cubatabaco's position that the district court had discretion to operate as an appellate court here. Cubatabaco's attempt to limit those cases cannot be squared with their holdings.

As explained in the opening brief (at 22-25), in a § 1071(b) civil action, "the district court 'does not act as the "reviewing court" envisioned by the APA[.]'" *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 156 (4th Cir. 2014) (quoting *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012)). Rather, "[t]he district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims." *Swatch*, 739 F.3d at 155 (citing 15 U.S.C. § 1071(b)(1)). In fact, "the only situation where consideration of the TTAB decision is permitted" is where the district court exercises its discretion to "consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence." *Id.* (citations and quotations omitted).

- 11 -

This Court has reinforced these rules multiple times since *Swatch*. In discussing a § 1071(b) civil action in *Xactware*, this Court plainly stated: "That suit is not an appeal." *Xactware Sols., Inc. v. Buildxact Software Ltd.*, 95 F.4th 810, 818 (4th Cir. 2024). The Court explained that, instead, "[i]t is a wholly separate suit, where new evidence is allowed and (in cases where new evidence is introduced) a *de novo* standard governs." *Id.* at 818-19 (citing *Kappos*, 566 U.S. at 433-34).

The Court restated this explanation in *Moke*: "Rather than being an appeal, a § 1071(b) action 'is a wholly separate suit, where new evidence is allowed and (in cases where new evidence is introduced) a *de novo* standard governs.'" *Moke Am. LLC v. Moke Int'l Ltd.*, 126 F.4th 263, 272 (4th Cir. 2025) (quoting *Xactware*, 95 F.4th at 818-19). The Court also reemphasized the nature of the remedy in such cases: "In a § 1071(b) action, '[t]he district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement . . . claims.'" *Id.* (quoting *Swatch*, 739 F.3d at 155 (alterations in original)).

Cubatabaco's response brief (at 27) incorrectly brushes aside this authority in a single conclusory paragraph. Cubatabaco's insistence that *Swatch* and *Kappos* relate only to "the standard of review" in a § 1071(b) action and not to "the remedy" cannot be squared with those decisions. This Court's holding in *Swatch* that "the district court 'does not act as the "reviewing court" envisioned by the APA'"

- 12 -

forecloses the possibility that the district court could simply affirm the TTAB's decision. 739 F.3d at 156 (quoting *Kappos*, 566 U.S. at 438). This Court's further holding that "[t]he district court has authority independent of the PTO to grant or cancel registrations" also contradicts Cubatabaco's position that these cases have nothing to do with the remedy. *Id.* at 155 (citing 15 U.S.C. § 1071(b)(1)); *see also* 15 U.S.C. § 1071(b)(1) (a dissatisfied party who has not appealed to the Federal Circuit may "have *remedy* by a civil action" (emphasis added)).

The statute's plain language also contradicts Cubatabaco's argument. The district court's "adjudication shall authorize the [USPTO] Director to take any necessary action, upon compliance with the requirements of law," including cancellation of the registrations. 15 U.S.C. § 1071(b)(1). Accordingly, in a § 1071(b) action, the district court's adjudication is the source of the PTO's authority to act on the registrations—not the statute under which the original TTAB proceedings were instituted.

Cubatabaco's strained attempt to leverage the statutory word "may" to encompass discretion "to simply leave in place a TTAB outcome" defies the above precedent. RB at 25. Nowhere does the statute suggest the district court can just affirm a TTAB decision. Rather, § 1071(b)(1)'s two specific examples of things the district court "may adjudge" are "that an applicant is entitled to a registration upon the application involved" and "that a registration involved should be canceled."

- 13 -

Accordingly, there is no good reason to believe that the power to adjudge "such other matter as the issues in the proceeding require" includes the authority to simply affirm the TTAB decision. *See Yates v. United States*, 574 U.S. 528, 543 (2015) (explaining reliance on "principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress'" (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995))).

Moreover, such an interpretation would directly conflict with this Court's holding that a district court does not conduct appellate review under § 1071(b) but instead independently adjudicates the matters before it and exercises "authority independent of the PTO to grant or cancel registrations." *Swatch*, 739 F.3d at 155-56. The more natural interpretation of the statutory word "may" is that it denotes there are multiple possible outcomes: for example, an adjudication "that an applicant is entitled to a registration upon the application involved," "that a registration involved should be canceled," or, conversely, that the applicant is not entitled to a registration or that the registration should not be cancelled. 15 U.S.C. § 1071(b)(1). Likewise, because § 1071(b) is a jurisdictional statute, *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 516 (4th Cir. 2021), the word "may" is better understood as prescribing the permissible scope of the district court's exercise of jurisdiction in such actions than some form of open-ended discretion. In all events,

- 14 -

*Swatch*, its progeny, and *Kappos* preclude the argument on which Cubatabaco stakes its ground here.

For the same reasons, it is irrelevant that district courts may sometimes use the language of affirmance in adjudicating actions brought under § 1071(b). RB at 25-26 & n.7-8. Regardless of whether such colloquial usage had any legal consequence in those cases, these examples cannot erode this Court's and the Supreme Court's precedential decisions that speak directly to the issue here. And in this case, the precise nature and effect of the district court's adjudication *does* have a legal consequence due to the interplay between § 1071(b)(1) and the CACR's prohibition of judicial cancellation orders.

Likewise, it does not matter whether the adjudications in the district court cases cited by Cubatabaco contained an express directive to the USPTO in their dispositions. In a § 1071(b) action, the district court's "adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law" regardless of whether the adjudication contains language expressly addressed to the USPTO Director. 15 U.S.C. § 1071(b)(1).

Finally, Cubatabaco's citation to this Court's 1963 decision in *Durox* is unavailing. RB at 26-27 (discussing *Durox Co. v. Duron Paint Mfg. Co.*, 320 F.2d 882 (4th Cir. 1963)). In *Durox*, the defendant had argued that a district court had no power to modify a registration in a § 1071(b) action. *Durox*, 320 F.2d at 886

- 15 -

(referring to the counterpart Patent Act provisions, 35 U.S.C. §§ 145, 146). This Court sidestepped that question by invoking the district court's parallel authority over trademark registrations in 15 U.S.C. § 1119, which this Court held sufficient "[a]ssuming arguendo that defendant's interpretation of 35 U.S.C. § 145 and 35 U.S.C. § 146 is correct." *Durox*, 320 F.2d at 886. *Durox* thus contains no holding relevant to the application of 15 U.S.C. § 1071(b) here. And even if *Durox* had supported Cubatabaco's position, any such guidance would be superseded by the Supreme Court's subsequent decision in *Kappos* (2012).

If anything, *Durox*'s procedural history undermines Cubatabaco's position. In *Durox*, the district court had "dismissed the complaint without prejudice to plaintiffs right to apply for [a more limited] registration." 320 F.2d at 885. This Court noted what happened next: "The Patent Office, since receiving the judgment of the district court, has indicated that it will issue a registration to Durox in accordance with the court's opinion." *Id.* n.5. Even though the district court's judgment in *Durox*—like the district court's judgment here—was styled as a "dismissal" of the complaint, the USPTO nonetheless treated the judgment as an adjudication authorizing it to act in accordance with the district court's opinion. Contrary to Cubatabaco's suggestion, *Durox* contains no indication that § 1071(b) required a separate "directive to the USPTO" or express "order [to] the USPTO to register the mark for narrower goods." RB at 26-27.

- 16 -

Likewise here, the district court's judgment—whether styled as a dismissal of the complaint or otherwise—constitutes a § 1071(b)(1) adjudication that authorizes the USPTO to cancel General Cigar's registrations. It is thus a judicial cancellation order, which—as the Second Circuit held and Cubatabaco acknowledged to the Federal Circuit—is something that the CACR prohibit.

### 5. The District Court's Judgment Would Effect a Prohibited Transfer of Property Under the CACR

Cubatabaco concludes its smorgasbord of CACR arguments with the irrelevant assertion that "[a] judgment determining rights, including rights with respect to specific property, is distinct from an order implementing those rights" and "[o]nly the latter must be licensed." RB at 29. As explained above and in the opening brief, the district court's judgment is a judicial cancellation order, and Cubatabaco does not (and, given its prior representation to the Federal Circuit (JA353), cannot) dispute that a judicial cancellation order is unlicensed. The district court's judgment does not merely determine rights, but also implements those rights by affirmatively authorizing the USPTO to cancel. *See* 15 U.S.C. § 1071(b)(1). The distinction that Cubatabaco posits therefore has no significance here.

The cases that Cubatabaco cites are likewise irrelevant. RB at 29-31. None of these cases involved a civil action under § 1071(b). *See Tagle v. Regan*, 643 F.2d 1058, 1067 (5th Cir. 1981) (heirs' lawsuit seeking declaration of entitlement to Treasury Department license to obtain assets of Cuban decedent's estate);

*Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*, No. 19-cv-11018, 2020 WL 5849013, at *4 (S.D.N.Y. Oct. 1, 2020) (bondholders' lawsuit seeking *in personam* determination of rights and obligations under contract relating to sovereign bonds); *Ferrera v. United States*, 424 F. Supp. 888, 890 (S.D. Fla. 1976) (explaining, in context of heir's lawsuit seeking order directing Treasury Department to license transfer of estate to plaintiff, that state probate court can "adjudicate the interest of the plaintiff vis-à-vis the Cuban heirs but cannot effect the unblocking of the assets"); *Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 809 (D. Del. 1990) (action seeking confirmation of foreign arbitral award); *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20-cv-3699, 2021 WL 2581569, at *4-5 (S.D.N.Y. June 22, 2021) (action brought by U.S. subsidiary of Venezuelan state-owned entity for breach of consulting agreement); *Ministry of Def. & Support v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 (9th Cir. 2011) (action seeking confirmation of foreign arbitral award).

Cubatabaco's reliance on the OFAC guidance concerning the Venezuelan Regulations is also unavailing. That guidance states, in part: "A specific license from OFAC is not required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to the Venezuela Sanctions Regulations, 31 CFR part 591 (VSR), or for a U.S. court, or its personnel, to hear such a case. Similarly, creditors may file for writs of attachment without the need for OFAC authorization

- 18 -

for matters involving property blocked under the VSR." OFAC, FAQ No. 808, available at https://ofac.treasury.gov/faqs/808 (last visited February 3, 2026). It does not speak to a court adjudication authorizing trademark cancellation under § 1071(b). *See id.* If anything, the OFAC guidance undermines Cubatabaco's position because it requires a specific license from OFAC for "other judicial process purporting to transfer *or otherwise alter or affect property or interests* in property blocked pursuant to the VSR." OFAC, FAQ No. 808 (emphasis added).

In sum, the CACR prohibit the district court from authorizing cancellation of General Cigar's COHIBA trademark registrations to Cubatabaco's benefit. Because that is the legal effect of the district court's judgment, that judgment should be reversed.

### B.      Issue Preclusion Bars Cubatabaco's Article 8 Claim

To the extent this Court does not end the case on CACR grounds, Cubatabaco's responses to General Cigar's preclusion arguments fail. At a minimum, therefore, the judgment should be reversed and the case remanded.

### 1.      General Cigar Is Not Estopped from Arguing Preclusion

Cubatabaco's judicial estoppel argument lacks merit because General Cigar never took a position that is "clearly inconsistent" with any position it has taken in this case. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In responding to Cubatabaco's appeal from the TTAB's 2013 decision on standing, General Cigar

raised, as an alternative ground for affirmance, the question whether the Second Circuit's decision had preclusive effect in the TTAB. *See* General Cigar's Response Brief, *Empresa IX*, 2013 WL 6632194, at *40-59 (Dec. 2, 2013). In doing so, General Cigar asked the Federal Circuit to decide preclusion in the first instance, instead of remanding to the TTAB, if the Federal Circuit did not affirm the TTAB's ruling that Cubatabaco lacked standing to pursue cancellation. *Id.* at *23, 41. The relief General Cigar sought, on either ground, was affirmance. *Id.* at *59.

General Cigar did not argue that, if the case were remanded to the TTAB and the TTAB then ruled against General Cigar, a Federal Circuit decision on preclusion would be law of the case in any subsequent *de novo* action under § 1071(b). *See* General Cigar's Response Brief, *Empresa IX*, 2013 WL 6632194. General Cigar thus did not take a position that is inconsistent—much less "clearly inconsistent," *New Hampshire*, 532 U.S. at 750—with its argument that the Federal Circuit's decision is not law of the case in a § 1071(b) civil action. Cubatabaco's judicial estoppel argument thus fails. And judicial estoppel could not apply anyway to General Cigar's issue preclusion argument based on *B&B Hardware* because the Supreme Court's decision in that case was issued in 2015, after the Federal Circuit had decided *Empresa IX* in 2014. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015); *Empresa Cubana del Tabaco v. General Cigar Co.*, 753 F.3d 1270 (Fed. Cir. 2014) (*Empresa IX*).

- 20 -

Further, in reaching the preclusion defenses, the Federal Circuit relied on "its authority to resolve questions of law not addressed below as long as such a ruling would not be clearly unfair to the appellee." *Empresa IX*, 753 F.3d at 1276. The Federal Circuit did not rely on any notion that its decision would be considered binding in any subsequent § 1071(b) civil action involving the same registrations. *Id.* Accordingly, there is no basis to suppose that the Federal Circuit was somehow "misled" by General Cigar's alternative request to affirm on preclusion grounds, thus negating the second required element of judicial estoppel too. *New Hampshire*, 532 U.S. at 750.

### 2. The Federal Circuit Decision Is Not Law of the Case in This § 1071(b) Action

General Cigar's opening brief (at 37-43) already rebutted Cubatabaco's arguments (RB at 33-37) regarding *Snyder's-Lance*'s dictum about the meaning of § 1071(a)(4)'s "shall govern" language. Cubatabaco's citation of the Ninth Circuit's *Gillette* decision adds nothing to the analysis because it simply mirrors *Snyder's-Lance*'s dictum. RB at 33-34 (discussing *Gillette Co. v. "42" Prods. Ltd.*, 435 F.2d 1114, 1117 (9th Cir. 1970)). Cubatabaco also gives short shrift to the Supreme Court's *Hoover* decision, which puts to rest Cubatabaco's insistence that § 1071(a)(4)'s "shall govern" language would have no meaning if not given Cubatabaco's preferred interpretation. *See Hoover Co. v. Coe*, 325 U.S. 79, 83 (1945). Cubatabaco also understates the significance of this Court's observation in

- 21 -

*Snyder's-Lance* that *Hoover* "appears to endorse th[e] interpretation in the patent context" that the Federal Circuit's decision "may apply solely to bind the [TTAB], not other federal courts." *Snyder's-Lance*, 991 F.3d at 517 n.2. This Court never distinguished *Hoover* but instead acknowledged it "need not decide this question for purposes of this appeal." *Id.*

Further, Cubatabaco's observation that § 1071 "allows a party to seek *either* form of review, *but not both*" is beside the point. RB at 36 (emphasis in original). General Cigar has sought only one remedial path: a *de novo* civil action under § 1071(b) in response to the TTAB's 2022 decision. It was Cubatabaco's choice to seek appellate review under § 1071(a) after the TTAB ruled against it in 2013. And under the actual holding of *Snyder's-Lance*, Cubatabaco's choice in 2013 did not foreclose either party from filing a § 1071(b) district court action after an adverse TTAB decision on remand. 991 F.3d at 513-14.

Next, Cubatabaco's unsupported assertion that the term "the case" can be read broadly enough to combine the district court action and TTAB proceedings into one (RB at 36-37) contradicts this Court's holding that a § 1071(b) action "'is a wholly separate suit.'" *Moke*, 126 F.4th at 272 (quoting *Xactware*, 95 F.4th at 818-19). Cubatabaco's citation of district court cases involving "remands" to the agency is unhelpful because Cubatabaco cites nothing to support its bare assertion that "[r]emands necessarily occur within a single case." RB at 37 & n.10.

- 22 -

Finally, as shown in the opening brief (at 37-38) Cubatabaco's invocation of ordinary law of the case principles likewise conflicts with this Court's holding that a § 1071(b) action "'is a wholly separate suit.'" *Moke*, 126 F.4th at 272 (quoting *Xactware*, 95 F.4th at 818-19).

### 3. Even If the Federal Circuit Decision Otherwise Could Be Law of the Case Here, *B&B Hardware* Triggers an Exception as to the Issue Preclusion Ruling

Cubatabaco next argues that the Supreme Court's decision in *B&B Hardware* could not be an intervening change in law because the Court applied the "ordinary elements" for preclusion stated in Restatement of Judgments §§ 27-28, as did the Federal Circuit. RB at 38-41. But this argument takes an improperly narrow view of what intervening law will make a prior decision no longer law of the case.

The test of what legal changes will trigger an exception to the law of the case doctrine is not as stringent as Cubatabaco posits. The proper question is whether *B&B Hardware* "undermined" the holding of the Federal Circuit that issue preclusion did not apply to Cubatabaco's cancellation claim under IAC Article 8, so that application of the new Supreme Court decision would have led to a different result. *See United States v. Campbell*, 22 F.4th 438, 447 (4th Cir. 2022) (later Supreme Court decision "undermined" Fourth Circuit law). A Supreme Court decision need not be directly on point to undermine a prior decision, as it can "extend through its logic beyond the specific facts of its case." *United States v. Holloway*,

630 F.3d 252, 258 (1st Cir. 2011), (quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 38 (2010)).

As shown in the opening brief (at 43-49), *B&B Hardware* explained the proper analysis for determining when an issue raised and decided in federal court is identical to an issue later raised in the TTAB. *B&B Hardware* made clear that "where a single issue is before a court and an administrative agency, preclusion also often applies," 575 U.S. at 149, and that "[w]hen a district court . . . decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment," *id.* at 152. The Supreme Court held that the test is whether there is a "single standard" to be applied to a legal question in both courts and the TTAB. *Id.* at 154. The single standard requirement will be met even if the standard appears in different statutes governing the TTAB and the courts, and even if the second tribunal "appl[ies] that one standard differently." *Id.*

These binding principles wholly undermine the Federal Circuit's preclusion analysis. The only basis that the Federal Circuit invoked for denying preclusion on Cubatabaco's Article 8 claim was that the TTAB decides cancellation issues under 15 U.S.C. § 1067, which does not apply to the federal courts. But, as the opening brief showed (at 47-49), § 1067 does not change the legal standard. Rather, it is nothing more than the jurisdictional statute that empowers the TTAB to decide registration and cancellation issues. The relevant legal standards are the IAC itself

- 24 -

and the Lanham Act, which are the same texts in both court and the agency. At most, the TTAB "applies that one standard differently," *B&B Hardware*, 575 U.S. at 154, holding that claims under Article 8 of the IAC may be brought without implementing legislation, while the Second Circuit has held otherwise. *See* Opening Brief at 48. But, as *B&B Hardware* stresses, "parties cannot escape preclusion" by relitigating in a tribunal that applies the single standard differently, and "a contrary rule would encourage the very evils that issue preclusion helps to prevent." *B&B Hardware*, 575 U.S. at 154. Accordingly, law of the case does not apply to the Federal Circuit's issue preclusion ruling for this reason too, and the district court erred in refusing to preclude Cubatabaco from relitigating its Article 8 claim.

### 4.      The Elements of Issue Preclusion Are Met Here

Cubatabaco's argument on the only disputed element of issue preclusion (whether the issue is different) breaks no new ground beyond the parties' disagreement on the *B&B Hardware* issue. The different outcomes in the two tribunals turned not on different substantive legal standards, but the tribunals' different applications of the same substantive standard. *B&B Hardware* forbids Cubatabaco from obtaining a different outcome on this issue from the TTAB after having lost it in the Second Circuit. Contrary to Cubatabaco's assertion, there is no ambiguity concerning the basis of the SDNY's and Second Circuit's decision on the Article 8 claim, nor any need for General Cigar to have filed a redundant

counterclaim. RB at 44-45. Accordingly, the district court erred in not entering judgment against Cubatabaco on its Article 8 claim based on issue preclusion.

### C.    Claim Preclusion Bars Cubatabaco's Article 8 Claim

For the same reasons given in Section VI.C.1 of the opening brief, the Federal Circuit's decision on claim preclusion is not law of the case.

Substantively, the opening brief (at 50-53) already refutes Cubatabaco's response brief (at 47-52) on whether the elements of claim preclusion are met. In short, Cubatabaco's Article 8 claim in the TTAB arose from the "same . . . transactions" and "same core of operative facts" as the Article 8 claim it lost on the merits in the SDNY and Second Circuit. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996).

Cubatabaco's heavy reliance on *Costello* is misplaced. RB at 50-51. *Costello*'s exception to claim preclusion is for "failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." *Costello v. United States*, 365 U.S. 265, 285 (1961). The Supreme Court held that "[f]ailure to file the affidavit of good cause in a denaturalization proceeding falls within this category." *Id*. The SDNY and Second Circuit rejected Cubatabaco's Article 8 claim because "Congress implemented Articles 7 and 8 through Section 44(d) of the Lanham Act and those provisions do not relate to the 'repression of unfair competition' within the meaning of Section 44(h)." *Empresa V*, 399 F.3d at

483. The judgment was not based on a mere failure to meet a precondition. It was instead a merits judgment.

## III.   AN AMICUS BRIEF OR STATEMENT OF INTEREST FROM THE U.S. GOVERNMENT MAY ASSIST THIS COURT IN DECIDING THE CACR ISSUE

General Cigar respectfully suggests that this Court request an amicus brief or a statement of interest pursuant to 28 U.S.C. § 517 from the U.S. Government. As both parties' briefing demonstrates, this case involves significant U.S. foreign policy interests. Accordingly, the views of the U.S. Government may assist this Court in deciding the CACR issue. In *Empresa V*, the Second Circuit requested the U.S. Government's views after oral argument in the appeal, and the U.S. Government filed an amicus brief. 399 F.3d at 470. The U.S. Government also weighed in at the cert petition stage in that case. Brief for the United States as Amicus Curiae, 2006 WL 1388198 (May 19, 2006). A similar request would be appropriate here, especially given the passage of time since the U.S. Government provided those statements of its position.

- 27 -

## IV.    CONCLUSION

The district court's judgment should be reversed, either outright (if based on the CACR) or (if based on preclusion) with a remand to allow the district court to address the remaining counts of General Cigar's amended complaint.

Dated:  February 9, 2026

Respectfully submitted,

/s/ Stanley J. Panikowski
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400
stanley.panikowski@us.dlapiper.com

J. Kevin Fee
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4441
kevin.fee@us.dlapiper.com

Andrew L. Deutsch
LAW OFFICES OF ANDREW L. DEUTSCH
6540 Olympic Place
Los Angeles, CA 90035
Tel: 917.861.3315
adeutsch221@gmail.com

*Attorneys for Appellant*
*General Cigar Company, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), 32(a)(7)(B), and 32(g), I certify that this brief was prepared in Microsoft Word using Times New Roman 14-point type, contains 6,495 words excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), and complies with the applicable type-volume limitation.

Dated:  February 9, 2026                Respectfully submitted,

*/s/ Stanley J. Panikowski*
Stanley J. Panikowski
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858.677.1400
stanley.panikowski@us.dlapiper.com

*Attorneys for Appellant*
*General Cigar Company, Inc.*